# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,**[1]<br><br>**Debtor.** | Chapter 11<br><br>Civ. Action No.    23 Civ. 5751<br><br>Bankr. Case No. 20-12345 (MG) |

## MEMORANDUM OF LAW
## IN SUPPORT OF JOINT PETITION TO FIX VENUE FOR CLAIMS RELATED TO THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE'S BANKRUPTCY UNDER 28 U.S.C. §§ 157(b)(5) AND 1334(b)

JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
250 Vesey Street
New York, New York  10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306

-and-

JONES DAY
Christopher DiPompeo (*pro hac vice*)
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone:  (202) 879-7686
Facsimile:  (202) 626-1700

*Counsel for the Debtor and Debtor in Possession*

Brian R. Davey
Mulholland Minion Davey McNiff & Beyrer
374 Hillside Ave
Williston Park, NY 11596
516-248-1200
bdavey@mmlaw.us.com

-and-

Charles J. Adams
Patrick F. Adams, P.C.
3500 Sunrise Highway, Building 300
Great River, NY 11739
631-666-6200
cjadams@pfapc.com

*Counsel for the DRVC Related Parties*

---

[1] The Debtor in the chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND .......................................................................................................... 3

    A.    The Mission and History of the Diocese of Rockville Centre ............................ 3

    B.    History and Structure of the DRVC's Shared Insurance Program ...................... 4

    C.    History and Current Status of the State Court Actions ...................................... 5

    D.    The PI Motion and Order Denying The Motion .................................................. 6

ARGUMENT ............................................................................................................... 8

    A.    Section 157(b)(5) Expresses Congress's Strong Policy to Consolidate Mass Tort Cases Related to a Bankruptcy Case .................................................. 8

    B.    Consolidation of the State Court Actions in this District Is Appropriate ........... 11

    C.    This Court Has Jurisdiction Over the State Court Actions ................................. 14

CONCLUSION ............................................................................................................ 16

## TABLE OF AUTHORITIES

**Page**

CASES

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) .................................................................................3, 9, 10, 16

*Canosa v. Ziff*,
  2018 WL 3642631 (S.D.N.Y. Aug. 1, 2018) ..........................................................13

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995)...............................................................................................15

*Cnty. of Allegheny v. Frank Mashuda Co.*,
  360 U.S. 185 (1959) ...............................................................................................14

*In re The 1031 Tax Grp., LLC*,
  397 B.R. 670 ..........................................................................................................16

*In re Albion Disposal, Inc.*,
  217 B.R. 394 (W.D.N.Y. 1997) ..............................................................................14

*In re Calpine Corp.*,
  354 B.R. 45 ............................................................................................................16

*In re Dow Corning Corp.*,
  113 F.3d (6th Cir. 1997) .....................................................................................13, 14

*In re Dow Corning Corp.*,
  86 F.3d 482 (6th Cir. 1996) ..............................................................................9, 10, 16

*In re Marcus Hook Dev. Park, Inc.*,
  943 F.2d 261 (3d Cir. 1991)....................................................................................15

*In re Montreal Maine & Atl. Ry., Ltd.*,
  2014 WL 1155419 (D. Me. Mar. 21, 2014)............................................................11

*In re Pan Am Corp.*,
  16 F.3d 513 (2d Cir. 1994)......................................................................................3, 9

*In re Pan Am Corp.*,
  950 F.2d 839 (2d Cir. 1991)...............................................................................3, 13, 14

*In re Purdue Pharma. L.P.*,
    619 B.R. 38 (S.D.N.Y. 2020), *aff'd* 69 F.4th 45 (2d Cir. 2023) ............................................15

*In re Quigley Co.*,
    676 F.3d 45 (2d Cir. 2012).......................................................................................................15

*In re Robert Plan Corp.*,
    777 F.3d 594 (2d Cir. 2015).....................................................................................................15

*In re Roman Catholic Diocese of Rockville Centre, New York*,
    ___ B.R. ___, 2023 WL 3750442 (Bankr. S.D.N.Y. June 1, 2023) ...........................2, 7, 8, 16

*In re Titan Energy, Inc.*,
    837 F.2d 325 (8th Cir. 1988) ...................................................................................................16

*In re WorldCom, Inc. Sec. Litig.*,
    293 B.R. 308 (S.D.N.Y. 2003)..................................................................................................13

*In re Zale Corp.*,
    62 F.3d 746 (5th Cir. 1995) .....................................................................................................16

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018).....................................................................................................15

*Universal Well Servs., Inc. v. Avoco Natural Gas Storage*,
    222 B.R. 26 (W.D.N.Y. 1998) ..................................................................................................16

## STATUTES

28 U.S.C. § 157(b)(5) ............................................................................................................ passim

28 U.S.C. § 1334(b) ..................................................................................................1, 10, 11, 15

Adult Survivors Act ........................................................................................................................1

Bankruptcy Code § 362(a)(1) ........................................................................................................7

Bankruptcy Code § 362(a)(3) ........................................................................................................7

Child Victims Act ...........................................................................................................................1

