# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**THE ROMAN CATHOLIC DIOCESE OF**<br>**ROCKVILLE CENTRE, NEW YORK,**[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 1:23-cv-5751-LGS<br><br>Bankr. Case No. 20-12345 (MG) |

## MEMORANDUM OF LAW
## IN OPPOSITION TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR RECONSIDERATION OF ORDER WITHDRAWING REFERENCE OF PETITION TO THE BANKRUPTCY COURT

JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

-and-

JONES DAY
Christopher DiPompeo (*pro hac vice*)
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone:  (202) 879-7686
Facsimile:  (202) 626-1700

*Counsel for the Debtor and Debtor in Possession*

Brian R. Davey
Mulholland Minion Davey McNiff & Beyrer
374 Hillside Ave
Williston Park, NY 11596
516-248-1200
bdavey@mmlaw.us.com

-and-

Charles J. Adams
Patrick F. Adams, P.C.
3500 Sunrise Highway, Building 300
Great River, NY 11739
631-666-6200
cjadams@pfapc.com

*Counsel for the DRVC Related Parties*

---

[1] The Debtor in the chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii, iii

PRELIMINARY STATEMENT ............................................................ 1

FACTUAL AND PROCEDURAL HISTORY ........................................... 2

ARGUMENT .................................................................................... 3

    A.    The Court Correctly Withdrew the Reference ...................................... 4

    B.    There Is No Need for the Bankruptcy Court to Issue a Report and Recommendation on a Matter Committed Solely to this Court's Discretion ........ 6

    C.    The Committee's Attacks on Petitioners Are Unfounded .................................... 9

CONCLUSION .................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
   154 F. Supp. 2d 696 (S.D.N.Y. 2001).......................................................................................4

*Hopkins v. Plant Insulation Co.*,
   342 B.R. 703 (D. Del. 2006).....................................................................................................5

*In re 610 W. 142 Owners Corp.*,
   1999 WL 294995 (S.D.N.Y. May 11, 1999) ...........................................................................5

*In re Ephedra Prods. Liab. Litig.*,
   329 B.R. 1 (S.D.N.Y. 2005)......................................................................................................5

*In re Health Mgmt. Sys. Inc. Sec. Litig.*,
   113 F. Supp. 2d 613 (S.D.N.Y. 2000).......................................................................................4

*In re Montreal Maine & Atl. Ry., Ltd.*,
   2016 WL 706185 (D. Me. Feb. 22, 2016) ...............................................................................5

*In re Pan Am Corp.*,
   950 F.2d 839 (2d Cir. 1991)...........................................................................................3, 7, 8

*In re Roman Catholic Diocese of Rockville Centre*,
   650 B.R. 765 (Bankr. S.D.N.Y. 2023)......................................................................................8

*In re Roman Catholic Diocese of Rockville Centre*,
   651 B.R. 622 (Bankr. S.D.N.Y. 2023)......................................................................................2

*In re Saltire Indus., Inc.*,
   2007 WL 1815450 (S.D.N.Y. June 22, 2007) .........................................................................5

*In re Triad Grp., Inc.*,
   2014 WL 580778 (E.D. Wis. Feb. 14, 2014)...........................................................................5

*In re Twin Lab'ys*,
   300 B.R. 836 (S.D.N.Y. 2003)...................................................................................... *passim*

*In re U.S. Lines, Inc.*,
   216 F.3d 228 (2d Cir. 2000)......................................................................................................5

*In re WorldCom, Inc. Secs. Litig.*,
   293 B.R. 308 (S.D.N.Y. 2003)..................................................................................................8

*McCorkle v. Herold*,
   2018 WL 2470731 (W.D. Va. May 31, 2018) .........................................................................5

*Picard v. HSBC Bank PLC*,
    450 B.R. 406 (S.D.N.Y. 2011)..............................................................................5

*Podkolzin v. Amboy Bus Co.*,
    402 B.R. 539 (E.D.N.Y. 2009) ............................................................................5

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995)..................................................................................4

*Travelers Ins. Co. v. Goldberg*,
    135 B.R. 788 (D. Md. 1992) ...............................................................................6