Article 5 of New York's Religious Corporations Law, N.Y. RELIG. CORP. § 90............................4

## OTHER AUTHORITIES

130 Cong. Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S.C.C.A.N. at 579 ..........................3

N.Y. C.P.L.R. 214-g ........................................................................................................1

1958 N.Y. Sess. Laws Ch. 70 (1958), § 1 ........................................................................3

The Roman Catholic Diocese of Rockville Centre, New York (the "Debtor" or "DRVC") and its affiliated parishes, schools, and other organizations ("DRVC Related Parties") petition (the "Joint Petition") for an order pursuant to 28 U.S.C. §§ 157(b)(5) and 1334(b) fixing venue in this Court for personal injury claims identified in **Schedule 1** to this Joint Petition.[2]

## PRELIMINARY STATEMENT

The DRVC and the DRVC Related Parties are defendants in numerous lawsuits alleging acts of sexual abuse and related misconduct occurring decades ago. These lawsuits were filed in the wake of the New York State Legislature's enactment of the Child Victims Act (the "CVA").[3] The CVA created a window for alleged victims of childhood sexual abuse to bring civil actions previously barred by the statute of limitations. The CVA created a two-year period to commence otherwise time-barred actions. By the closing of that window on August 14, 2021, the DRVC and/or the DRVC Related Parties had been named as defendants in more than 500 CVA lawsuits.

The DRVC and the DRVC Related Parties are steadfast in their commitment to provide equitable compensation to abuse claimants. Because the DRVC could not continue to address abuse litigation in the New York State tort system on a case-by-case basis, the DRVC filed its chapter 11 case on October 1, 2020. The goal of the DRVC's bankruptcy is to achieve the dual objectives of (1) timely and equitably compensating claimants in an orderly process; and (2) ensuring the DRVC emerges from bankruptcy able to continue its vital charitable mission.

---

[2] Schedule 1 to this Join Petition is current as of July 4, 2023.

[3] On May 24, 2022, New York Governor Kathy Hochul signed the Adult Survivors Act (S.66A/A.648A) (the "ASA"). While the CVA had revived certain claims based on allegations of sexual abuse of a minor, the ASA revived claims resulting from sexual offenses against individuals that occurred when the person was 18 years of age or older and allowed such persons to sue on account of such claims, regardless of prior limitations periods. Like the CVA, the ASA opened a lookback window for individuals to bring suit on account of such revived claims—specifically, the ASA allows individuals to commence claims, not earlier than six months after (November 24, 2022), and not later than one year and six months after (November 24, 2023), the effective date of the ASA (May 24, 2022). N.Y. C.P.L.R. 214-g (McKinney).

The filing of the DRVC's chapter 11 petition automatically stayed all CVA actions in which the DRVC was named as a defendant.  Because of the close relationship between the DRVC and the DRVC Related Parties, the overlapping issues in litigation involving the DRVC and the DRVC Related Parties, and the potential impact on the DRVC's shared insurance program, the DRVC also sought a preliminary injunction of CVA litigation against the DRVC Related Parties (the "State Court Actions").  After several weeks of negotiations, the DRVC and the Official Committee of Unsecured Creditors (the "Committee") agreed to a consensual preliminary injunction of the State Court Actions (the "PI").  As part of this agreement, the DRVC committed to make certain disclosures to the Committee, and to provide the Committee with all discovery that would have been available had the underlying State Court Actions continued.  The PI was subsequently extended by consent several times, on substantially the same terms.[4]  As a result, until recently, the State Court Actions had been consensually stayed since October 20, 2020.

In January 2023, the Committee withdrew its consent to further extension of the PI.  The Bankruptcy Court thereafter set a hearing on the DRVC's Motion for a Preliminary Injunction ("the PI Motion"), for April 19-20, 2023.  On June 1, 2023, the Bankruptcy Court denied the DRVC's motion to continue the stay of the State Court Actions, terminating the PI effective June 16, 2023.  *See In re Roman Catholic Diocese of Rockville Centre, New York*, ___ B.R. ___, 2023 WL 3750442 (Bankr. S.D.N.Y. June 1, 2023) ("*DRVC*").  The PI has now been dissolved, and the State Court Actions are permitted to proceed.

---

[4] The Bankruptcy Court entered the PI on November 4, 2020.  Adv. Pro. No. 20-01226, Dkt. No. 36 (Bankr. S.D.N.Y.).  It was extended by the Court four times, carrying the stay through March 31, 2021.  *Id.*, Dkts. Nos. 44, 46, 53, and 59.  Thereafter, the PI was extended numerous times by stipulation and agreed order of the parties through October 28, 2022.  *Id.*, Dkt. Nos. 69, 88, 98, 105, 112, 120, and 138.  The final such stipulation and agreed order extended the PI until such time as the Bankruptcy Court lifted the stay.  *See* "Stipulation and Agreed Order Extending the Termination Date of the Preliminary Injunction Staying Continued Prosecution of Certain Lawsuits," ¶ 12.  Adv. Pro. No. 20-01226, Dkt. No. 157 (Bankr. S.D.N.Y.).