**STATUTES**

11 U.S.C. § 105...................................................................................................................8

11 U.S.C. § 362...................................................................................................................8

11 U.S.C. § 1112.................................................................................................................9

28 U.S.C. § 157....................................................................................................... *passim*

28 U.S.C. § 1334...........................................................................................................3, 8

## PRELIMINARY STATEMENT

The question presented by the Committee's motion is whether the Court should reconsider its withdrawal of the reference of Petitioners' § 157(b)(5) petition (the "157(b)(5) Motion") from the Bankruptcy Court.  The Committee has neither demonstrated that cause exists for this Court to reconsider its prior order, nor that a referral is appropriate under the circumstances.  The Committee does not raise any serious claim of manifest injustice, nor does it highlight any consideration that could reasonably be expected to alter the Court's conclusion that the District Court—and not the Bankruptcy Court—must resolve the 157(b)(5) Motion.  Instead, the Committee argues that it would be more efficient for the Bankruptcy Court to give initial consideration to the 157(b)(5) Motion, that the Bankruptcy Court possesses special expertise on these topics, and that Petitioners' request to consolidate the cases in the federal court where the DRVC's bankruptcy case is pending is the product of some supposed improper "motivation."

These arguments are not persuasive.  It is not efficient to create a duplicative layer of Bankruptcy Court review over a decision that all agree has been expressly and exclusively delegated by Congress to the District Court.  Nor does § 157(b)(5) present any "complex issues of bankruptcy law" on which the Bankruptcy Court has greater expertise.  To the contrary, § 157(b)(5) is a straightforward *venue* provision, and, because Congress has given district courts exclusive authority to decide § 157(b)(5) motions, the Bankruptcy Court has no special expertise over it.  And finally, the Committee's character attacks against Petitioners are unfounded, unnecessary, and completely unjustified.  If there has been any delay in prosecuting the State Court Actions, it is because the parties, including *the Committee* on behalf of survivors, agreed that the cases should be stayed for two-and-a-half years to enhance the prospects of a successful reorganization.  That the DRVC and related parties are now, for the first time, seeking to have those cases consolidated

1

and heard in the forum designated by Congress should not be surprising and does not suggest any improper motivation.

## FACTUAL AND PROCEDURAL HISTORY

The Roman Catholic Diocese of Rockville Centre (the "DRVC" or the "Debtor") and related parties are defendants in hundreds of lawsuits alleging sexual abuse and other torts. These lawsuits, filed in tandem with proofs of claim against the Debtor, all allege similar claims and all seek recovery for the same harms alleged against the Debtor and the related parties. Given the flood of claims and the limited pool of assets available to satisfy them, the DRVC filed for Bankruptcy in 2020 to centralize the claims against it and to ensure it could equitably compensate creditors. Between October 2020 and June 2023, the state court cases were stayed pursuant to a consensual order of the Bankruptcy Court with the agreement of the Debtor and the Committee. *See The Roman Catholic Diocese of Rockville Centre v. ARK320 Doe*, Dkt. No. 59 (the "PI Order").

In January 2023, however, the Committee decided that it no longer supported a stay of the State Court Actions, and it withdrew its consent to the PI Order. The Debtor therefore sought a contested order maintaining the preliminary injunction for an additional period of time. On June 1, 2023, the Bankruptcy Court denied the Debtor's request and authorized the cases to move forward. *See In re Roman Catholic Diocese of Rockville Centre*, 651 B.R. 622 (Bankr. S.D.N.Y. 2023). It did not, however, address the appropriate forum for those actions, even though the DRVC disclosed its intention to seek to consolidate the cases in the Southern District under § 157(b)(5) if the Court ordered the actions to proceed. *Id.* at 667.