The DRVC now seeks to consolidate all CVA litigation against the DRVC Related Parties in this District, as provided for by 28 U.S.C. § 157(b)(5). "Congress enacted section 157(b)(5) to expand the district court's venue-fixing powers with an eye to centralizing the adjudication of a bankruptcy case." *In re Pan Am Corp.*, 16 F.3d 513, 516 (2d Cir. 1994) ("*Pan Am II*"). Its purpose is "to centralize the administration of the [bankruptcy] estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) (quoting 130 Cong. Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S.C.C.A.N. at 579)). Thus, as the Second Circuit has recognized, Section 157(b)(5) reflects Congress's strong policy in favor of adjudicating personal injury cases related to a bankruptcy in the District where the bankruptcy is pending. *See In re Pan Am Corp.*, 950 F.2d 839, 845 (2d Cir. 1991) ("*Pan Am I*").

Although the State Court Actions at issue in this Petition do not name the DRVC as a defendant, *all* of them are related to a proof of claim ("POC") (or, in one case, a scheduled claim) that is pending against the DRVC in its bankruptcy case. These State Court Actions and the POCs are based on the same underlying conduct, the same legal theories, and raise many of the same threshold defenses. Litigation of the State Court Actions and litigation of the POCs are therefore inextricably intertwined and, pursuant to Section 157(b)(5), should be litigated in coordinated fashion in the District where the Diocese's chapter 11 case is pending. Transfer of the State Court actions to this District is therefore appropriate.

## BACKGROUND[5]

### A.    The Mission and History of the Diocese of Rockville Centre

---

[5] In support of this Petition, the Petitioners have submitted the Declaration of Eric Stephens ("Stephens Decl."), which includes, among other things, true and correct copies of testimony and stipulated charts admitted as part of the trial record for the Debtor's PI Motion.

In 1958, the State of New York established the DRVC as a religious corporation.  *See* 1958 N.Y. SESS. LAWS Ch. 70 (1958), § 1.  The DRVC is the seat of the Catholic Church on Long Island and is the eighth largest diocese in the United States when measured by the number of baptized Catholics.  Stephens Decl., Ex. A ("Moore Decl."), ¶ 14.

There are 135 Parishes within the DRVC's geographic boundary.  *Id.* ¶ 15.  Each Parish is a separate religious corporation, formed under Article 5 of New York's Religious Corporations Law, N.Y. RELIG. CORP. § 90.  *Id.* ¶ 17.  Parishes carry out the DRVC's mission and play a central role in the lives of Catholics: administering baptism, education, communion, Mass, confirmation, marriage, bereavement, last rites, funeral services, and grief support.  *Id.* ¶ 16.

Certain other affiliated entities of the DRVC, such as Catholic Charities of the Diocese of Rockville Centre, are also defendants in the State Court Actions.  *Id.*  ¶¶ 19–21.  Generally, these other affiliates are separate, not-for-profit charitable member corporations with their own board and governance.  *Id.* ¶ 19.  The parishes and these affiliates are referred to in this Joint Petition as the "DRVC Related Parties."

### B.    History and Structure of the DRVC's Shared Insurance Program

The DRVC maintains a broad insurance program.  Specifically, the DRVC purchased and continues to purchase commercial liability insurance ("CLI") primary, umbrella, and excess liability insurance policies to protect itself, the DRVC Related Parties, and various other entities from a series of risks.  *See* Stephens Decl., Ex. D (the "Porter Direct").[6]  These CLI policies provide substantial insurance coverage for claims arising out of alleged sexual abuse or sexual

---

[6] The Porter Direct was prepared in support of the DRVC's PI Motion, but is included here to illustrate the background of this case.  The Bankruptcy Court entered the Porter Direct into evidence, and Mr. Porter was cross-examined on his testimony at a hearing on the merits on April 19, 2023.  A transcript of the hearing can be found at Adv. Pro. No. 20-01226, Dkt. No. 200 (Bankr. S.D.N.Y.).

misconduct, *id.* ¶ 3, and are the DRVC's largest and most important source of funding for claims of sexual abuse.[7]

Over the years, the DRVC has purchased insurance policies from different insurance companies. *Id.* ¶ 5. These policies fall into three groups: the Royal years (1957 to 1976); the London Program years (1976 to 1986); and the Ecclesia years (1986 to the present).[8] At all times since 1957, the DRVC's insurance policies have provided coverage both to the DRVC and the DRVC Related Parties.[9] *Id.* ¶ 6. As "Named Insureds," the DRVC Related Parties have the same rights as the DRVC to the limits of liability under those insurance policies. *Id.* Thus, the limits of liability are "shared" between the DRVC and the DRVC Related Parties. *Id.* Importantly, these shared insurance policy proceeds are paid on a first-come, first-served basis. In other words, once the insurance company has satisfied its obligation on a per-claim or aggregate basis for one insured, the insurance policy proceeds will not be available to other insureds. *Id.* ¶ 7.