Pursuant to the Bankruptcy Court's order, the consensual preliminary injunction expired on June 16, 2023. Less than three weeks later—on July 5, 2023—the DRVC and the related party defendants filed the instant 157(b)(5) Motion, seeking to fix venue in this District in accordance

with Congress's strong policy in favor of adjudicating personal injury cases related to a bankruptcy in the district where the bankruptcy is pending.  *See In re Pan Am Corp.*, 950 F.2d 839, 845 (2d Cir. 1991); *see* Motion (DN 1-1).  The next day, citing the Court's standing order, the Clerk of Court "transferred out" the case from this Court to the Bankruptcy Court.  *See* Transfer Order (DNs 6, 7).  In response to the referral, Debtor's counsel sent a letter addressed to Chief Judge Swain in her capacity as a member of the Assignments Committee, noting that § 157(b)(5) obligates the District Court to decide whether to centralize the bankruptcy-related cases, and suggesting that the 157(b)(5) Motion should not have been referred.  *See* Letter to Chief Judge Swain (DN 9).  After reading that letter, the Court agreed, rescinded the referral, and reasserted jurisdiction over the case.  *See* Court Order (DN 10).

Meanwhile, the related party defendants removed substantially all of the cases to federal court (mostly to the Eastern District) asserting "related to" jurisdiction under 28 U.S.C. § 1334(b). This was necessary because the deadline for removal of the State Court Actions—which had been extended by the PI Order—was set to expire shortly after the PI Order terminated.  The related parties thus faced a choice between removing the State Court Actions—consistent with their view that Congress has mandated a federal forum for personal injury cases related to a bankruptcy—or forever giving up their ability to seek removal.  Faced with this decision and deadline, the related parties removed the cases to make a transfer to this Court more easily and efficiently accomplished.

The removals generated a flurry of activity including remand motions, which are under active consideration. Some judges have stayed the cases pending resolution of this 157(b)(5) Motion, while others have remanded the cases to state court.  *See infra* at 7.  The cases that have been remanded to state court are speedily moving toward discovery.  In the meantime, the Debtor and Committee remain engaged in active mediation to seek a consensual comprehensive settlement.

3

## ARGUMENT

Reconsideration of a previous order by the Court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quotation omitted). Courts grant reconsideration only where "the movant … demonstrate[s] an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quotation omitted). As the Second Circuit has made clear, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked … that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256–57 (2d Cir. 1995). For the reasons below, reconsideration is not appropriate here.

### A.    The Court Correctly Withdrew the Reference

Reconsideration is not necessary, first of all, because the Court's withdrawal of the reference of the 157(b)(5) Motion was appropriate given that Congress delegated exclusive authority to the "district court" to decide § 157(b)(5) motions. 28 U.S.C. § 157(b)(5).

In arguing otherwise, the Committee mischaracterizes the DRVC's July 7, 2023, letter and the Court's decision to withdraw the reference over the 157(b)(5) Motion. As noted above, that letter was not a motion from the DRVC to withdraw the reference; it was a suggestion to the Chief Judge, in her capacity as a member of the Court's Assignments Committee, that the Court's standing order of reference was erroneously applied in this circumstance. It was the Court that, *sua sponte* after considering the letter and input from the clerk of the Bankruptcy Court, decided that the 157(b)(5) Motion must be resolved by this Court.

The Court was well within its authority to do so: "[n]otwithstanding the automatic

4

reference, a judge of the District Court, in his or her discretion, may *sua sponte* withdraw the reference in a given case, for any of a wide variety of reasons." *Picard v. HSBC Bank PLC*, 450 B.R. 406, 409 (S.D.N.Y. 2011).

Section 157(b)(5) obligates this Court to decide the Motion. *See Podkolzin v. Amboy Bus Co.*, 402 B.R. 539, 543 (E.D.N.Y. 2009). The plain text of § 157(b)(5) provides that "*the district court* shall order that personal injury tort … claims shall be tried in the *district court*." 28 U.S.C. § 157(b)(5) (emphases added). And the Second Circuit has made clear that a "bankruptcy judge does not have the authority to set the venue" under "[s]ection 157(b)(5)." *In re U.S. Lines, Inc.*, 216 F.3d 228, 234 (2d Cir. 2000); *Podkolzin*, 402 B.R. at 543 (same).