### C.    History and Current Status of the State Court Actions

The pending State Court Actions allege that the DRVC and the DRVC Related Parties are liable for certain personal injury tort claims or, in some instances, statutory claims arising from sexual abuse or misconduct arising out of the victim's involvement or connection with the DRVC. *See* Stephens Decl., Ex. E (the "Moore Direct"),[10] ¶ 6. There are approximately 500 civil actions

---

[7] A compendium of the insurance policies may be found as exhibits to two declarations by Mr. Porter filed with the Bankruptcy Court, both titled *Declaration of Kenneth F. Porter in Support of the Debtor's Motion for a Preliminary Injunction Under Sections 362 and 105(a) of the Bankruptcy Code.* Adv. Pro. No. 20-01226, Dkt. Nos. 6, 129 (Bankr. S.D.N.Y.). Exhibit A of each declaration includes a graphical representation of the DRVC's historical insurance coverage.

[8] While this brief and the Porter Direct provide an overview of the DRVC's insurance programs, the language in the insurance policies controls. The DRVC reserves any and all rights with respect to its insurance policies. The DRVC and its advisors have also not yet been able to locate copies of all relevant insurance policies and thus the descriptions provided herein may need to be amended to incorporate any newly-discovered evidence.

[9] Certain insurance companies have not agreed to defend certain DRVC Related Parties based on missing insurance policy documentation. The DRVC believes there is adequate secondary evidence to establish insurance coverage for the DRVC Related Parties, and has reserved all rights with respect to such coverage disputes.

[10] As with the Porter Direct, the Moore Direct was prepared in support of the DRVC's PI Motion and is included here to illustrate the background of this case. The Bankruptcy Court entered the Moore Direct into evidence,

under the CVA pending against the DRVC and/or the DRVC Related Parties.  *Id.*  The DRVC is not a named defendant in approximately half of these cases.  *See* Stephens Decl., Ex. B ("Agreed Coverage Summary").  However, in all State Court Actions—even those where the DRVC is not a named defendant—the plaintiff is nonetheless also seeking a recovery on its claims from the DRVC's estate through a POC or related litigation against the DRVC.  *Id.*  Although the State Court Actions vary in their procedural posture, none are close to trial.  Moore Direct. ¶ 6.  All are either at the pleading, the motion practice or early discovery phase.  *Id.*

Historically, claims against the DRVC and the DRVC Related Parties have, with very limited exception, been litigated and administered by the DRVC in close coordination with the DRVC Related Parties.  *Id.* ¶ 3.  This approach is due to the relationship between the DRVC and the DRVC Related Parties, and the fact that many of the key allegations made by plaintiffs in such cases are substantially directed at the DRVC.  *Id.*  Consistent with past practice, the DRVC must coordinate many aspects of the litigation with the DRVC Related Parties, including responses to discovery requests.  *Id.* ¶ 5.  Indeed, the majority of such requests are ultimately directed at the DRVC because the DRVC maintains most of the responsive documents.  *Id.*

### D.      The PI Motion and Order Denying The Motion

Because the DRVC could not continue to defend hundreds of lawsuits in the state tort system, it filed for chapter 11 bankruptcy protection on October 1, 2020.  As noted, the DRVC also filed a motion seeking to preliminarily enjoin CVA litigation against the DRVC Related Parties because this litigation necessarily impacted the DRVC and threatened its shared insurance.  After a few weeks of negotiations, the DRVC and the Committee agreed to a consensual interim preliminary injunction of the State Court Actions on November 4, 2020.  *See* Adv. Pro. No. 20-01226, Dkt. No. 36 (Bankr. S.D.N.Y.); *id.* Dkt. Nos. 44, 46, 53.  The parties then agreed to a

_____

and Mr. Moore was cross-examined on his testimony at a hearing on the merits on April 19, 2023.  A transcript of the hearing can be found at Adv. Pro. No. 20-01226, Dkt. No. 200 (Bankr. S.D.N.Y.).

longer-term preliminary injunction on January 22, 2021.  *Id.* Dkt. No. 59.  This PI was subsequently extended by consent several times, on substantially the same terms, until it ultimately terminated on June 16, 2023.[11]

As part of the agreement embodied in the consensual PI, the DRVC committed to make certain disclosures to the Committee, and to provide the Committee with all discovery that would have been available to claimants had the underlying State Court Actions continued.  *See* Stephens Decl., Ex. C ("Stephens Direct"), ¶ 10; Adv. Pro. Case No. 20-01226, Dkt. No. 59 (Bankr. S.D.N.Y.).[12]  The DRVC provided an enormous amount of information to the Committee on this basis, and ultimately concluded its production on May 31, 2022.  *See* Stephens Direct ¶ 26.

On January 14, 2023, the Committee filed a notice withdrawing its consent to the continuation of the consensual PI with respect to 223 State Court Actions in which the DRVC was not a defendant.[13]  Adv. Pro. Case No. 20-01226, Dkt. No. 166 (Bankr. S.D.N.Y.).  The PI has continued, with no objection from the Committee, with respect to State Court Actions in which the DRVC is a defendant and State Court Actions that implicate the Debtor's Ecclesia insurance program.  *See DRVC*, 2023 WL 3750442, at *6.  Such cases are also automatically stayed by Bankruptcy Code Section 362(a)(1), which stays all litigation against a debtor, and/or Section 362(a)(3), which protects estate assets like the limited aggregate proceeds of the Ecclesia policies.