In light of this, district courts typically decide § 157(b)(5) motions without input from a bankruptcy court. *See, e.g.*, *In re Twin Lab'ys*, 300 B.R. 836, 840–41 & n.1 (S.D.N.Y. 2003) (deciding § 157(b)(5) motion in the first instance and out of an "excess of caution … withdraw[ing] any … putative reference of [the § 157(b)(5) motion]" from "the Bankruptcy Court"); *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 707 (D. Del. 2006) (deciding the § 157(b)(5) motion without input from bankruptcy court); *In re Montreal Maine & Atl. Ry., Ltd.*, 2016 WL 706185 (D. Me. Feb. 22, 2016) (same). And in fact, district courts often withdraw references of § 157(b)(5) motions and decide the motions in the first instance. *See In re Triad Grp., Inc.*, 2014 WL 580778, at *1 (E.D. Wis. Feb. 14, 2014) ("[T]he Court … withdraw[s] the reference" as an "intermediate step towards consolidating all pending personal injury claims."); *In re Saltire Indus., Inc.*, 2007 WL 1815450, at *2 (S.D.N.Y. June 22, 2007) (same); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 4 n.1 (S.D.N.Y. 2005) (same). Some courts have gone so far as to hold that "withdrawing the reference of personal injury actions is mandatory under the language of § 157(b)(5)." *McCorkle v. Herold*, 2018 WL 2470731, at *1 (W.D. Va. May 31, 2018); *see In re 610 W. 142 Owners Corp.*,

1999 WL 294995, at *2 (S.D.N.Y. May 11, 1999) (same).

Thus, there is no manifest injustice in the Court's decision to hear and determine the 157(b)(5) Motion in the first instance, and no reason for the Court to reconsider that decision.

**B.      There Is No Need for the Bankruptcy Court to Issue a Report and Recommendation on a Matter Committed Solely to this Court's Discretion**

The Committee agrees, as it must, that Congress has given this Court exclusive authority with respect to a § 157(b)(5) motion.  *See* Mot. at 2, 10.  The Committee argues, however, that the Court should ask the Bankruptcy Court to make a report and recommendation about how the Court should exercise its authority.  The Committee's arguments are not persuasive, for several reasons.

*First*, although the Committee's principal argument is that referral to the Bankruptcy Court "would promote the Court's efficient adjudication of the Petition," Mot. at 8, 10, it is difficult to imagine a *less* efficient procedure than the Committee's proposal.  The Committee would bifurcate resolution of the 157(b)(5) Motion into two duplicative phases: (1) a report-and-recommendation phase in the Bankruptcy Court, including a full round of briefing, argument, and recommendation by the Bankruptcy Court, followed by (2) an objection phrase in this Court, including a second round of briefing, argument, and *de novo* consideration as to whether the Court should abstain from fixing venue in this Court.  Yet referrals are disfavored when, as here, they would amount to "futile detour[s] requiring substantial duplication of judicial effort and needlessly burdening an already overcrowded docket in the Bankruptcy Court."  *Travelers Ins. Co. v. Goldberg*, 135 B.R. 788, 792 (D. Md. 1992).  Nor should the Bankruptcy Court be required to guess at the various considerations that might guide this Court's exercise of its discretion in determining whether to accept jurisdiction as Congress provided, or to abstain in favor of the state courts.

*Second*, efficient resolution of the 157(b)(5) Motion (one way or another) is particularly important in this case given the varying procedural postures of the State Court Actions.  Some

federal judges have retained jurisdiction of the removed cases. *See, e.g.*, *RKNassau1 v. Our Holy Redeemer Roman Catholic Church*, 2:23-cv-04866-BMC (E.D.N.Y.) Order (DN 12) (noting disagreement with another court's decision to remand related cases). Others have stayed the removed cases pending resolution of the 157(b)(5) Motion. *See, e.g.*, *Bargfrede v. St. Catherine of Sienna Roman Catholic Church*, 2:23-cv-04752-NRM (E.D.N.Y.) Order (DN 10) (staying case pending resolution of the 157(b)(5) Motion). And still others have remanded the removed cases to state court, where expedited discovery is beginning. *See, e.g.*, *R.M. v. St. Martha Roman Catholic Church*, 2:23-cv-04741-HG (E.D.N.Y.) Order (DN 13) (remanding 10 cases to state court). As a result, while the § 157(b)(5) Motion remains pending, the cases will move at different speeds in different fora, which will make coordination and efficient resolution more difficult.