---

[11] *See id.*, Dkt. Nos. 69, 88, 98, 105, 112, 120, 138, 157.

[12] As with the Porter Direct and the Moore Direct, the Stephens Direct was prepared in support of the DRVC's PI Motion and is included here to illustrate the background of this case.  The Bankruptcy Court entered the Stephens Direct into evidence, and Mr. Stephens was cross-examined on his testimony at a hearing on the merits on April 19, 2023.  A transcript of the hearing can be found at Adv. Pro. No. 20-01226, Dkt. No. 200 (Bankr. S.D.N.Y.).

[13] The parties originally contested the continuation of the PI with respect to 228 State Court Actions. However, during the litigation, the DRVC determined that 5 of these State Court Actions did not correspond to a POC or claim against the DRVC's estate, and therefore agreed not to seek a PI of such actions.  *See* Stephens Decl., Ex. G ("Letter to Bankruptcy Court").  As a result, the 223 State Court Actions that are the subject of this petition are all related to a POC (or, in one case, a scheduled claim) against the DRVC's estate.

The Bankruptcy Court set a hearing on the DRVC's PI Motion for April 19-20, 2023 (the "PI Hearing").  In its briefs and at the hearing, the DRVC argued that a continued PI was necessary because, among other things, the State Court Actions at issue and the POCs submitted by the same plaintiffs are inextricably intertwined.  Specifically, the DRVC argued that continued litigation will impact the DRVC's shared insurance, creates risks of collateral estoppel and inconsistent judgments, and will distract the DRVC from its reorganization efforts.  The DRVC also noted that, if the Bankruptcy Court determined that the PI should not be extended any longer, the DRVC would likely file a motion in this Court under 28 U.S.C. § 157(b)(5) to transfer all pending cases to this District.

The Bankruptcy Court ultimately denied the DRVC's PI Motion on June 1, 2023, terminating the PI effective June 16, 2023.  *See id.* at *1.  As a result, the 223 State Court Actions that were the subject of the contested PI hearing (and that are the subject of this Petition) are no longer stayed and are beginning to move forward.  In response, the DRVC Related Parties have begun filing notices of removal of each of these cases.  *See* **Schedule 1**.  The cases that are the subject of this Petition are thus now, or soon will be, pending in the United States District Courts for the Southern and Eastern District of New York.

## ARGUMENT

Section 157(b)(5) of Title 28 provides that this Court "shall order that personal injury tort and wrongful death claims . . . be tried in the district court in which the bankruptcy case is pending[.]"  As explained below, consolidating the State Court Actions in this Court is appropriate.

### A.    Section 157(b)(5) Expresses Congress's Strong Policy to Consolidate Mass Tort Cases Related to a Bankruptcy Case

"A bankrupt debtor who is a defendant in a personal injury action may move under section 157(b)(5) to transfer the case to one of two venues: (1) the district where the bankruptcy is proceeding; or (2) the district where the claim arose."  *Pan Am II*, 16 F.3d at 516 (citing 28 U.S.C.

§ 157(b)(5)). Such a "transfer motion should be made to the district court in the district where the bankruptcy is proceeding." *Id.* When considering such a motion, "the presumption is that '[t]ransfer should be the rule, abstention the exception.'" *Id.* (quoting *Pan Am I*, 950 F.2d at 845).

As the Second Circuit has recognized, Section 157(b)(5) reflects Congress's determination that personal injury claims related to a bankruptcy case are best resolved in a coordinated fashion in the District where the bankruptcy case is pending. *See id.* That is, "Congress enacted section 157(b)(5) to expand the district court's venue-fixing powers with an eye to centralizing the adjudication of a bankruptcy case." *Id.* Thus, the purpose of § 157(b)(5) is "to centralize the administration of the [bankruptcy] estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *A.H. Robins*, 788 F.2d at 1011 (quoting 130 Cong. Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S.C.C.A.N. at 579). Such an approach "increases the debtor's odds of developing a reasonable plan of reorganization which will 'work a rehabilitation of the debtor and at the same time assure fair and non-preferential resolution of the . . . claims.'" *In re Dow Corning Corp.*, 86 F.3d 482, 496 (6th Cir. 1996) ("*Dow I*") (quoting *A.H. Robins*, 788 F.2d at 1011).

For the same reason, courts have also recognized that "Section 157(b)(5) allows for the transfer of personal injury and wrongful death claims pending against *non-debtor defendants* who have been sued with a debtor under claims of joint and several liability." *Id.* (emphasis added). Indeed, consolidating mass tort cases against non-debtors that are related to a bankruptcy case in the District where the bankruptcy is pending is well established.