*Third*, there are no "complex issues of bankruptcy law" implicated by the 157(b)(5) Motion. Section 157(b)(5) does not present issues of bankruptcy law at all. It is a *venue* provision in Title 28 of the United States Code (Judiciary and Judicial Procedure). And because Congress gave district courts exclusive authority to resolve motions to fix venue under § 157(b)(5), Bankruptcy Courts do not have any special competence to address the venue considerations that are committed exclusively to district courts.

Nor are the issues raised by the 157(b)(5) Motion legally "complex." Mot. at 8–9. Section 157(b)(5) is phrased in "mandatory language." *In re Twin Lab'ys, Inc.*, 300 B.R. at 840–41. Its "obvious purpose" is to "giv[e] particular priority to the centralization of bankruptcy-related personal injury claims in a single forum." *Id*. Indeed, the Second Circuit has instructed district courts that "[t]ransfer should be the rule, abstention the exception." *Pan Am*, 950 F.2d at 845. This presumption means, contrary to the Committee's arguments, that the typical multi-factor abstention analysis is muted and "applied with caution, taking account the strong legislative

presumption favoring transfer under § 157(b)(5)." *In re Twin Lab'ys, Inc.*, 300 B.R. at 841. Accordingly, in the "[§ 157(b)(5)] context, perhaps even more than elsewhere, federal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* (quotation omitted). And in any event, the abstention analysis is well within this Court's expertise as it requires consideration of the same factors implicated any time a bankruptcy-related litigant removes to federal court under section 1334(b). *See, e.g.*, *In re WorldCom, Inc. Secs. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003) (listing factors for whether to abstain and remand under section 1334(c)(1)); *Pan Am*, 950 F.2d at 845 (permissive abstention factors apply to § 157(b)(5) analysis).

*Fourth*, the state-court complaints themselves present straightforward issues of tort law in which this Court, rather than the Bankruptcy Court, has expertise. Indeed, "thanks to diversity jurisdiction" federal courts have a large "share of state-law personal injury cases." *In re Twin Lab'ys, Inc.*, 300 B.R. at 841. And because the Bankruptcy Court is prohibited by § 157(b)(5) from trying or entering final judgment on any personal-injury claims, this Court has far more experience as to what will be required to successfully try the State Court Actions. *See In re Roman Catholic Diocese of Rockville Centre*, 650 B.R. 765, 776–77 (Bankr. S.D.N.Y. 2023) (Glenn, J.) ("[A] Bankruptcy Court cannot assess the … merits of a personal injury tort claim.").

*Fifth*, any familiarity the Bankruptcy Court has with the bankruptcy proceedings writ large will not translate into special competence to address the 157(b)(5) Motion. The Committee points to the Bankruptcy Court's rulings on the PI motion and a motion to dismiss as evidence that the Bankruptcy Court has unique insight into the contours of § 157(b)(5). *See* Mot. at 9. But the substantive law governing those motions is not relevant to the factors the Court must consider in deciding whether to grant the transfer petition. The preliminary injunction decision probed whether section 362(a)(3) or section 105(a) mandated an injunction of the cases pending resolution

of mediation.  *See Roman Catholic Diocese of Rockville Centre*, 651 B.R. at 637–38.  And the motion to dismiss analysis asks, among other things, whether there is cause to dismiss the petition given "substantial or continuing loss to or diminution of the estate."  11 U.S.C. § 1112(b)(1), (b)(4)(A).  By contrast, § 157(b)(5) is a venue provision that asks whether the Court should transfer a set of personal injury cases to the Southern District for final adjudication by the Southern District.

### C.    The Committee's Attacks on Petitioners Are Unfounded

Finally, although the Committee's motion purports to seek a straightforward referral to the Bankruptcy Court, its brief included a series of unfounded attacks on Petitioners' "motivations" in seeking to fix venue in this Court.  Mot. at 2.  These attacks are unjustified and inappropriate.