For example, in *A.H. Robins*, the Fourth Circuit affirmed an order centralizing thousands of state and federal personal injury cases against debtors and non-debtor co-defendants in the District Court where the bankruptcy case was pending. 788 F.2d at 1010–14. Ruling that the power of the District Court to fix venue was "stated in unmistakable terms in section 157(b)(5),"

the Fourth Circuit reasoned that this procedure provides "great benefits" and allows the stakeholders to avoid "stupendous costs":

> It is impossible to anticipate the stupendous costs that would be involved if all the claims here had to be tried. If the claimants as a whole are to realize reasonable compensation for their claims, it is obviously in the interest of the class of claimants as a whole to obviate the tremendous expense of trying these cases separately. If the bankruptcy court could arrive at a fair estimation of the value of all the claims and submit a fair plan of reorganization based on such estimation, with some mechanism for dispute resolution and acceptable to all interested parties, great benefit to all the claimants could be achieved and the excessive expense of innumerable trials, stretching over an interminable time, could be avoided. In addition, the real purpose of the proceedings (*i.e.*, a reorganization of the debtor and its continuance as a going business) could be attained.

*Id.* at 1013 (footnote omitted).  The Court explained that these objectives could not be realized until "all Dalkon Shield claims and suits [were] centralized before a single forum where all interests [could] be heard and in which the interests of all claimants with one another [could] be harmonized." *Id.* at 1014.  As a result, the Fourth Circuit affirmed the order transferring venue, determining that it was "conducive of the interests of all concerned."  *Id.*

Similarly, in *Dow I*, the Sixth Circuit affirmed the transfer of thousands of mass tort cases pending against the debtor and non-debtors to the bankruptcy case home forum.  86 F.3d at 497. The Sixth Circuit adopted the reasoning of *A.H. Robins*, explaining that "Section 157(b)(5) should be read to allow a district court to fix venue for cases pending against nondebtor defendants which are 'related to' a debtor's bankruptcy proceedings pursuant to Section 1334(b)."  *Id.*  According to the Sixth Circuit, "[t]his approach will further the prompt, fair, and complete resolution of all claims 'related to' bankruptcy proceedings, and harmonize Section 1334(b)'s broad jurisdictional grant with the oft-stated goal of centralizing the administration of a bankruptcy estate."  *Id.*; *see also In re Montreal Maine & Atl. Ry., Ltd.*, 2014 WL 1155419, at *5, 9–10, 12 (D. Me. Mar. 21, 2014) (allowing § 157(b)(5) transfer of product liability claims against non-debtors and finding "related to" jurisdiction based on shared insurance and right to indemnification from debtor).

-10-

### B.      Consolidation of the State Court Actions in this District Is Appropriate

Consistent with the strong congressional policy discussed above, the Court should order transfer of the State Court Actions, for several reasons.

*First*, the State Court Actions are fundamentally inseparable from the POCs filed by the plaintiffs against the DRVC's estate.  Indeed, every one of the State Court Actions at issue in this Joint Petition corresponds with a POC or scheduled claim filed against the DRVC.  *See* Stephens Decl., Ex. B (Agreed Coverage Summary) (identifying POC numbers for each State Court Action); Stephens Decl., Ex. G (Letter to Bankruptcy Court) (identifying POC numbers missing from Agreed Coverage Summary).  In other words, the same plaintiffs who are seeking a recovery from the DRVC Related Parties in the State Court Actions are *also* seeking recovery from the DRVC's estate in the chapter 11 case.  Moreover, the claims asserted against the DRVC Related Parties in the State Court Actions and the POCs asserted against the DRVC's estate are based on the same underlying conduct and the same theories of liability.[14]  This is why, before the DRVC filed its chapter 11 case (which gave rise to an automatic stay of litigation against the Debtor), all but a handful of the State Court Actions named the DRVC as a defendant.  The State Court Actions subject to this Petition are different only in that nearly all were filed *after* the chapter 11 case, and thus did not name the DRVC as a defendant.  But that change in caption is not a change in substance.  Simply put, the State Court Actions and the POCs are inextricably intertwined.  They are based on the same facts and legal theories, the resolution of one is bound to have an impact on the other, and they should be adjudicated, as much as possible, in a coordinated fashion in one forum.

---

[14] Pursuant to an order of the Bankruptcy Court, the POCs are confidential.  However, the similarity of the claims asserted against the DRVC and the claims asserted against the DRVC Related Parties can be seen by examining the State Court Actions filed against the DRVC before the chapter 11 case was filed.  For example, Exhibit F-1 is an illustrative complaint filed against the DRVC and a DRVC Related Party, and Exhibit F-2 is an illustrative complaint against only a DRVC Related Party after the chapter 11 case was commenced.