The Committee, for example, repeatedly accuses Petitioners of attempting to delay survivors' ability to have their day in Court.  *See* Mot. at 2, 10.  But the reason the survivors' cases have not progressed is that the parties, including *the Committee* on behalf of the survivors, agreed to stay the State Court Actions for two-and-a-half years (from October 2020 to January 2023).  This *consensual* preliminary injunction order was lifted on June 16, 2023—just over two months ago—and Petitioners promptly sought to have the cases transferred to federal court for adjudication, as § 157(b)(5) contemplates.  At the same time, Petitioners have been preparing to adjudicate the merits of the cases, even while the forum for those cases remains uncertain.  The Committee's suggestion that Petitioners have unduly delayed the State Court Actions is just not true.

The Committee next accuses Petitioners of "forum shopping" by filing a 157(b)(5) motion.  Mot. at 2.  But it is *Congress* who chose a federal forum for personal injury cases related to a Bankruptcy Case.  *Congress* made the determination that it is most efficient for such personal injury actions to be adjudicated where the bankruptcy case is pending.  And *Congress* enacted § 157(b)(5) as a means of consolidating the personal injury cases in the bankruptcy home court.  *See In re Twin Lab'ys*, 300 B.R. at 841 ("Congress, in enacting § 157(b)(5), singled out [personal

injury] claims as the very ones it wanted transferred.").  The Committee may disagree with Congress' policy judgment and believe that personal injury plaintiffs should always be entitled to a state forum.  But Petitioners cannot be faulted for following Congress' policy that personal injury cases overlapping with bankruptcy claims are best adjudicated in this District.

Finally, the Committee asserts several times that Petitioners are "flouting the Bankruptcy Court's previous holdings by 'slinging arguments' that have been rejected."  Mot. at 2.  This is simply not true.  As the Committee knows, the PI Decision concerned *whether* the State Court Actions should move forward, not *where* those actions should be heard.  The PI Decision says nothing about whether the actions must proceed in state court.  That question was not raised or at issue, nor could it have been in light of this Court's exclusive authority to decide it.  And despite the Committee's rhetoric, it has not identified any specific way in which the PI decision (or any other decision) purports to address the merits of Petitioners' 157(b)(5) Motion.

The bottom line is that Petitioners are simply following the well-worn path established by Congress for addressing personal injury cases related to a bankruptcy case.  It is unfortunate that the Committee has chosen to attack Petitioners for this.  But however the Committee choses to characterize it, the fact remains that Petitioners have merely selected the forum that Congress selected for state-law based personal injury tort actions that are related to a pending bankruptcy case.  That is not an argument *against* a federal forum; it is an argument for it.  *See In re Twin Lab'ys, Inc.*, 300 B.R. at 840–41.

## CONCLUSION

For the reasons above, the Court should deny the Committee's motion for reconsideration and set a briefing schedule for resolution of Petitioners' 157(b)(5) Motion.

Dated:  August 31, 2023                          Respectfully submitted,

      New York, New York              */s/ Christopher DiPompeo*
                                     Christopher DiPompeo (*pro hac vice*)
                                     JONES DAY
                                     51 Louisiana Ave., N.W.
                                     Washington, D.C. 20001
                                     Telephone:  (202) 879-7686
                                     Facsimile:  (202) 626-1700
                                     Email:  cdipompeo@jonesday.com

                                          -and-

                                   Corinne Ball
                                   Todd Geremia
                                   Benjamin Rosenblum
                                   Andrew Butler
                                   JONES DAY
                                   250 Vesey Street
                                   New York, NY 10281-1047
                                   Telephone:  (212) 326-3939
                                   Facsimile:  (212) 755-7306
                                   Email:  cball@jonesday.com
                                          trgeremia@jonesday.com
                                          brosenblum@jonesday.com
                                          abutler@jonesday.com

                                   *Counsel for the Debtor and*
                                   *Debtor in Possession*

                                   Brian R. Davey
                                   Mulholland Minion Davey McNiff & Beyrer
                                   374 Hillside Ave
                                   Williston Park, NY 11596
                                   516-248-1200
                                   bdavey@mmlaw.us.com

                                   -and-

                                   Charles J. Adams
                                   Patrick F. Adams, P.C.
                                   3500 Sunrise Highway, Building 300
                                   Great River, NY 11739
                                   631-666-6200
                                   cjadams@pfapc.com

                                   *Counsel for the DRVC Related Parties*