*Second*, the State Court Actions all involve similar issues that will need to be resolved to determine liability.  That is, although the individual fact patterns differ, the legal theories asserted by the Plaintiffs are the same across all of the complaints.  Exhibit B to the Stephens Declaration is a stipulated chart between the DRVC and the Committee from the PI litigation that lists the claims asserted in each of the State Court Actions at issue in this Petition.  As this chart makes clear, every one of these actions involves claims of negligence, negligent supervision, or related legal theories.  These legal theories all raise the same threshold questions of duty, knowledge, and responsibility for the conduct of an individual perpetrator.  Moreover, the pleadings in the State Court Actions acknowledge that the DRVC's knowledge and conduct is likely to be at issue in all cases.  For example, the Stephens Direct contains a chart as Exhibit A that was admitted as evidence in the PI Hearing and summarizes the paragraphs in each of the State Court Actions that allege control of the DRVC Related Party by the Diocese.  And Exhibit B to the Stephens Direct is a chart also admitted as evidence in the PI Hearing that summarizes allegations and counterclaims contained in answers submitted by the DRVC Related Parties in the cases filed before the chapter 11 case began.  As a review of these materials show, the claims alleged, the allegations of control, and the allegations regarding the DRVC's responsibility are closely related across the State Court Actions.  Consolidation for coordinated resolution of these overlapping and related issues is appropriate.

*Third*, because of the overlap between and among the State Court Actions and the POCs, consolidating this litigation in the District where the chapter 11 case is pending will best achieve Congress's goal of an efficient and focused reorganization process.  None of these cases are close to trial; they are all in either the motion practice or early discovery phase.  As this Court has recognized, if "motion practice and discovery . . . proceed separately[,]" the "litigation that would ensue in the various fora would be entirely duplicative and wasteful."  *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 333–34 (S.D.N.Y. 2003).  On the other hand, transferring the State Court

Actions to this Court will "enhance[] the possibility that the cost of litigation will be limited, to a degree, by opportunities for coordination across the cases pending in a common district." *Canosa v. Ziff*, 2018 WL 3642631, at \*7 (S.D.N.Y. Aug. 1, 2018).  Such degree of coordination "may . . . result in singular, rather than multiple, depositions being taken of parties and third-party witnesses relevant to multiple actions." *Id.*; *see also Pan Am I*, 950 F.2d at 845 (emphasizing the "manifest purpose of section 157(b)(5)" as "centraliz[ing] the administration of the estate"); *In re Dow Corning Corp.*, 113 F.3d, 565, 572 (6th Cir. 1997) ("*Dow II*") (concluding the district court's abstention was inappropriate because the debtor's "assets are finite and risk being unnecessarily diminished by the expense of litigating . . . in innumerable jurisdictions").

Here, consolidating the cases in the District Court will allow for closer coordination between the Bankruptcy Court, where the POCs are pending, and the forum in which the related State Court Actions are pending.  Such coordination will be particularly important in the context of discovery and pre-trial proceedings, because most of the discovery obligations in the State Court Actions will be borne by the Debtor.  *See* Stephens Direct ¶¶ 34–40.  This is because (i) the DRVC has historically been the document repository for the parishes; (ii) in the pre-bankruptcy cases, the plaintiffs' document requests were almost exclusively directed toward the DRVC; and (iii) the DRVC collected many of the documents regarding the merits of the State Court Actions during the chapter 11 case.  *Id*.

*Fourth*, allowing the State Court Actions to be litigated in different courts would undermine Congress's goals and interfere with the DRVC's reorganization effort.  The DRVC is well underway toward adjudicating the POCs.  Out of a total of approximately 749 POCs filed in the DRVC's chapter 11 case, approximately 125 POCs have been disallowed or withdrawn, approximately 65 POCs have been disallowed with leave to amend, and another approximately 60 objections to POCs are under advisement.  The DRVC is also continuing to analyze POCs filed in its chapter 11 case and expects to make additional claim objections in the near term.  Parallel

litigation in the Bankruptcy Court regarding POCs and the state courts regarding the same facts and legal claims would not only give rise to inefficiencies and duplication of effort but raise the real possibility of inconsistent judgments and piecemeal litigation.  Determinations by one court with respect to issues pending in the other court could also potentially be asserted by the prevailing party to be *res judicata*, creating uncertainty and fostering conflict between the Bankruptcy Court and the state courts.  Duplicative litigation also threatens to increase the costs of litigation, which, given the shared insurance limits between the DRVC and the DRVC Related Parties, could reduce funds available to compensate claimants through the DRVC's chapter 11 plan.  *See Dow II*, 113 F.3d at 571 (highlighting that the debtors and non-debtor co-defendants share joint insurance coverage in evaluating the district court's permissive abstention analysis).

*Finally*, there is no reason for the Court to abstain from consolidating the cases in this Court.  As the Second Circuit has recognized, "courts should not be too quick to abstain from exercising their transfer powers" because Congress expressed a preference that "[t]ransfer should be the rule, abstention the exception."  *Pan Am I*, 950 F.2d at 845; *see also Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959) (describing abstention as an "extraordinary and narrow exception" to federal court's duty to exercise jurisdiction); *In re Albion Disposal, Inc.*, 217 B.R. 394, 411 (W.D.N.Y. 1997) (same).  Here, as explained above, declining to transfer these cases would ensure duplicative proceedings with the Bankruptcy Court and each individual State Court Action, thereby undermining the efficiency and fairness goals of Section 157(b)(5).

### C.      This Court Has Jurisdiction Over the State Court Actions

Lastly, transfer pursuant to Section 157(b)(5) is appropriate because this Court has "related to" jurisdiction over the State Court Actions.  This Court has broad jurisdiction over any and all cases "arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."  *Celotex Corp. v. Edwards*,

514 U.S. 300, 308 (1995) (quotation omitted). The Second Circuit has interpreted this jurisdictional grant to encompass all litigation that "'could conceivably have any effect upon the [debtors'] estate being administered." *In re Robert Plan Corp.*, 777 F.3d 594, 597 (2d Cir. 2015) (quoting *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983)). In determining whether a case "relates to" a bankruptcy, "[c]ertainty, or even likelihood, is not a requirement." *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991). Instead, jurisdiction exists "so long as it is possible that a proceeding may [have an] impact on the debtor's rights, liabilities, options, or freedom of action" or the "handling and administration of the bankruptcy estate." *Id.* (quotation omitted).

The Second Circuit has found "related to" jurisdiction based on "strong interconnections between the third party action and the bankruptcy." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quotation omitted). Jurisdiction exists if it is "possible"—even if "improbable"— that a non-debtor could eventually file successful "claims . . . against the debtor for either indemnification or contribution." *Id.* at 340, 342.[15] Similarly, in *Dow I*, the Sixth Circuit found "related to" jurisdiction where a non-debtor defendant and a debtor shared joint-insurance policies subject to "possible depletion." 86 F.3d at 495.[16] And courts have found "related to" jurisdiction where "[t]he outcome of th[e]" case "could conceivably . . . [a]ffect . . . the bankruptcy estate by creating a decision with potential *res judicata* or collateral estoppel effects on certain issues . . . in

---

[15] *See also In re Purdue Pharma. L.P.*, 619 B.R. 38, 49–50 (S.D.N.Y. 2020), *aff'd* 69 F.4th 45 (2d Cir. 2023) (finding jurisdiction where "the theories of liability pressed by the [third party plaintiffs] are necessarily interconnected with th[e] Defendants' rights to contribution"); *In re Quigley Co.*, 676 F.3d 45, 58 (2d Cir. 2012) ("[A] suit against a third party . . . that . . . poses the specter of direct impact on the *res* of the bankrupt estate may just as surely impair the bankruptcy court's ability to make a fair distribution . . . as a third-party suit alleging derivative liability.").

[16] *See also A.H. Robins*, 788 F.2d at 1001 (court had "related to" jurisdiction when suit against non-debtor officer insured by joint insurance policy); *In re Zale Corp.*, 62 F.3d 746, 758–59 (5th Cir. 1995) (concluding that, where disputes regarding an insurance policy can have an effect on a debtor's estate, the bankruptcy court has "related to" jurisdiction over non-debtors' claims against the insurer); *In re Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir. 1988) (noting that the scope of a products liability insurance policy affects the size of a debtor's estate for distribution).

which the debtor in possession could conceivably have an interest." *Universal Well Servs., Inc. v. Avoco Natural Gas Storage*, 222 B.R. 26, 30 (W.D.N.Y. 1998).[17]

Here, as the Bankruptcy Court's PI decision implicitly recognizes, *see DRVC*, 2023 WL 3750442, at *36, this Court has "related to" jurisdiction over the State Court Actions because (a) the DRVC and the DRVC Related Parties are co-insureds under insurance policies for which they share limited proceeds; (b) there is a reasonable legal basis that the DRVC Related Parties could file claims for indemnification or contribution against the DRVC; and (c) a final judgment in a state court case could subject the DRVC's bankruptcy estate to the preclusive effect of unfavorable judgments.  Jurisdiction therefore exists, and consolidation under Section 157(b)(5) is appropriate.

## CONCLUSION

For the reasons above, the Court should grant the DRVC and the DRVC Related Parties' Joint Petition and fix venue in this Court for the State Court Actions, thus enabling an efficient and consolidated adjudication of common issues.

---

[17] *See also In re The 1031 Tax Grp., LLC*, 397 B.R. 670, 684 (querying whether parallel suits "would … expose the debtor to *risks* of collateral estopped or res judicata" (emphasis added; quotation omitted)); *In re Calpine Corp.*, 354 B.R. 45, 50 (granting stay of state court action against surety of debtor when such action created the risk of collateral estoppel).

Dated:  July 5, 2023

New York, New York

Respectfully submitted,

*/s/ Corinne Ball*

Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  cball@jonesday.com
          trgeremia@jonesday.com
          brosenblum@jonesday.com
          abutler@jonesday.com

          -and-

Christopher DiPompeo (*pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone:  (202) 879-7686
Facsimile:  (202) 626-1700
Email:  cdipompeo@jonesday.com

*Counsel for the Debtor and
Debtor in Possession*

Brian R. Davey
Mulholland Minion Davey McNiff & Beyrer
374 Hillside Ave
Williston Park, NY 11596
516-248-1200
bdavey@mmlaw.us.com

          -and-

Charles J. Adams
Patrick F. Adams, P.C.
3500 Sunrise Highway, Building 300
Great River, NY 11739
631-666-6200
cjadams@pfapc.com

*Counsel for the DRVC Related Parties*