# **Exhibit A**

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-12345-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

8

9           Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  September 6, 2023

17                  2:01 PM

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  JONATHAN

Page 2

1    HEARING re Hybrid Hearing RE: Eighth Application for Interim

2    Professional Compensation Feb 2023-May 2023 for Sitrick

3    And Company Inc. [Docket No. 2288, 2346, 2364].

4

5    HEARING re Hybrid Hearing RE: Fifth Application for Interim

6    Professional Compensation for Services as Counsel to Future

7    Claims Representative for Joseph Hage Aaronson LLC [Docket

8    No. 2318, 2346].

9

10   HEARING re Hybrid Hearing RE: Jones Day's Eighth Interim

11   Application for Allowance of Compensation for Services

12   Rendered and Reimbursement of Actual and Necessary Expenses

13   Incurred During Retention Period From February 1, 2023 to

14   May 31, 2023 [Docket No. 2302, 2346, 2364]

15

16   HEARING re Hybrid Hearing RE: Eighth Application for Interim

17   Professional Compensation and Reimbursement of Expenses

18   as Counsel to the Official Committee of Unsecured Creditors

19   for Pachulski Stang Ziehl & Jones LLP, Creditor Comm. Aty,

20   period: 2/1/2023 to 5/31/2023 [Docket No. 2324, 2346].

21

22   HEARING re Hybrid Hearing RE: Eighth Interim Application of

23   Alvarez & Marsal North America, LLC for Allowance of

24   Compensation for Services Rendered and Reimbursement of

25   Expenses Incurred as Restructuring Advisor to the

Page 3

1  Debtor During the Period from February 1, 2023 Through May

2  31, 2023 [Docket No. 2303, 2346, 2364]

3

4  HEARING re Hybrid Hearing RE: Fifth Application for Interim

5  Professional Compensation for Services as Financial Advisor

6  to Future Claims Representative (Amended) for Michael R.

7  Hogan, Other Professional, period: 2/1/2023 to

8  5/31/2023 [Docket No. 2328, 2346].

9

10  HEARING re Hybrid Hearing RE: Eighth Application for Interim

11  Professional Compensation for Professional Services

12  Rendered and Reimbursement of Expenses Incurred as Special

13  Counsel to the Debtor from February 1, 2023 through May 31,

14  2023 for Nixon Peabody LLP [Docket No. 2309, 2346].

15

16  HEARING re Hybrid Hearing RE: Third Interim Fee Application

17  of Jefferies LLC for Compensation for Professional Services

18  Rendered and Reimbursement of Expenses Incurred as

19  Investment Banker for Debtor and Debtor In Possession

20  from February 1, 2023 to and Including May 31, 2023 for

21  Jefferies LLC [Docket No. 2313, 2346].

22

23  HEARING re Hybrid Hearing RE: Fifth Application for Interim

24  Professional Compensation for services rendered and

25  reimbursement of actual and necessary expenses incurred for

Page 4

1    Forchelli Deegan Terrana LLP, Special Counsel,

2    period: 2/1/2023 to 5/31/2023 [Docket No. 2314, 2346].

3

4    HEARING re Hybrid Hearing RE: Fifth Application for Interim

5    Professional Compensation for Services as Future Claims

6    Representative for Robert E. Gerber, Other Professional,

7    period: 2/1/2023 to 5/31/2023 [Docket No. 2316, 2346].

8

9    HEARING re Hybrid Hearing RE: Second Application for Interim

10   Professional Compensation as Special FCC Counsel for

11   Lerman Senter PLLC, Special Counsel, period: 2/1/2023 to

12   5/31/2023 [Docket No. 2320, 2346].

13

14   HEARING re Hybrid Hearing RE: Eighth Application for Interim

15   Professional Compensation for Reed Smith LLP, Special

16   Counsel, period: 2/1/2023 to 5/31/2023 [Docket No. 2327,

17   2346].

18

19   HEARING re Hybrid Hearing RE: Eighth Application for Interim

20   Professional Compensation for Allowance of Compensation

21   and Reimbursement of Expenses as Special Insurance Counsel

22   for Burns Bair LLP, Special Counsel, period:

23   2/1/2023 to 5/31/2023 [Docket No. 2321, 2346].

24

25   HEARING re Hybrid Hearing RE: Eighth Application for Interim

Page 5

1    Professional Compensation and Reimbursement of Expenses

2    as Financial Advisor for Berkeley Research Group, LCC,

3    Consultant, period: 2/1/2023 to 5/31/2023 [Docket No.

4    2322, 2346].

5

6    HEARING re Hybrid Hearing RE: Debtors Motion for Entry of an

7    Order Further Amending the Bar Date Order. (Doc# 2404,

8    2450, 2451)

9

10   HEARING re Hybrid Hearing RE: Debtor's Sixteenth Omnibus

11   Objection/ Motion for Omnibus Objection to Claim(s) Number:

12   90430; 90447; 202436 to 2440048; 90036; 90301; 90283; 90456;

13   90023; 90247; 90379; 90255; 90483; 90429;

14   90321; 90363; 90261; 90413; 90455; 90454; 90450 90451;

15   90452; 90453; 90494; 90522; 90130; 90083; 90021;

16   90358; 90424 90380; 90214; 90215. (Doc## 2372, 2423, 2426 to

17   2428, 2430 to 2434, 2436 to 2440)

18

19   HEARING re Hybrid Hearing RE: Debtor's Motion, Pursuant to

20   Bankruptcy Rule 9019, Seeking Entry of an Order Approving

21   the Settlement Between the Debtor and Catholic Health System

22   of Long Island, Inc.. (Doc## 2385, 2386, 2419)

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 6

1    A P P E A R A N C E S :

2

3    JONES DAY LLP

4        Attorneys for the Debtor

5        250 Vesey Street

6        New York, NY, 10281

7

8    BY:  TODD GEREMIA

9        BENJAMIN ROSENBLUM

10       ANDREW M. BUTLER

11

12   PACHULSKI STANG ZIEHL & JONES LLP

13       Attorneys for Official Committee

14       Of Unsecured Creditors

15       780 Third Avenue, 34th Floor

16       New York, NY 10017

17

18   BY:  KAREN DINE

19       JAMES I. STANG

20

21

22

23

24

25

1   ROPES & GRAY LLP

2        Attorneys for CHS Services

3        1211 Avenue of the Americas

4        New York, NY 10036

5

6   BY:  GREGG M. GALARDI

7

8   UNITED STATES DEPARTMENT OF JUSTICE

9        Attorneys for the U.S. Trustee

10       201 Varick Street, Suite 1006

11       New York, NY 10014

12

13  BY:  GREG ZIPES

14

15  JOSEPH HAGE AARONSON LLC

16       Pro Se

17       800 Third Ave., 30th Floor

18       New York, NY 10022

19

20  BY:  ROBERT E. GERBER

21

22

23

24

25

Page 8

```
 1   HERMAN LAW

 2         1800 N. Military Trail, Suite 140

 3         Boca Raton, FL 33431

 4

 5   BY:  ANDREW SILVERSHEIN

 6

 7   BURNS BAIR LLP

 8         Special Insurance Counsel

 9         10 East Doty Street, Suite 600

10         Madison, WI 53703

11

12   BY:  TIMOTHY W. BURNS

13

14   FORCHELLI DEEGAN TERRANA

15         Special Real Estate Counsel to the Debtor

16         333 Earle Ovington Boulevard, Suite 1010

17         Uniondale, NY 11553

18

19   BY:  GERARD R. LUCKMAN

20

21

22

23

24

25
```

1   REED SMITH LLP

2          Special Insurance Counsel for Debtor

3          599 Lexington Avenue

4          New York, NY 10022

5

6   BY:  AARON JAVIAN

7

8   BRG

9          Financial Advisors

10          201 South Main Street, Suite 450

11          Salt Lake City, UT 84111

12

13   BY:  RAY STRONG

14

15   MERSON LAW, PLLC

16          Attorneys for Claimants

17          950 Third Avenue, 18th Floor

18          New York, NY 10022

19

20   BY:  SARAH R. CANTOS

21

22

23

24

25

Page 10

1   PORZIO, BROMBERG NEWMAN, P.C.

2        Attorneys for Arrowood Indemnity Insurance Company

3        1675 Broadway, Suite 1810

4        New York, NY 10019

5

6   BY:  BRETT S. MOORE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 11

                      P R O C E E D I N G S

1

2          CLERK:  All right, starting the recording for

3    September 6th, 2023 at 2 p.m., calling the Roman Catholic

4    Diocese of Rockville, New York.  Case Number 20-12345.  Are

5    parties ready to make appearances or do you want a few

6    minutes?

7          MR. GEREMIA:  Sure.  Ms. Anderson, Todd Geremia

8    from Jones Day for the debtor.

9          CLERK:  Thank you, Todd.

10          MR. ROSENBLUM:  Ben Rosenblum, Jones Day, for the

11    debtor.

12          MAN 1: 00:33, Jones Day for the debtor.

13          MS. DINE:  Karen Dine, Pachulski Stang Ziehl and

14    Jones on behalf of the committee.

15          CLERK:  Thank you.

16          MR. GALARDI:  Gregg Galardi for CHS Services --

17          CLERK:  Okay, thank you.

18          MR. GALARDI:  -- of Ropes and Gray.

19          CLERK:  All right.  I'm going to (indiscernible).

20    Again, any parties in the courtroom, please come to the

21    middle podium to state your appearance.

22          MR. ZIPES:  Hello, I can't see you but -- or the

23    camera, Greg Zipes with the US Trustee's Office.

24          CLERK:  Okay.  Thank you, Greg.  Is there anyone

25    else on Zoom that would like to note their appearance?

```
 1              MR. GERBER:  Yes, I will, Deanna.  Robert E.

 2     Gerber, future claims representative, appearing on my own

 3     behalf and on behalf of my firm, Joseph Hage Aaronson.  If

 4     he cannot speak on his own, I will also speak for Mr. Hogan.

 5              CLERK:  Thank you so much.  Any additional parties

 6     that are giving their appearance, please use the raised-hand

 7     function and state your appearance for the record.  Mr.

 8     Silvershein.

 9              MR. SILVERSHEIN:  Good afternoon, Andrew

10     Silvershein with Herman Law.  Thank you.  All right, Mr.

11     Burns.

12              MR. BURNS:  Good afternoon.  It's Tim Burns for

13     the committee, special insurance counsel, and for our law

14     firm, Burns Bair.

15              CLERK:  Thank you.  All right, Mr. Luckman.

16              MR. LUCKMAN:  Rod Luckman of Forchelli Deegan

17     Terrana, special real estate counsel to the debtor.

18              CLERK:  All right.  Thank you.  All right, Mr.

19     Javian.

20              MR. JAVIAN:  Good afternoon, Aaron Javian from

21     Reed Smith LLP, special insurance counsel to the debtor on

22     behalf of Reed Smith.

23              CLERK:  Thank you.  Mr. Strong.

24              MR. STRONG:  Yes, Ray Strong on behalf of BRG, the

25     financial advisor to the secured creditors committee.
```

1            CLERK:  Thank you.  Mr. Burns.  Mr. Burns, I don't

2    know if you can hear me.

3            MR. BURNS:  Oh, I can.  Do you hear me?

4            CLERK:  Yes, I can.

5            MR. BURNS:  I'm -- super.  I thought I had already

6    given my appearance.  So you may not have been able to hear

7    me at the time.  It's Tim Burns, special insurance counsel

8    for the committee and here I'm behalf of my law firm, Burns

9    Bair as well.  And with me, I believe or will be with me

10   shortly.  I meet in the (indiscernible) so in case I run

11   into communication problems, I have my colleague, Nathan

12   Kuenzi from my office, who will appear in my place.

13           CLERK:  Okay.  I did not see them admitted yet,

14   but I will make sure that he's admitted.

15           MR. BURNS:  Okay.  Thank you very much.

16           CLERK:  You're welcome.

17           MR. STANG:  This is Jim Stang.  I was only going

18   to speak if the Judge asked me.

19           CLERK:  Hi, Mr. Stang, you're coming in a little

20   choppy.

21           MR. STANG:  I was only intending to speak if the

22   Judge had questions from me.

23           CLERK:  Okay.  You're still coming in a little

24   choppy.  I don't know what if you want to try logging back

25   in -- out and coming in or --

1          MR. STANG:  I, I will try that.

2          CLERK:  Okay.  Again, for any parties that have

3     come into the courtroom, if anyone speaking on the record

4     has not given their appearance yet, please do so.

5          MS. CANTOS:  Sarah Cantos from Merson Law on

6     behalf of Claimants 9043, refiled as 90600; 90447, refiled

7     as 90599; and 90424, refiled as 90610.

8          CLERK:  Thank you.  And any parties in the

9     courtroom or on Zoom that are -- have not stated, stated

10    their appearance yet, please unmute your line and state your

11    appearance.

12          All right.  For the parties that have joined, if

13    anyone is speaking on the record this afternoon, please

14    unmute your line and give your appearance.

15          All right.  Again, if any parties are speaking on

16    the record this afternoon and have not given their

17    appearances, please unmute your line and state your

18    appearance for the record.

19          MR. MOORE:  Hello, this is Charles Moore with

20    Alvarez and Marsel, restructuring advisor to the debtor.

21          CLERK:  All right.  Thank you.  And any parties

22    that have joined, if you're stating your name on the record,

23    please unmute your line and state your appearance.

24          All right, counsel, are the parties ready or are

25    we waiting for anyone?  Perhaps starting with counsel in the

Page 15

1    courtroom?

2              MR. GEREMIA:  The debtor is ready, Ms. Anderson.

3              THE COURT:  Okay, thank you.  And the creditors

4    committee?

5              MS. DINE:  The committee is ready.

6              CLERK:  All right, thank you.

7              DEPUTY:  All rise.

8              THE COURT:  Please be seated.  Good afternoon,

9    everyone.  I haven't seen you in quite some time.

10             MR. BUTLER:  Good morning, Your Honor, Andrew

11   Butler with Jones Day for the debtor.

12             THE COURT:  Just give me a second.  Okay?  All

13   right.  Thank you.  Go ahead, Mr. Butler.

14             MR. BUTLER:  Your Honor.  We have four categories

15   of items set to be heard this afternoon.  Your Honor,

16   typically if the applications are heard last, we'd actually

17   propose to flip the script, have those heard first and let

18   any folks who are on for today's hearing --

19             THE COURT:  And also, I want an update.

20             MR. BUTLER:  Case update, Your Honor?

21             THE COURT:  Update on where things are in the

22   case.  It's been a while since we all have been here.

23             MR. BUTLER:  Of course, Your Honor.  So quickly

24   from the debtor's perspective, Your Honor, we -- following

25   Your Honor's decision on the motion to dismiss, we've been

1    hard at work to bring this case to a consensual resolution

2    by October 31st or before, if possible.  Your Honor, we've

3    focused those efforts in two main areas.  First, Your Honor,

4    we've focused on small-momentum-creating items, consistent

5    with Your Honor's admonition to try to make progress and

6    momentum.  Two of those items are on for hearing today.

7    Those are uncontested motions.  The first is the CHS motion

8    and the second is an amendment to the bar date.  Your Honor,

9    we see those as items that we sought to move forward.  The

10   committee is not opposed to those and we, we see them as

11   areas of agreement.  So we've heard Your Honor's admonitions

12   and we're seeking to bring those to Your Honor, Your Honor's

13   attention today.

14           Second, Your Honor, in coordination with the

15   mediators, we've been busy meeting with individual

16   plaintiff's firms.  We've held about a dozen meetings with

17   individual firms to educate them about their claims, discuss

18   the elements of a plan, and answer any questions they may

19   have.  We want to make sure that the plaintiff's firms know

20   what the debtor is proposing and what the plaintiff's other

21   options are.  We believe the motion to dismiss litigation

22   and hearing underscored the importance of this effort.  And

23   we've also been mediating with the committee.  We have,

24   we've had sessions since Your Honor's decision was issued on

25   the motion to dismiss and we have about a half dozen

1   sessions set up in the second half of September.

2           So we're actively pushing forward in those two

3   areas.  And if Your Honor has questions about the state

4   court litigation or the 157(b)(5) litigation, my colleague

5   Mr. Geremia would be happy to answer those.

6           THE COURT:  Yeah, I do have some questions.  So I

7   read Judge Gary Brown's decision remanding those removed

8   actions that were before him in the eastern district and he

9   indicated, with some alarm, the number of different judges

10  in the eastern district who had cases.  I only learned about

11  it because Bill Rochelle had a column about it, you know, on

12  the ABI, daily ABI blog.  So I don't, I have no idea what's

13  happened with the motions that you -- motion that you've had

14  pending in the southern district.  I don't know what's

15  happened with any of the other remand motions in the eastern

16  district.  Could you and -- could you fill me in about it

17  and then I want something filed on the docket in writing

18  that's an update and I realize those are not actions against

19  the debtor, but they're against the non-debtor parties.  And

20  I would like to know what's happened.

21          MR. GEREMIA:  Sure, Your Honor, just to, with

22  respect to --

23          THE COURT:  Please identify yourself.

24          MR. GEREMIA:  Todd Geremia from Jones Day for the

25  debtor.  There had been a proposal, we were talking with the

1   committee, as a conduit to plaintiff's counsel concerning

2   taking all those remanded cases and transferring them to the

3   southern district that we were not able to reach agreement

4   on.  So it didn't happen.

5               THE COURT:  Surprise, surprise.

6               MR. GEREMIA:  But we were trying to --

7               THE COURT:  I can't believe you even thought you

8   were going to do that.

9               MR. GEREMIA:  Well, we -- that was actually in

10  conjunction with a discussion that was partly fruitful,

11  which was to, to reach an agreement among all defense

12  counsel and all plaintiff's counsel in those cases to hold

13  off on discovery and initial conferences pending the remand

14  motions.  That we were successful, but we weren't able to

15  get an agreement on.

16              THE COURT:  So have remand motions been -- how

17  many cases were removed to the eastern district?

18              MR. GEREMIA:  There were approximately 200 cases

19  removed.  And of those, 137, I think to date, have been

20  remanded.

21              THE COURT:  How many judges have remanded cases so

22  far?  I only read the one opinion.

23              MR. GEREMIA:  Mr. Geremia.  I know it's about five

24  I think?

25              THE COURT:  Go ahead, Ms. Dine.

```
1              MS. DINE:  My understanding is that six judges

2    have remanded now, 142 cases, as of just yesterday.  That

3    there are, I believe, two judges who have not remanded their

4    cases.  One, I believe, was because he's waiting to hear

5    what the southern district does with the motion.  And I

6    believe there are at least about 71 cases still pending

7    where there's not been a decision.

8              THE COURT:  But motions have been made in those

9    other 71?

10             MS. DINE:  I believe so, yes, sir.

11             THE COURT:  All right.  So update me on where

12   things stand in, in the southern district.

13             MR. GEREMIA:  So in the southern district, the

14   committee, in a conference before Judge Schoenfeld, argued

15   that -- wanted to reargue the notion of whether the

16   reference should have been withdrawn from the bankruptcy

17   court in conjunction with the 157(b)(5) petition.  So the

18   judge in the district court allowed them to make a motion

19   for reconsideration with respect to withdrawing the

20   reference.  And that is being briefed now and will be fully

21   briefed by this Friday.

22             MR. STANG:  Your Honor, this is Mr. Stang.

23   (indiscernible).

24             THE COURT:  Could you wait a second, Mr. Stang?

25             MR. STANG:  Of course.  Of course, Your Honor.
```

Page 20

```
 1              THE COURT:  Anything else, Mr. Geremia?

 2              MR. GEREMIA:  No.  My understanding is there's not

 3      a -- there hasn't been a further briefing schedule on the

 4      petition itself until that motion for reconsideration is

 5      decided.

 6              THE COURT:  Okay.  And what -- so you say -- what

 7      briefs have been filed on?  You said it will be fully

 8      briefed by this Friday.  What, what briefs have been filed?

 9              MR. GEREMIA:  A brief in support of the motion for

10      reconsideration, an opposition by the petitioner of the

11      debtor, and there will be a reply as of Friday.

12              THE COURT:  Ms. Dine.

13              MS. DINE:  Your Honor, I just wanted to clarify

14      why, relative to the motion for reconsideration.  The

15      committee was not heard in the first instance on the motion

16      to withdraw the reference.  The debtor filed a letter motion

17      and the court withdrew the reference --

18              THE COURT:  Yeah, they have been referred here.

19      And then I saw a letter that the district court withdrew

20      them.  I've had no contact with anybody about it.

21              MS. DINE:  So the committee had not had a chance

22      to be heard on this issue.  And that is the reason for the

23      request.  It's not really the argument, but --

24              THE COURT:  Okay, when it's fully briefed, could

25      somebody send me all of the briefs that have been filed?
```

1          MR. GEREMIA:  Yes, Your Honor.

2          THE COURT:  Has the judge indicated whether she's

3   going to hear argument on it or just decide on the papers?

4          MR. GEREMIA:  I don't know the answer to that.

5          THE COURT:  Okay.  So I read the one opinion in

6   the eastern district.  Have any of the other judges written

7   opinions or they simply ordered to remand?

8          MS. DINE:  Your Honor, I do believe that two other

9   judges wrote opinions about one, I think, referring to just,

10  the first and the other, though, referring to that, but also

11  based on its own analysis of motion.

12         THE COURT:  Could you also send me whatever

13  opinions have been written on remand motions in the eastern

14  district.

15         MR. GEREMIA:  Yes, Your Honor.  Would Your Honor

16  like those filed on the docket or emailed the chambers or

17  both?

18         THE COURT:  Let's spare the docket.  It's very

19  long enough.  They're, they're on a public docket somewhere.

20  I just don't have them.  As I say, thanks to Bill Rochelle,

21  I read one of them.  So you can just send them to chambers.

22         MR. GEREMIA:  We will.

23         THE COURT:  All right.  They can, they can be

24  emailed attached as attachments to an email.  All right.

25  Anything else on the background?

1          MR. GEREMIA:  Not unless Your Honor has any

2    further questions.

3          THE COURT:  Mr. Stange wanted to be heard.  Go

4    ahead.

5          MR. STANG:  Thank you.  Your Honor.  Your Honor,

6    I'm in a place where my reception may not be adequate and I

7    turned off my video to try to enhance the audio.

8          THE COURT:  Okay.  I hope it's a nice place.

9          MR. STANG:  Not really, but it's the nice -- I'm

10   in Boston but it's not a nice hotel.

11         THE COURT:  Okay.

12         MR. STANG:  Your Honor, with respect to the

13   dismissal hearing, I hope somewhat tongue in cheek you asked

14   me, you told me I was being a bit thin-skinned when I was

15   commenting about how we had not been communicated --

16         THE COURT:  Mr. Stang, Mr. Stang, hold on.  I

17   think you need to back up a little bit from the microphone

18   because your, your voice is not coming through.  Try it

19   again .

20         MR. STANG:  So Your Honor, at the dismissal

21   hearing, I hope it was somewhat tongue in cheek, you said to

22   me, I seem to be a bit thin-skinned because I was commenting

23   that we had not been commented -- consulted about certain

24   mediations.  So with that in mind, we heard through the

25   grapevine several weeks ago, if not months now, maybe two

1    months, that the debtor had reached out to certain law

2    firms, including law firms representing committee members,

3    that they want to have these calls.  During our weekly

4    status call with the debtor, we asked about, are you doing

5    this?  Why are you doing it?  What are you saying?  We were

6    told it was -- well, we were not given subjective answers to

7    any of the questions.  We subsequently learned through

8    certain state court counsel about the calls and we asked --

9    we were asked through the mediator, if we could hear the

10   presentation made between those, with the counsel.  And

11   eventually, and I think eventually means about two weeks

12   ago, maybe a week now, Ms. Ball and her team gave us an

13   example of what they were saying to state court counsel,

14   without the detail (indiscernible) counsel's claims, because

15   they got into some claims information for district court

16   (indiscernible).

17           You said in your opinion on the dismissal motion,

18   that there needed to be a (indiscernible).  We understood

19   that the debtor's focus would be on negotiations with the

20   committee.  But it was not until we, in effect, demanded

21   through the mediators that we'd be given an exemplar

22   presentation that it was given to us.  And so we don't think

23   that's working the best efforts to the consensus that

24   (indiscernible).  So I wanted you to know what our

25   involvement was, and perhaps more importantly, our lack of

1    involvement and how the debtor has gone around to individual

2    law firm to try to communicate what I have to call a

3    proposal.  So I want, I just want you to know that.

4              THE COURT: You know, Mr. Stang, I have no

5    involvement in the mediation.  The judicial comediator was

6    appointed by the district Court.  I certainly entered an

7    order clarifying that, that, you know, in my view, hopefully

8    it covered the bankruptcy case as well.  I've had absolutely

9    no communications with either of the mediators.  Indeed, I

10   was going to ask today what the status of mediation is.  If,

11   you know, all I can say is if you have complaints about who

12   is or is not included in the mediation, take it up with the

13   mediators.  I'm, you know, I have no involvement whatsoever

14   other than active encouragement with the mediation.  I hear

15   you loud and clear.  I'm sure you were loud and clear with

16   the debtor's counsel expressing your displeasure, but, you

17   know, take it up with the mediators.

18             MR. STANG:  Your Honor, I just wanted to, when,

19   when counsel for the debtor stands up and gives you a report

20   on their efforts to reach the October 31 deadline of a

21   consensual plan, I thought it was appropriate for me to

22   respond to let you know to what extent the committee has

23   been involved or not involved in those efforts.  I'm not

24   asking you to obviously, -- I hope it's obvious -- I'm not

25   asking you to intervene in the mediation or do anything

Page 25

1    about the mediation, but I can't quietly while counsel

2    advertised to you what they're doing to reach the deadline,

3    which I thought was an incomplete depiction of the

4    situation.

5              THE COURT:  Okay.  So look, I'm just going to

6    reiterate, I came, I brought with me a copy of my order

7    denying the motion without prejudice.  It's ECF 2329 and on

8    Page 8, Paragraph Number 2, says, The Court finds that the

9    debtor's deadline is more reasonable under these

10   circumstances.  For that reason, the Court orders that the

11   debtor file an amended plan of reorganization and disclosure

12   statement or at a minimum -- or at minimum, a term sheet for

13   a plan that is supported by both the debtor and the

14   committee by October 31, 2023.  Time is a running.  I was

15   serious about what I said in the order.  So we'll see.

16             MR. GEREMIA:  I have a few words in response,

17   Judge.

18             THE COURT:  Not yet.  Go ahead, Mr. Stang.

19             MR. STANG:  As I say, I'll leave it to Mr. Geremia

20   to tell you what the scheduling is for the mediations that

21   are with the committee.  I think it's more appropriate that

22   he do.

23             THE COURT:  You all better light a fire under

24   everybody and move along.  I was serious about that date.  I

25   remain serious about the date.

1              MR. STANG:  I -- sorry, I apologize.

2              THE COURT:  I don't want to be the first judge to

3     dismiss a diocese case, but it may be, it may be.  I

4     thought, well -- other judges, other district judges will

5     deal with the ploy to remove state court actions, which was

6     a central part of the decision that I rendered on the

7     preliminary injunction.  That's for them to decide, not for

8     me, but you all better get real if you think that these

9     cases are going to get resolved in bankruptcy.  They'll all

10    become moot if I dismiss the case.  Your efforts to remove

11    cases on bankruptcy jurisdiction will be moot after the end

12    of October.  Now you also have to contend with the Supreme

13    Court's grant of cert in Purdue.  Anything else to report?

14             THE COURT:  Let's move on to the docket.  Mr.

15    Butler, I'm happy to take things out of order that you

16    requested.

17             MR. BUTLER:  Absolutely, Your Honor.  The agenda

18    at Docket Number 2459.  Apologies, Your Honor --

19             THE COURT:  I have a copy of it.

20             MR. BUTLER:  Andrew Butler, Jones Day, for the

21    debt.  The agenda does have interim fee applications first.

22    We propose to take those first.  And, Your Honor, they're

23    listed in the order that they were filed.  We're happy to

24    take them in that order or any or in any other order Your

25    Honor prefers.

1          THE COURT:  Mr. Zipes, do you want to be heard

2     before we start going through them one at a time?  Do you,

3     do you have issues you want to raise on behalf of the US

4     Trustee?

5          MR. ZIPES:  Your Honor, I'll come to the mic.  I

6     really don't have that much to say.  Your Honor, Greg Zipes

7     with the US Truste's Office.  Obviously, legal fees and

8     professional fees are high in this case and my office has

9     had discussions with the various professionals.  We are, to

10    a certain degree, deferring some of our issues because

11    there's a lot of litigation and other issues that the

12    parties are focused on.  But one issue that we've been

13    discussing is, is a holdback on a, on a going-forward basis.

14    And, Your Honor, there is, in effect, a holdback based on

15    the monthly statements.  And, Your Honor, we're going to

16    have that discussion with, with the professionals, whether a

17    holdback is appropriate.

18          THE COURT:  Okay.

19          MR. ZIPES:  But Your Honor, I should also mention,

20    which I didn't, that we, we are reviewing all the fees as

21    they come along.  We have some overall questions, but again,

22    some of them are tied to litigation and, and what's going on

23    in the case.  And we're, we're holding off on some possible

24    objections for that reason.

25          THE COURT:  Okay.  So obviously whatever I do on,

1    on interim fee applications is subject to be at any final

2    applications.  So it doesn't, you, you're well within your

3    rights, the US Trustee, to continue to raise issues and

4    perhaps put them off until there's a final, request for

5    final approval when we get to that.

6             MR. ZIPES:  That's, that's our understanding and

7    that, that's everybody's understanding, Your Honor.  I can

8    speak for everybody else on that.

9             THE COURT:  Thank you, Mr. Zipes.  I appreciate

10   that.  There -- Mr. Butler, there, there are a few where I

11   have questions.  I think, you know, there's a lot, 14

12   applications, a lot of money.

13            Let me raise the ones that I have the specific

14   questions about.  You know, some of these questions really

15   stem back from -- obviously, I took this case over from

16   Judge Chapman.  The procedures on fee orders had all been

17   entered before I took over the case.  And so I previously

18   raised with the committee where some of the experts that

19   they had retained, whether there was sufficient information

20   included.  And I think we've got a long way to solving that.

21   The one, one of those that I have a question for this

22   hearing is the, the Reed Smith application, ECF 2327.  It

23   also includes the request for reimbursed fees and expenses

24   incurred by KCIC, the debtor's consulting expert.  That

25   amount is $379,767.50, see their application in Paragraph

1    24.  And I appreciate that Reed Smith says they reviewed the

2    KCIC's fees and expenses for reasonableness and believes

3    they are.  So the expert retention order does not require

4    the debtor or committee, as applicable, to submit detailed

5    statement or invoices with respect to services rendered or

6    expenses incurred by the experts, in expert retention order,

7    Paragraph 3.  Reed Smith has provided unredacted copies of

8    the KCIC invoices to the Court and the US Trustee.  It's in

9    the application at Paragraph 25.  I think in this case,

10   these invoices are sufficiently detailed and do not contain

11   block billing and Reed Smith indicated at a high level

12   KCIC's work during the interim period centered on work

13   relating to valuation matters.

14           I'm going to approve it, but I'm, I'm concerned

15   that I'm not, you know, I'm -- and I understand this is an

16   order that's in place.  I'm not saying change it.  I'm just

17   concerned, I don't know whether Mr. Zipes, whether you've

18   had the ability to dig down on some of this.  I'm dropping

19   my pen -- hang on, I drop something.  This is a different

20   one.  I'm sorry.  Maybe you can tell me, Mr. Zipes, what --

21   because this came up with the committee and one of their

22   experts, and this is the Reed Smith expert that's included,

23   it's a concern that I have.  I think this one, Reed Smith

24   did provide a lot of detail about it, but there's big

25   dollars that are, that are going into some of these

1    applications, which would not be the normal way of handling

2    them.

3         MR. ZIPES:  Your Honor, Greg Zipes with the US

4    Trustee's Office.  My office did review those fees and we

5    completely agree with the Court that there are large fees

6    involved here.  There are, there are complex issues that the

7    parties are working on.  And again, my office is taking a-

8    wait-and-see approach on, on these matters generally.  In

9    retrospect -- or not in retrospect, but as we review fees

10   more closely, it may be that we'll be asking for reductions.

11   But as of now, we're not objecting.

12         THE COURT:  Okay.  And let me just see, let me

13   browse through my notes and see whether I have other

14   specific questions.  Again, I'm going to approve it, but it,

15   it sort of jumps out at you when you look at the size of the

16   figures and it's not the normal way it's done.  In respect

17   to the Chelsea Stang application, I think they have provided

18   substantially more detail than prior applications with

19   respect to the retained experts, Rock Creek Advisors,

20   Actuarial Value LLC, Rubin Law Group, Chartered, CBRE, Claro

21   Group/Stout Risius Ross.  These fall into the category of

22   outside services.  Well, no.  So Chelsea Stang has not

23   provided information concerning other service providers

24   whose expenses also fall in the outside services category

25   including Mobile Parcel Carriers, Press Release, Everlaw

1    Specialized Legal Services and Horowitz Agency.  The time

2    sheets reflect that Chelsea Stang has paid the invoices to

3    the service providers without further description.  See the

4    Chelsea Stang application at 115.  While the amounts paid to

5    the service providers that I'm referring to now are less

6    substantial than the amounts paid to the other experts where

7    I've raised your questions, I'm still -- it makes me

8    uncomfortable.  I mean these add up to lots of dollars.  I'm

9    going to approve them.  And I appreciate that you did

10   provide a lot more detail on, on, on most of the outside

11   experts.

12            MR. STANG:  Your Honor --

13            THE COURT:  Go ahead, Mr. Stang.

14            MR. STANG:  James Stang.  If I may?  I think for

15   those other service providers, I don't think they fall into

16   this expert category.  So for example, Everlaw is the

17   platform that holds the documents that get produced and it

18   functions as a database.  And I think that's why we didn't

19   give a description of those.  But certainly in the next

20   application, we can provide a little more --

21            THE COURT:  A little more, please.  Okay.  And I

22   appreciate that.  And, again, I think in response to the

23   comments that I had at the prior hearing, I think you've

24   given a lot more details.

25            MR. STANG:  And I believe Your Honor also should

1    have received the detailed invoices from all of the experts.

2              THE COURT:  That's what I love to do, go through

3    all these detailed invoices.

4              MR. STANG:  I'm sure you do.

5              THE COURT:  My favorite task, as I'm sure it is

6    Mr. Zipes.  AI is not there yet, so it's our task.

7              THE COURT:  All right, let me look quickly and see

8    whether I have other comments.  I'm not picking on anybody

9    about this.  It's just when I look at these numbers, they're

10   staggering.  It just -- I take it seriously.

11             All right.  Let me go through this quickly.  What

12   I have is -- and you can confirm these are the numbers,

13   okay? -- the Jones Day application seeks fees of $5,907,378

14   and expenses of $87,050.23.  The application is ECF 2302.

15   Is that correct?

16             MR. BUTLER:  Yes, Your Honor.

17             THE COURT:  All right.  It's approved.  The Reed

18   Smith application is that ECF 2327.  It seeks fees of

19   $1,024,258.50, expenses of $5432.08.  Fees and expenses

20   sought by KCIC, LLC, $379,767.50.  Do I have all those

21   numbers right?

22             MR. BUTLER:  Yes, Your Honor.

23             THE COURT:  Okay.  They're approved.  And those

24   are both, the Jones Day and Reed Smith is eighth interim

25   application.  And then the eighth interim application of

Page 33

1    Alvarez and Marsel North America, LLC, ECF 2303, fees,

2    $660,210, expenses, $5408.93.

3                  MR. BUTLER:  Yes, Your Honor.

4                  THE COURT:  Approved.  The eighth interim

5    application of Nixon Peabody, ECF 2309, fees, $383,933.50,

6    expenses of $657.32.

7                  MR. BUTLER:  Yes, Your Honor.

8                  THE COURT:  Approved.  The eighth interim

9    application of Citric and Company, ECF 2288, fees, $14,510,

10   no expenses.  Approved.  Pachulski Stang, application is at

11   ECF 2324, fees, $4,649,399.75, expenses, $395,540.85.

12                 MR. BUTLER:  Yes, Your Honor.

13                 THE COURT:  Approved.  Eighth interim application

14   of Burns Bair, LLP, as special insurance counsel to the

15   creditors committee, fees, $346,389.75, the expenses

16   $7618.93.

17                 MR. BUTLER:  Yes, Your Honor.

18                 THE COURT:  Approved.  Eighth interim fee

19   application of Berkeley Research Group, LLC, ECF 2322, fees

20   sought, $844,859, expenses $335.04.

21                 MR. BUTLER:  Approved.

22                 THE COURT:  Approved.  Fifth interim application

23   for Forchelli Deegan Terrana LLP, ECF 2314, fees,

24   $46,020.50, expenses $27.00.

25                 MR. BUTLER:  Yes, Your Honor.

1              THE COURT:  Approved.  Fifth interim application

2    of the future claims representative, ECF 2316.  Fees,

3    $114,940; expenses $562.90.

4              MR BUTLER:  Yes, Your Honor.

5              THE COURT:  Approved.  Fifth interim fee

6    application of Michael R. Hogan, ECF 2328.  Fees, $14,365;

7    no expenses.

8              MR BUTLER:  Yes, Your Honor.

9              THE COURT:  Approved.  Fifth interim fee

10   application of Joseph Hage Aaronson LLC, ECF 2318.  That's

11   Gerber's counsel.  Fees, $48,082.50; expenses $784.23.

12             MR BUTLER:  Yes, Your Honor.

13             THE COURT:  Approved.  Third interim fee

14   application of Jeffreys LLC, ECF 2313.  Fees, $350,000; no

15   expenses.  Approved.

16             Second interim application of Lerman Senter PLLC,

17   ECF 2320.  Fees, $6,532.50; no expenses.  I'm going to

18   approve it, but I won't - again, the application doesn't

19   break the hours into the billing categories, and time was

20   not billed in one-tenth increments.  That's required by the

21   fee guidelines.  I debated whether to just turn it down and

22   require them to resubmit it.  I'm approving it this time.

23   Mr. Zipes, it may be something, at the end of the day, that

24   you're going to look at, but I won't again.  So, you can

25   tell them that they'll follow the guidelines or they won't

Page 35

1      get fees approved.

2              So, this case was filed on October 1, 2020.  On

3      November 4, 2020, Judge Chapman entered an order

4      establishing procedures for interim compensation,

5      reimbursement of expenses of professionals.  That's ECF 129.

6              Pursuant to the interim compensation, each

7      professional seeking monthly compensation, must file a

8      monthly fee statement with the Court and serve it upon the

9      Debtor, Debtor's counsel, the US Trustee, and the Committee.

10     If no party objects to the monthly fee statement within 15

11     days, the Debtor must pay 80 percent of the fees and 100

12     percent of the expenses requested in each monthly statement.

13     The remaining 20 percent of the fees for each monthly fee

14     statement shall be withheld from payment until further order

15     of the Court.

16              There's objection deadlines, etc.

17              I look at these figures, and I look at where this

18     case is, and I'm aghast.  If the fees in this case had gone

19     to the victims of sexual abuse, there would be a lot more

20     money available.  And I'm not picking on any firm.  I'm not

21     questioning the work that's been done.  I'm questioning

22     where we are almost three years into the case.  From my

23     standpoint, little or no discernible progress.

24              The clock is running.  I just briefly saw, I

25     think, the Debtor has filed an application.  It's in

```
 1   discussions with a potential financer secured by insurance.

 2   And I think -- I may have (indiscernible), just before I

 3   came on, the Committee is opposing the disclosure that the

 4   insurers -- they want to do due diligence.  I understand

 5   they want to -- not the insurance -- the financing party

 6   wants to do due diligence about the claims.  Am I wrong on -

 7   - Ms. Dine?  I thought I saw an objection.

 8              MS. DINE:  Your Honor, we're not objecting.  We've

 9   had numerous discussions with the Debtor to resolve our

10   concerns about the release of information and the proofs of

11   claim to the financer.  But I think that we have --

12              THE COURT:  Have you worked it out?

13              MS. DINE:  We've worked it out.  And then, as we

14   move forward, to be clear, they are producing the

15   information.  We'll be able to evaluate it on a case-by-case

16   basis.

17              THE COURT:  Okay.

18              MR. BUTLER:  And Your Honor, next week --

19              THE COURT:  Mr. Butler, go ahead.

20              MR BUTLER:  Apologies, Your Honor.  Andrew Butler

21   of Jones Day for the Debtor.  Your Honor, next week, the

22   Committee has a motion set for hearing to seek Rule 2004

23   information from Arrowood, that Arrowood filed an objection

24   yesterday, which might be what Your Honor is referencing.

25              THE COURT:  Maybe.  Okay.  I'm frustrated.  That
```

1    ought to be clear to all of you.  And you know, why the

2    Debtor thinks it can pick off Plaintiff's lawyers one at a

3    time and not include the Committee, you're going to need the

4    Committee's cooperation.  If there's going to be a plan

5    that's going to draw the support of the Committee, the

6    Committee can't be the last at the table to hear about it.

7              I don't control what goes on in the mediation; the

8    mediators can do that.  I'm just reiterating, I was serious

9    when I entered that order denying the Motion to Dismiss the

10   case without prejudice.  I see Diocese, Archdiocese cases

11   being filed all over the country.  I don't know, Ms. Dine,

12   whether your firm is representing Creditors' Committees in

13   some or all of those cases.

14             Is it Penn State Law School that has a website on

15   Catholic diocese, archdiocese cases?  I think it was Penn

16   State Law School.  I've seen, you know, they list all the

17   cases that have resulted in confirmed plans, all of those

18   that remain pending and how long.  I'm just frustrated.

19   Maybe I don't have the same patience that some of the other

20   judges who've had cases pending for three years ...  Does

21   the Debtor plan to file a proposed plan disclosure statement

22   before the end of October?

23             MR. ROSENBLUM:  Your Honor, Benjamin Rosenblum

24   from Jones Day on behalf of the Debtor.  Your Honor, we

25   heard Your Honor's message at the Motion to Dismiss, hearing

1   load and clear, ruling, loud and clear.  We are working to

2   come to a consensual plan.  We, with the Committee we

3   disagreed with the characterization that Mr. Stang made

4   about us running off and speaking to State Court lawyers.

5   We absolutely are speaking with Plaintiff's firms directly,

6   in part because we want to make sure that the constituents

7   in this case understand the Debtor's position.  We are also

8   speaking with the Committee.

9         We told the -- we asked Mr. Stang at the outset if

10  he objected with us speaking with State Court lawyers, and

11  the response was, "Have at it."  So, we did.  We also

12  continue to speak with the Committee, and you heard Mr.

13  Stang say he got the same presentation that the State Court

14  lawyers received.  So, we disagree with the

15  characterization.

16        But we intend to file a plan, if we can reach an

17  consensual plan.  And we understand the sort of deadly

18  seriousness of October, the end of October.  We understand

19  the deadly seriousness of the fees being incurred in this

20  case.  I think that the Committee does too.  I think all of

21  the parties share Your Honor's frustration and we're working

22  very hard on it.

23        THE COURT:  I'd say I would increase the hold back

24  to 50 percent, but this case may not survive the end of

25  October.  Let's move on (indiscernible).

1           MR BUTLER:  Thank you, Your Honor.  Andrew Bulter

2     with Jones Day for the Debtor.

3           Your Honor, next on the agenda, we have two

4     uncontested motions.  The first is at Docket No. 2385.

5     That's the Debtor's motion seeking entry of an order

6     approving the settlement between the Debtor and Catholic

7     Health System of Long Island, Inc.

8           Now, Your Honor, just a few sentences on

9     background on this motion.  It's not contested, but to

10    orient the Court, Catholic Health Services, or CHS -- their

11    counsel is here in the courtroom today -- they are seeking

12    an opportunity to take responsibility for their legacy

13    workers' comp claims.  The Diocese, when -- it has an

14    insurance program, referred to colloquially as ISIP, and it

15    has a deposit with the Workers' Comp Board; about $7.6

16    million, that secures those legacy workers' comp claims.

17          CHS is interested in taking the responsibility to

18    be the first payer on those legacy workers' comp claims.

19    And, in exchange for taking on those legacy workers' comp

20    claims, both its claims and the Diocese' claims, the Diocese

21    has entered into -- is seeking authority under this motion,

22    to enter into a term sheet that would give CHS the right to

23    that $7.6 million deposit held by the Workers' Comp Board.

24    And then, there's a deal that we struck on interest.  So,

25    the Diocese would get the first five years of interest from

Page 40

1   the date of the entry of any settlement documentation, from

2   that date until five years out.  And then, from five years

3   after CHS, we get the interest from that date on.

4          So, Your Honor, this motion seeks the Debtor's --

5   seeks authority from the Court for the Debtor to enter into

6   this term sheet.  And after that, we would draft and agree

7   on definitive documentation with CHS.  And we've had a

8   dialog with the Committee about this motion.  They don't

9   object to it.  And just quickly, for the record, Your Honor,

10  if I could, would request the declaration of Mr. McDermott,

11  who is here in the courtroom today, in support of the

12  motion.

13          THE COURT:  ECF 2386?

14          MR BUTLER:  Be moved into evidence, yes, Your

15  Honor.

16          THE COURT:  Any objections?  It's admitted into

17  evidence.

18          (Plaintiff's Exhibit is admitted into evidence)

19          MR BUTLER:  Thank you.  If Your Honor has no

20  further questions, we'd request that the proposed order be

21  entered.

22          THE COURT:  Ms. Dine, do you want to be heard?

23          MS. DINE:  Your Honor, Karen Dine, Pachulski Stang

24  Ziehl & Jones on behalf of the Committee.  As Mr. Butler

25  noted, we have no objection, and the Debtor did work with us

Page 41

1    on this motion and consulted with us.  And we think that the

2    relief is in the best interest of the estate.

3            THE COURT:  It's approved.  Thank you.

4            MR BUTLER:  Thank you, Your Honor.  Again, Andrew

5    Butler of Jones Day for the Debtor.  The final uncontested

6    motion set for hearing today is at Docket No. 2404.  This

7    seeks an amendment to the bar date.  Your Honor, this

8    motion, as with the prior motion, is uncontested.  The

9    Diocese is looking for permission to let litigation funders

10   do due diligence on an Arrowood claims pool, so that they

11   can make financing proposals to the Debtor.

12           Arrowood is an insurer for the Debtor's historical

13   sexual abuse liability.  They have ... an insurer for more

14   than half of the claims, so it's a significant insurer here.

15   They're under supervision in the State of Delaware, and they

16   may be under even further supervision by the State of

17   Delaware shortly.  And in that event, we have litigation

18   funders that would be willing to make funding to the Diocese

19   secured by the Diocese' claim against the New York State

20   Liquidation Bureau, which would cover any shortfall if

21   Arrowood is unable to pay amounts, if any, due to the

22   Diocese, on account of those historical sexual abuse claims.

23           So, in order to fund, these litigation funders

24   need to look at the proofs of claim or data extracted from

25   the proofs of claim, to evaluate the quality of the

Page 42

```
 1   collateral.

 2            THE COURT:  What's the dispute about discovery?

 3   Obviously, I got it wrong as to who was objecting.  Does it

 4   relate to this, that Arrowood is objecting to --

 5            MR BUTLER:  It relates to Arrowood, Your Honor.  I

 6   won't describe the Committee's motion for you; it's the

 7   Committee's motion.  But there are two separate things:

 8   Arrowood is involved, theoretically, in both.  This is a,

 9   would be a litigation funding that's collateralized by the

10   Diocese claim against the New York State Liquidation Bureau,

11   and then I'll let the Committee describe their 2004 motion

12   for you, if they'd like.

13            THE COURT:  Okay, sure.  Ms. Dine?

14            MS. DINE:  Your Honor, Karen Dine again, Pachulski

15   Stang Ziehl & Jones on behalf of the Committee.  These are

16   two separate items.  The Committee has made a motion under

17   2004, seeking certain information from Arrowood regarding

18   its ability to pay claims in the future.  And that is

19   separate and apart from the Debtor's efforts to potentially

20   monetize claims, which we certainly encourage; though at

21   this point, we don't know enough about the proposal, and to

22   whether the Committee would consent to it, or not.  But in

23   terms of trying to move it forward and do the due diligence,

24   our main concern was, in providing the information from the

25   proofs of claim, that even if redacted, that there is
```

1    specific information about abuse and about the survivors

2    themselves, in terms of where they went to school.  So,

3    we're trying to make sure it's done in stages, to protect

4    that information as much as possible.

5                 THE COURT:  That motion, which is not on for

6    today, and our objection to it, is not on -- am I correct?

7                 MS. DINE:  We are not objecting to that motion,

8    and that is the motion Mr. Butler is presenting.  The 2004

9    motion, I believe, is set for the 26th.

10                THE COURT:  Yeah, I just -- you know, I was

11   looking (indiscernible) at the docket --

12                MS. DINE:  The 12th, I'm sorry.

13                THE COURT:  -- before coming on the bench, and I

14   saw it there and, wait a second, does that -- as soon as I

15   saw Arrowood, I was concerned that it was a -- you know, it

16   was going to affect what happened today with respect to this

17   motion.

18                MS. DINE:  No, Your Honor, they're two distinct

19   issues and that, the motion that the Debtor is making does

20   not involve getting discovery from Arrowood; it involves

21   information from the proofs of claim, which was the

22   Committee's concern.  And I misspoke, I believe the 2004 is

23   scheduled for September 12.

24                THE COURT:  Okay, all right.  This motion is

25   approved Mr. Butler.

Page 44

1          MR BUTLER:  Andrew Butler, Jones Day for the

2   Debtor.  Your Honor, that wraps up the agenda except for

3   claim objections.  So, I'll turn it over to Mr. Geremia.

4          THE COURT:  Okay.

5          MR. GEREMIA:  Good afternoon.  Todd Geremia of

6   Jones Day for the Debtor, and may it please the Court.

7          This omnibus claim objection addresses claims that

8   were previously disallowed by the Court, and as to which the

9   Court afforded Claimant's leave to amend.  The claims in

10  this objection fall into three categories that we addressed

11  in our reply brief.

12         The first category, and that's most of them, are

13  claims where there have been no real material amendments.

14         THE COURT:  Yeah, so with the sixth omnibus, when

15  I granted the sixth omnibus objection, I granted leave to

16  amend as to many of the claims.  And they did.  And you

17  objected to the amended claims, essentially arguing that

18  they really didn't address the issue that the Court -- the

19  basis for the Court's ruling, in the sixth.  That basically

20  --

21         MR. GEREMIA:  That's correct, Your Honor.  And as

22  Your Honor, I'm sure recalls, in connection with the sixth

23  omnibus claim objection, there were the claims.  And in many

24  cases, complaints attached to those claims.  But then, of

25  course, the responses, where Claimant's counsel put in a lot

Page 45

1    more information.  And the Debtor didn't object to the Court

2    considering those responses and the assertions made in them

3    in ruling on the sixth omnibus objection.

4            So, Your Honor already addressed all of that

5    material, found it inadequate to state a claim against the

6    Debtor.  And really, as to almost all of the claims at issue

7    now -- the Anderson response is a little distinct -- it's

8    simply recycled material that was previously submitted in

9    connection with the sixth omnibus --

10           THE COURT:  So, the record is clear.  You'll

11   correct me if I'm wrong, it's a while already.  When I ruled

12   on the sixth omnibus objection, it was focused on religious

13   orders or institutions within the geographical area of the

14   Diocese, where the Debtor's position is these were

15   independent religious orders, or institutions, not under the

16   control of the Diocese, and that they had failed to state a

17   claim against the Diocese.

18           MR. GEREMIA:  That is correct, Your Honor.  Little

19   Flower is an additional one that was run by the Diocese of

20   Brooklyn.

21           THE COURT:  In several of the opinions I issued on

22   claim objections, I recounted the standards, the federal

23   pleading standards, which I think I referred to and no one

24   really disputed, is more stringent than the state pleadings

25   standards.  And that because the proof of claim forms only

```
 1    required fairly simple information that didn't really go to

 2    the elements of the claims under the state law claims, I

 3    asked you about considering what they had put in their

 4    responses, and you said that would be permissible.

 5               Nevertheless, I sustained objections to give them

 6    a chance to come back with more if they thought they had

 7    more.  And that's where we are now, on the 16th omnibus

 8    objection.

 9               MR. GEREMIA:  That's all correct, Your Honor.

10               THE COURT:  So, do you believe that any of the

11    proposed amended claims satisfy the federal pleading

12    standards?  And if not, why?  So, I think you acknowledge,

13    that I think Anderson had added some -- I think it was

14    Anderson you referred to -- had added some allegations that

15    had not been in the responses.

16               MR. GEREMIA:  There's a new theory that had not

17    been before Your Honor, in connection with the sixth omnibus

18    claim objection.  And that is, in the Anderson responses,

19    it's single brief submitted on behalf of all the claims at

20    issue, addressed by the Anderson firm.  And the Anderson's

21    firm notion is that because, pursuant to canon law, the

22    bishop confers and remove faculties for priests within the

23    Diocese, that that is tantamount to hiring them, by

24    bestowing faculties; firing them by removing them.

25               That is not the case.  Faculties are, as a matter
```

1    of Roman Catholic doctrine, in a phrase, the authority under

2    Catholic Church doctrine, to engage in religious rituals.

3    It is ... we addressed it in some more detail in our brief,

4    but the authority to baptize individuals, to anoint the

5    sick, the administer the Eucharist, hear confessions, to

6    engage in priestly activities in accordance with Roman

7    Catholic doctrine.  It is not tantamount to secular hiring

8    and firing individuals.

9            And in fact, the very notion has been addressed

10   before in the Bouchard case, that we cite in our papers.

11   That was an instance where a woman claimed that she was

12   abused by a priest who -- a religious order priest, I

13   believe -- who was visiting the Archdiocese of New York, and

14   visiting within a parish, and was hired by that parish.

15   That is a different circumstance than all of the claims that

16   are at issue here, where religious order priests worked at

17   separately run institutions, not diocesan parishes.

18            So, we don't believe that that moves the needle in

19   any meaningful way.  Your Honor addressed canon law in some

20   detail in the sixth omnibus opinion.

21            THE COURT:  I never thought I would have to, but I

22   did.

23            MR. GEREMIA:  And ultimately, ruled that none of

24   that discussion of doctrine redounded to real world facts,

25   reflecting that the diocese hired, fired, or controlled the

1   alleged abusers, or the institutions at issue.  Faculties,

2   the conferring of faculties, doesn't move that needle any

3   further either.  It's simply the bishop's authority to

4   determine whether a priest can administer religious rituals

5   in accordance with Catholic doctrine.

6           The Anderson response doesn't respectfully say

7   much about that, complains a lot about the objections being

8   made.

9           THE COURT:  There were a lot of responses other

10  than the Anderson response.  As to the others, do you have

11  an argument?

12          MR. GEREMIA:  I do.  Your Honor, I could also

13  address it, certainly in any rebuttal, but they think that,

14  basically, fall into two categories.  One is -- and this is

15  most of them -- simply recycle factual allegations that were

16  already made to Your Honor, and in some instances, attach a

17  new conclusory allegation to them; say that, well, this

18  entity was within the geographical confines of the Debtor.

19          THE COURT:  Well, they were.  That was the whole

20  issue on the sixth omnibus objection; they were institutions

21  within the geographical boundaries.

22          MR. GEREMIA:  Yes.

23          THE COURT:  On a prior opinion, I had dealt with,

24  what if they were outside the jurisdiction.  With the sixth,

25  we felt, if they were within the geographical boundary.

1              MR. GEREMIA:  Correct.  That was the starting

2     premise with the sixth.  They're within the geographical

3     confines.  That, of course, was not enough.  And there were

4     a lot of other facts discussed by your honor, which were not

5     adequate to state a claim.  And in the claims that are in

6     that batch, which are -- we've set them out in each, on our

7     brief, the Herman Law response, the Dowd response, there's a

8     Garabedian response -- are all, some variation on recycling

9     factual allegations that were already presented to Your

10    Honor, and then slapping a new label on them; usually,

11    simply that these entities were within the geographical

12    confines of the Debtor, which we don't think is enough and

13    Your Honor addressed in detail.

14             THE COURT:  Okay, just let's go back to the

15    Anderson response, which -- well, we'll save it for your

16    reply.  Let me hear from -- unless you have anything else

17    you want to add.

18             MR. GEREMIA:  No.  And then there's the second

19    category which is similar to the first category.  And that

20    involves the Merson Law response and the Thomas Counselor

21    response, which is, Your Honor addressed in some detail, the

22    notion that under federal law, it is not enough to just say,

23    here's the elements of the claim, recite those in your

24    complaint and say that, you know, the Defendant did X, Y, Z.

25    You have to attach some facts to that.

1           So, this set of allegations, as we addressed in

2   the reply brief, simply makes conclusory assertions of an

3   employment or agency relationship; but then has the facts to

4   illustrate those relationships, takes the same facts that

5   were already presented to Your Honor in the sixth omnibus

6   objection.

7           So, for example, with respect to Chaminade and

8   LaSalle Military, the notion is, well, the Diocese appointed

9   a different individual, a chaplain, for example, to these

10  institutions.

11          THE COURT:  Not the alleged abuser?

12          MR. GEREMIA:  Not the alleged abuser.  Or the

13  Diocese and the bishop attended sporting events, or said

14  mass, and thereby supervised employees.  But those were

15  already observed by Your Honor to be simply -- I think you

16  said a series of disjointed observations about the

17  interactions between the Debtor and the institute at issue.

18          THE COURT:  How many ... I didn't try to ... how

19  many of those religious orders, independent schools, still

20  exist?

21          MR. GEREMIA:  LaSalle Military no longer exists.

22  Chaminade does.

23          THE COURT:  Are there state court lawsuits against

24  Chaminade?

25          MR. GEREMIA:  Yes.

Page 51

```
 1              THE COURT:  For the same, by these same --
 2              MR. GEREMIA:  Absolutely.  And that's -- you know,
 3    part of our motion, we can address in some detail the
 4    presentations we've made to Plaintiffs' counsels, go pursue
 5    those folks.  We want you to get your relief there.  But we
 6    want to give you some money here for those claims that you
 7    have that are legitimate as to the Diocese.
 8              THE COURT:  Okay, anything you want to add before
 9    I turn to --
10              MR. GEREMIA:  Nothing else, Your Honor.
11              THE COURT:  All right, let me hear from the people
12    who responded to the objection.  I don't know whether you --
13    I see Mr. Stoneking on the screen, but I don't know whether
14    you all agreed on an order in which you would do the
15    presentations or not.  But you're the one I see, so go
16    ahead, Mr. Stoneking.
17              MR. STONEKING:  Thank you, Your Honor.  Can you
18    hear me okay?
19              THE COURT:  I can.  I can hear you fine.
20              MR. STONEKING:  I'm having a little bit of
21    technical difficulty, so I'm getting it back on.  I'm going
22    to put this down.  I don't want to reargue some of the
23    things that we covered in the sixth.  And I know that we
24    raised some of these issues before.  So, we're here to go
25    over some of the repleading you allowed us to do.  I think
```

1    that we covered a lot of the things that were addressed by

2    the Court.  The Court made it clear as to what the standards

3    were, and we tried to meet those as a part of the

4    repleading.

5            The main thing that I thought like it would be

6    helpful to do, was to give Your Honor some context in a case

7    that was not objected to over again, which did involve

8    Chaminade.  And it was a situation where the Diocese made

9    the allegation, like they did for all these other

10   individuals, that they had no control over them, no control

11   over Chaminade, and that this is a completely independent

12   organization.

13           So, there was a document that we attached to our

14   reply saying, you know, this is a letter from the bishop in

15   which the President of Chaminade, who was already suspended

16   by his religious order, was suspended by the bishop.

17           So, that shows this, the nature of this

18   relationship, which we did raise, in the context of the

19   sixth, and the fifth, that the bishop does have authority to

20   remove and to place these individuals in various roles

21   within the Diocese.  There was no point.  And I don't think

22   the Diocese made a case on these individuals for that

23   reason; they didn't object to it because of this sort of

24   document.  But it does have application outside of that

25   particular case, to show the relationship that goes across

 1    the Diocese.  But the Bishop is in a position to remove

 2    these folks, (indiscernible), in whatever role.

 3              And Mr. Geremia addressed it, you know, with his

 4    own testimony just now, describing what faculties means, and

 5    the scope of that.  But again, we're here under that Rule 12

 6    standard.  And you know, his testimony on this issue is

 7    denying us of the merits of that discussion, which would be

 8    -- you know, it's covered by the objection procedures, and

 9    it is not something we have an opportunity to really address

10    here as part of this motion to dismiss.

11              So, we would say that the Chaminade letter shows

12    Your Honor the dynamic that we're dealing with here; that

13    the Diocese does have authority over these folks, was in a

14    position to regulate their access to children, to put in

15    safe guidelines for the safety of children in these

16    facilities that are institutions of the Diocese in their

17    public filings, and that they were negligent in doing that.

18              To disallow these claims, the Diocese would have

19    to show that there is no claim under law that we could

20    succeed with to hold them responsible.  And I don't think

21    they've done that.

22              THE COURT:  Thank you, Mr. Stoneking.  All right,

23    do other counsel for Claimants want to be heard, that are

24    subject to counsel whose clients are subject to this

25    objection?

1          MR GORDON:  Yes, Your Honor, my client, Claimant

2     would.  William Gordan from Garabedian, with regard to

3     Claimant 90601, previous Claimant 90130.  We understand, and

4     we read the well written decision on the sixth objection.

5     But what is not addressed in that decision was the JD versus

6     (indiscernible) Diocese New York case, which came out late

7     March, that talked to (indiscernible) brief that.

8          THE COURT:  Your voice cut out.  I didn't get --

9     you said JV (sic) versus -- I missed the name of the case.

10          MR GORDON:  JD versus the Archdiocese of New York,

11    and it's in our papers, and it's a 214 AD 3d 561.  That was

12    a case in which the Supreme Court judge in New York County,

13    said the Archdiocese was not liable for what a Jesuit priest

14    did; couldn't be.  And the First Department reversed that

15    decision.

16          Now, part of, a large part of this is

17    (indiscernible) in New York.  They said that enough was

18    pled.  But what happened a month later, or a little bit more

19    than a month later, May 9, the First Department then issued

20    the JAF decision versus the Archdiocese of New York, and

21    that involved a Marist priest and a Marist brother.  And

22    they said, listen, we've been clear, these religious orders

23    can be dismissed out where -- not the religious orders, the

24    Archdiocese cannot be dismissed out, where it's conduct by a

25    religious order in the (indiscernible) of the Archdiocese.

```
 1            Now, yes, these are pleading standard cases, but
 2     the Court, the First Department, in two cases now, could not
 3     come to that conclusion if New York substantive law, on its
 4     face, would not allow finding liability of a Diocese,
 5     because of conduct of religious order brothers and priests.
 6     And that's the heart of what these claims are.
 7            THE COURT:  What's the cite of the JAF case?
 8            MR GORDON:  JAF is at 216 AD 3d 454.  Again,
 9     that's also in our response to the sixth omnibus objection.
10            THE COURT:  All right.
11            MR GORDON:  And so, what these cases make clear is
12     New York State recognizes this.  I will say, I don't know
13     how many dozens, maybe 70 cases, by the same Supreme Court
14     judge, ruled in favor of the Diocese.  Parties -- there are
15     large numbers of motions to renew and reargue, and all of
16     them are being reversed, and the Archdiocese is being
17     brought back into those cases.  So, we have an issue here
18     where State Court, again and again, is saying, where the
19     actor, the perpetrator, was a religious order priest or
20     brother, there can be liability of the diocese, and that can
21     only be resolved after discovery, to learn the full extent
22     of its involvement.
23            Now, we did more than plead that.  As you know,
24     particularly with regard to our case, we referred to this as
25     -- because they're, the law firm (indiscernible) worked with
```

1    on these cases in this, in your rulings (indiscernible)

2    claim; now it's called the Garabedian claim.  But we had

3    attached an affidavit of Father Doyle that was focused on

4    this particular claim, and it talked about the structure of

5    the diocese.  And you did go into that.

6             Our client was abused when he was nine years old.

7    All these clients were abused when they were children.  He's

8    not going to acknowledge specific knowledge of the

9    relationship between a priest, whether they're Jesuit or

10   diocesan, and the leadership of the diocese.  All he's going

11   to be able to tell us about is what happened when he was

12   nine years old.  Then all we can do is, what's in the public

13   arena?  Well, what's in the public arena are the rules of

14   the church.  And we're not concerned about who says mass,

15   how they say mass; we're concerned with who is assigned to

16   have unfettered access to children.  And in these rules

17   (indiscernible) supervised by a provincial, if you're a

18   religious priest.  And if you have interaction with

19   parishioners, by the bishop of the diocese.

20            And so, that's what we pled.  That's what it all

21   boils down to.  Who had responsibility to allowing these

22   people to have unfettered access to children?  So, we

23   attached Father Doyle's affidavit, and we explained in the

24   addendum how the structure of the Church, rules of the

25   Church, who has authority to assign people or pull people

```
 1   away, indicates that the bishop had a real role here, the
 2   diocese had a real role.  It wasn't theoretical.
 3            And we also make reference to a very specific
 4   decree, around 1965, by Vatican II, because this abuse
 5   occurred before the adoption of the 1983 Code of Canon Law.
 6   So, it was the 1917 Code of Canon Law, and the decrees that
 7   happened up until the time of the abuse in the early '80s,
 8   which was prior to the adoption of the 1983 Code.  And that
 9   decree says that all religious have to be answerable to the
10   bishop.  And if it was not in court, the bishop would be
11   very plain, "I've got authority over everything that has to
12   do with interaction with parishioners, either through my
13   diocesan priests or priests who have (indiscernible)
14   parishioners.  I call the shots."  That's what it boils down
15   to.
16            And that's why we say, until we do discovery, we
17   can't prove any more than what we've pled; which is to go to
18   an expert, to lay out the rules of the church, which says
19   who is responsible.  As the Martinelli says, you can look to
20   those rules and say, who has a duty?  What is the
21   responsibility of these supervisors?  That's what we did.
22   That is all (indiscernible).  And now, we've got the problem
23   of the Appellate Court in New York saying, the Appellate
24   Division saying, of course this has to be worked out through
25   discovery, because on its face, these people have
```

Page 58

1   responsibility.  We've given you more than what was given to

2   the Appellate Division, which was just simply allegations;

3   we've given you the expert, the references to the canons

4   which show who had authority.  That's all we're concerned

5   (indiscernible), who had authority to (indiscernible) people

6   to have unfettered access to children?  And that's all we

7   really wanted to add today, Your Honor.

8           THE COURT:  Do you have an action pending against

9   the religious order?

10          MR GORDON:  It was probably, I believe in this

11  case, we have a Supreme Court case that named both the

12  religious order and the Diocese so it's until this is

13  resolved.  So, yes, we did bring an action against the

14  Jesuits in this case.

15          THE COURT:  And it's still pending?  Is that

16  correct?

17          MR GORDON:  It's stayed right now until it's

18  finally dismissed out.  But yeah, there is a Supreme Court

19  case that, by operation of bankruptcy law, because we named

20  the Diocese, is stayed.

21          THE COURT:  Well, it's -- we'll be more clear

22  about it.  When the Motion for a Preliminary Injunction was

23  heard and decided by this Court, the Committee agreed that

24  the stay would remain in place as to those State Court

25  actions that named both the Diocese and parishes of

Page 59

1    religious orders.  That wasn't a ruling of this Court.  That

2    was, when the motion was brought by the Committee, that was

3    the relief they sought.  I think, at various times I, indeed

4    I commented, that it's not uncommon for State Court actions

5    -- let's put aside the church cases -- not uncommon in State

6    Court actions against debtors and non-debtors, for there to

7    be -- while the stay applies to the debtor only, for a State

8    Court to grant a motion to sever and to proceed against the

9    non-debtors, that issue has not been presented to me.  When

10   the motion, the injunction motion was made and decided, the

11   Committee expressly excluded any requests for relief with

12   respect to State Court actions that named the Diocese and a

13   non-debtor.  Ms. Dine, do you agree with that?

14            MS. DINE:  Your Honor, I do agree with that.

15            THE COURT:  Okay.  So, you know, Mr. Gordon,

16   that's what the state of affairs is.  Yes, you are correct

17   that, with the agreement of the Committee, the stay remains

18   in place as to cases, State Court actions that name both,

19   unless and until somebody were to make a motion to ... I'm

20   not sure where you even have to come here.  You can go to

21   State Court and ask to bifurcate and proceed against the

22   non-Debtor.

23            MR GORDON:  Your Honor, the way I remember the

24   original preliminary injunction that the Diocese obtained,

25   if you had a case that named the Diocese and a non-debtor,

1     you were prohibited from moving to sever in State Court.

2     So, we're a little bit in a gray area now.

3              THE COURT:  Well, I'm not sure you are, but in any

4     event, the Court remains prepared to resolve that issue, if

5     you wish, on regular motion.  But when I was asked to rule

6     on the preliminary injunction, the Diocese' preliminary

7     injunction motion, the Committee agreed that the stay would

8     remain in place as to those State Court actions that name

9     both the Diocese and a Diocese-related non-debtor party.

10    So, that's correct.  Anything else you want to add, Mr.

11    Gordon?

12             MR GORDON:  No, Your Honor.  Thank you.

13             THE COURT:  Thank you very much.  Other counsel

14    who wish to be heard, or the Claimants?  Please, come on up

15    to the microphone.

16             MS. CANTOS:  Good afternoon, Judge.  Sarah Cantos

17    from Merson Law on behalf of Claimants 90430 refiled.

18             THE COURT:  Good afternoon.  It's nice to have you

19    in the courtroom.  One of these days I'm going to order

20    everybody to appear.  People have said, well, I'm in Long

21    Island, I don't want to have to come in.  And I abided it so

22    far, but --

23             MS. CANTOS:  I did not know not coming in was an

24    option, but glad to be here.

25             THE COURT:  I'd much rather have people at the

1    podium.  Okay, go ahead.

2            MS. CANTOS:  So, I represent 90430, 90447 and

3    90424.  I don't want to repeat what my colleague said.  But

4    the Diocese only points out three allegations that were made

5    in very lengthy amendments, for these Claimants.  In the

6    original decision, this Court held for the abuser control

7    theory.  You named some factors that were, worked at their

8    own convenience, free to engage in other employment, risky

9    fringe benefits, was on the employer's payroll, and was on a

10   fixed schedule.  Those were added.  90430, 90447 alleged

11   that the abuser was an employee of the Diocese and operated

12   on a fixed schedule created by the Diocese.  Specifically,

13   that was the school and club schedule; he's their teacher

14   and he was the radio club faculty member; that the Diocese

15   did not permit him or other Chaminade teachers, to work at

16   their own convenience.  They were not free to engage in

17   other employment.  They received fringe benefits and was on

18   the payroll, and included facts that the abuser --

19           THE COURT:  Whose payroll were they on?

20           MS. CANTOS:  The Diocese' payroll, is based on --

21   you know, obviously, they were students, but based on

22   information and observation.  And we included also, the

23   Diocese had a pension plan set up for lay employees of

24   schools, parishes, cemeteries, and related pastoral

25   organizations, which this abuser was a part of. And Claimant

1    9024 also alleged, you know, that as fulltime employee of

2    the Diocese, worked on that fixed schedule as well.  For the

3    institutional control theory, this Court held that it needed

4    to be alleged that the agent be subject to the principal's

5    direction, and the agent had power to alter legal relations

6    between the principal and third parties.

7            So, they alleged that the Diocese had disciplinary

8    authority; that they would come in, check on the teachers,

9    and the students, and supervise them; that it was obvious to

10   them that they operated as one organization.  The Diocese

11   facilitated their entrance, their admission into the school

12   through --

13           THE COURT:  What do you mean?

14           MS. CANTOS:  They took a entrance exam that was

15   through the Diocese.  The Diocese sent the scores and the

16   applications to the school, and facilitated that connection

17   between them.  The Diocese had, you know, priests for

18   confession, there was sacraments done.  The Diocese

19   permitted the Marianist Brothers to operate Chaminade as a

20   school within its bounds.  And then, so that's what we

21   alleged for that, which I think satisfies this Court, prior

22   ruling.

23           And then, for 90424, it was included that St.

24   Mary's was a group home that within the Diocese, operated

25   and under the control of the Diocese.  They hired, retained

Page 63

```
 1    and supervised the employees.  They had the ability and

 2    power to remove and fire the abuser, but didn't.  There was

 3    a chapel also staffed by the Diocese.  And then, so on those

 4    grounds, based on this Court's prior ruling the Debtor's

 5    objection should be overruled.

 6              But even more, for Claimants 90430 and 90447, at a

 7    minimum, there's a parent agency, which facts were included

 8    for that, including that these claimants and their parents

 9    chose Chaminade specifically based on their alliance on

10    representations made by the Diocese and Chaminade; that

11    Chaminade was part of the Diocese, including, again,

12    facilitating their entrance to the school, the involvement

13    at the school, with the bishop and the priests, and the

14    sacraments.

15              So, based on that, we believe that the objection

16    should be overruled.

17              THE COURT:  Thank you, Ms. Cantos.  Anybody else

18    wish to be heard for Claimants?  Do you know of anybody

19    else?  It's always hard for me see.  I don't know who may

20    have signed up.  Let me try one more time.

21              One last opportunity for any of the Claimants'

22    counsel to be heard in response to the oral argument of

23    counsel?  I have the papers, I've read all the papers, but I

24    just -- is there anybody else who wishes to be heard, that's

25    not been heard so far?  Mr. Geremia?
```

1           MR. GEREMIA:  Todd Geremia from Jones Day, for the

2     Debtor, Your Honor.  Just briefly, to address the three

3     presentations made by Mr. Stoneking, Mr. Gordon, and Ms.

4     Cantos.

5           The argument from the Anderson response is an

6     unusual one that points to other proofs of claim that were

7     at issue in the sixth omnibus objection, but are not at

8     issue now.  And as we alluded to in our reply brief, the

9     reason for that, there are different allegations in those

10    cases.  Proof of claim 9060 ... let me just get the number

11    here ... 90602, concerns a former president of Chaminade

12    High School.  And there are allegations -- let me make

13    clear, the Diocese disagrees with these allegations.  But

14    there are allegations that the Diocese was involved and

15    consulted with the Marianists in elevating him to that

16    position a president.  And there are allegations that the

17    Diocese was involved, and had discussions with the

18    Marianists, in removing him from that position.

19          Paragraph 6 of that proof of claim addendum:  "The

20    Bishop and the Diocese had an absolute and independent right

21    to remove Williams from his position at Chaminade for any

22    reason."  Paragraph 7:  "The decision to renew his position

23    and to promote him to president of the school were made by

24    the Diocese in consultation with the province."  This is not

25    about the fact that the bishop conferred and removed

Page 65

```
 1    faculties for this individual.  There are different

 2    allegations in the proofs of claim that Mr. Stoneking

 3    invoked that are not, frankly, in any of the allegations

 4    that are subject to the 16th omnibus objection.  So, we

 5    reviewed them all, and chose the ones as to which we felt

 6    Claimants had not really made a material change.

 7              And the other ones at issue on the Anderson

 8    objection do not have those sorts of allegations.  They make

 9    two principal points.

10              THE COURT:  Let me ask -- and I didn't do anything

11    to check this.  Were there ones that were, your objection

12    was sustained with leave to amend in the sixth, were made

13    amendments that you're not seeking go expunge?

14              MR. GEREMIA:  Yes, there were two.

15              THE COURT:  I didn't --

16              MR. GEREMIA:  These two by Anderson, related to

17    Chaminade: Brother Williams, and there's another one,

18    Brother William Campbell.

19              THE COURT:  And you think that what was -- whether

20    you ultimately prevail or not is a different issue, but you

21    think the distinguishing factors that led you not to object

22    to the amended claims as to some of them -- what were those

23    distinguishing factors?

24              MR. GEREMIA:  That the -- and we just didn't want

25    to have the fight, frankly, on this objection, that there
```

Page 66

1    were allegations that the Diocese was involved in secular

2    decisions to promote those individuals within Chaminade, and

3    secular decisions to remove them from Chaminade and have

4    them relocated to a different location that the Marianists

5    operated.  So, those are not -- you know, we actually think

6    we may have had an argument there; we chose not to raise

7    that issue with Your Honor.  We chose the ones, instead,

8    that we thought simply rehashed allegations that Your Honor

9    already addressed.  And you know, we will have, if it ever

10   comes to it, we understand that there's the looming

11   deadline, we would have serious factual disputes about those

12   allegations, and not even conceding that they're properly

13   alleged.  But it's different than what's alleged in the

14   (indiscernible).

15            THE COURT:  So, Mr. Gordon argued that a series, a

16   number of recent New York Appellate Division decisions that

17   reversed the trial court level, which had dismissed the

18   claims, and at least allowed those claims to go to

19   discovery, why shouldn't this Court follow those decisions?

20            MR. GEREMIA:  That was the JD decision, Your

21   Honor, which was --

22            THE COURT:  Yeah, he cited JD and JAF.

23            MR. GEREMIA:  And the JAF decision largely

24   followed that.  The JD decision was raised in, I think,

25   almost all of the responses on the sixth omnibus objection,

Page 67

```
 1    and a couple of --

 2              THE COURT:  (indiscernible) remind me why you

 3    don't think that's enough?

 4              MR. GEREMIA:  Because -- two reasons:  It dealt

 5    with a CPLR provision that, frankly, has no analog in

 6    federal pleading standards that's, as to which, if the

 7    defendant submits a document that refutes the allegations,

 8    then the claim may be dismissed on that ground.  And the

 9    ruling by the Appellate Division in that case was really

10    specific to that narrow issue of state law, held that the

11    document, the affidavit that the Archdiocese submitted, did

12    not conclusively refute the allegations.  And so, therefore,

13    the claim should proceed.  So, there's not procedural analog

14    in Rule 12(b)(6).

15              Your Honor, as you may recall, took Claimants to

16    task for not citing a single federal law pleading case in

17    responding to the sixth omnibus objection, nor have they in

18    the 16th.  The decision sets out, series of decisions --

19    (indiscernible), Sahara Dreams, DeAngelis, Bigio, Fletcher,

20    and we cited to Your Honor, Fox News.  None of those cases

21    have been dealt with.  There's a different standard in

22    Federal Court where the allegation of employment or agency

23    has to be pleaded with facts.  That's simply not the case in

24    State Court.

25              THE COURT:  Why all of these Claimants would be
```

Page 68

1    better off in State Court than here.

2              MR. GEREMIA:  And Your Honor has made the point,

3    better off in a consensual claim.

4              THE COURT:  In any plan that could be proposed and

5    confirmed, the claims resolution procedure, I respectfully

6    think, wouldn't have to follow the federal pleading

7    standards, which I'm bound to follow in ruling on claim

8    objections.  It's ... I hope that the State Court Claimants

9    understand that in many respects they would be better off

10   and wouldn't face what I'm, by law, bound to follow on the

11   federal pleading standards.  They're, at least as I

12   understand, the claims resolution process in some of the

13   confirmed Diocese plans, would provide an easier road to

14   compensation for abuse (indiscernible).  I'm not, you know,

15   those issues are not before me at this point.  But, okay.

16             What about, Ms. Cantos went through and identified

17   multiple factors that I identified in the opinion in the

18   sixth omnibus objection, which she believes her clients have

19   satisfied with their amendments.  So, tell me why not?

20             MR. GEREMIA:  Because those were a recitation of

21   the elements as to an employment or agency relationship.

22   Claimant said, "It is my understanding that ..." and then

23   just had conclusory allegations that those elements were

24   met.

25             THE COURT:  What if they just said priest so-and-

1   so was under the supervision of the Diocese?  Not, my

2   understanding is that ... we ... yes, I believe that

3   conclusory allegations in and of themselves are not

4   sufficient.  But I'm going to go back and review Ms.

5   Cantos's submissions on behalf of her clients.  So, I'll

6   look peripherally at whether, have they sufficiently

7   alleged, satisfied, identified the factors that I thought

8   had to be addressed, but had not been.  And is there

9   anything else you want to add to why you think that she has

10  not satisfied the requirements?

11          MR. GEREMIA:  Yes, one more point, Your Honor,

12  which is that the, I think the tell is in there are those

13  conclusory assertions, diocese supervise this person.  But

14  then, when there's actual facts that are used to illustrate

15  those assertions and purportedly support them, they're the

16  same facts that Your Honor already disregarded or rejected

17  as inadequate --

18          THE COURT:  I didn't disregard; I rejected.

19          MR. GEREMIA:  Rejected.  For example, I had to

20  take a test through the Diocese of Rockville Centre.  The

21  Diocese facilitated my admission to Chaminade.  The bishop

22  would attend events such as masses, graduations, and

23  supervise them. So, the facts that are offered in support of

24  the supervision allegation, are the same things that Your

25  Honor already said are disjointed observations about

1    interactions, and don't rise to the level of establishing an

2    employment or agency relationship.  I think the same thing

3    is true for the St. Mary of the Angels home, which is,

4    points to the fact that a chaplain was appointed by the

5    Diocese, but that's a non-abuser.

6             So, the facts that are used to purportedly

7    illustrate the relationship are the same facts that Your

8    Honor said already are not enough.

9             THE COURT:  Okay.  Anything else?

10            MR. GEREMIA:  No, thank you, Judge.

11            THE COURT:  All right, I'm going to take this all

12   into submission.

13            MR. GEREMIA:  Thank you.

14            THE COURT:  And since I have a new crop of law

15   clerks, they'll all have the opportunity to delve into this

16   area, which I knew nothing about before.

17            MR. GEREMIA:  A challenge.

18            THE COURT:  A challenge.  All right, thank you

19   very much.  We are adjourned.

20            MR. GEREMIA:  Thank you, Your Honor.

21            (Whereupon these proceedings were concluded at

22   3:27 PM)

23

24

25

```
                                              Page 71

 1                    I N D E X

 2

 3                      RULINGS

 4                                      Page        Line

 5   KCIC Fee Application Approved       29          14

 6   Jones Day Fee Application Approved  32          17

 7   Reed Smith Fee Application Approved 32          23

 8   Alvarez and Marsel North America, LLC Fee

 9   Application Approved                33          4

10   Nixon Peabody Fee Application Approved  33      8

11   Citric and Company Fee Application Approved 33  10

12   Pachulski Stang Fee Application Approved 33     13

13   Burns Bair, LLP Fee Application Approved 33     18

14   Forchelli Deegan Terrana LLP Fee Application

15   Approved                           34          1

16   Fifth interim application of the future claims

17   representative Approved            34          5

18   Michael R. Hogan Fee Application Approved 34    9

19   Joseph Hage Aaronson LLC Fee Application

20   Approved                           34          13

21   Jeffreys LLC Fee Application Approved 34        15

22   Lerman Senter PLLC Fee Application Approved 34  18

23   Catholic Health System of Long Island, Inc.

24   Settlement Motion Approved         41          3

25   Amendment to the bar date motion Approved 43    25
```

Page 72

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  September 8, 2023

**[& - 346,389.75]**                                      Page 1

| & |
|---|
| **&**  2:19,23 6:12 7:1 40:24 42:15 |

| 0 |
|---|
| **00:33**  11:12 |

| 1 |
|---|
| **1**  2:13 3:1,13 3:20 11:12 35:2 71:15 |
| **1,024,258.50**  32:19 |
| **10**  8:9 71:11 |
| **100**  35:11 |
| **10004**  1:14 |
| **10014**  7:11 |
| **10017**  6:16 |
| **10019**  10:4 |
| **10022**  7:18 9:4 9:18 |
| **10036**  7:4 |
| **1006**  7:10 |
| **1010**  8:16 |
| **10281**  6:6 |
| **114,940**  34:3 |
| **115**  31:4 |
| **11501**  72:23 |
| **11553**  8:17 |
| **12**  43:23 53:5 67:14 |
| **1211**  7:3 |
| **12151**  72:6 |
| **129**  35:5 |
| **12th**  43:12 |
| **13**  71:12,20 |

**137**  18:19
**14**  28:11 71:5
**14,365**  34:6
**14,510**  33:9
**140**  8:2
**142**  19:2
**15**  35:10 71:21
**157**  17:4 19:17
**1675**  10:3
**16th**  46:7 65:4 67:18
**17**  71:6
**18**  71:13,22
**1800**  8:2
**1810**  10:3
**18th**  9:17
**1917**  57:6
**1965**  57:4
**1983**  57:5,8

| 2 |
|---|
| **2**  11:3 25:8 |
| **2/1/2023**  2:20 3:7 4:2,7,11,16 4:23 5:3 |
| **20**  35:13 |
| **20-12345**  1:3 11:4 |
| **200**  18:18 |
| **2004**  36:22 42:11,17 43:8 43:22 |
| **201**  7:10 9:10 |
| **2020**  35:2,3 |
| **2023**  1:16 2:2,2 2:13,14 3:1,2 3:13,14,20,20 11:3 25:14 |

72:25
**202436**  5:12
**214**  54:11
**216**  55:8
**2288**  2:3 33:9
**23**  71:7
**2302**  2:14 32:14
**2303**  3:2 33:1
**2309**  3:14 33:5
**2313**  3:21 34:14
**2314**  4:2 33:23
**2316**  4:7 34:2
**2318**  2:8 34:10
**2320**  4:12 34:17
**2321**  4:23
**2322**  5:4 33:19
**2324**  2:20 33:11
**2327**  4:16 28:22 32:18
**2328**  3:8 34:6
**2329**  25:7
**2346**  2:3,8,14 2:20 3:2,8,14 3:21 4:2,7,12 4:17,23 5:4
**2364**  2:3,14 3:2
**2372**  5:16
**2385**  5:22 39:4
**2386**  5:22 40:13
**24**  29:1
**2404**  5:7 41:6

**2419**  5:22
**2423**  5:16
**2426**  5:16
**2428**  5:17
**2430**  5:17
**2434**  5:17
**2436**  5:17
**2440**  5:17
**2440048**  5:12
**2450**  5:8
**2451**  5:8
**2459**  26:18
**25**  29:9 71:25
**250**  6:5
**26th**  43:9
**27.00.**  33:24
**29**  71:5
**2:01**  1:17

| 3 |
|---|
| **3**  29:7 71:24 |
| **300**  72:22 |
| **30th**  7:17 |
| **31**  2:14 3:2,13 3:20 24:20 25:14 |
| **31st**  16:2 |
| **32**  71:6,7 |
| **33**  71:9,10,11 71:12,13 |
| **330**  72:21 |
| **333**  8:16 |
| **33431**  8:3 |
| **335.04.**  33:20 |
| **34**  71:15,17,18 71:20,21,22 |
| **346,389.75**  33:15 |

**34th**  6:15
**350,000**  34:14
**379,767.50**
  28:25
**379,767.50.**
  32:20
**383,933.50**
  33:5
**395,540.85.**
  33:11
**3:27**  70:22
**3d**  54:11 55:8

**4**

**4**  35:3 71:9
**4,649,399.75**
  33:11
**41**  71:24
**43**  71:25
**450**  9:10
**454**  55:8
**46,020.50**
  33:24
**48,082.50**
  34:11

**5**

**5**  17:4 19:17
  71:17
**5,907,378**
  32:13
**5/31/2023**  2:20
  3:8 4:2,7,12,16
  4:23 5:3
**50**  38:24
**53703**  8:10
**5408.93.**  33:2

**5432.08.**  32:19
**561**  54:11
**562.90.**  34:3
**599**  9:3

**6**

**6**  1:16 64:19
  67:14
**6,532.50**  34:17
**600**  8:9
**657.32.**  33:6
**660,210**  33:2
**6th**  11:3

**7**

**7**  64:22
**7.6**  39:15,23
**70**  55:13
**71**  19:6,9
**7618.93.**  33:16
**780**  6:15
**784.23.**  34:11

**8**

**8**  25:8 71:10
  72:25
**80**  35:11
**800**  7:17
**80s**  57:7
**84111**  9:11
**844,859**  33:20
**87,050.23.**
  32:14

**9**

**9**  54:19 71:18
**90021**  5:15
**90023**  5:13

**90036**  5:12
**90083**  5:15
**90130**  5:15
  54:3
**9019**  5:20
**90214**  5:16
**90215**  5:16
**9024**  62:1
**90247**  5:13
**90255**  5:13
**90261**  5:14
**90283**  5:12
**90301**  5:12
**90321**  5:14
**90358**  5:16
**90363**  5:14
**90379**  5:13
**90380**  5:16
**90413**  5:14
**90424**  5:16
  14:7 61:3
  62:23
**90429**  5:13
**9043**  14:6
**90430**  5:12
  60:17 61:2,10
  63:6
**90447**  5:12
  14:6 61:2,10
  63:6
**90450**  5:14
**90451**  5:14
**90452**  5:15
**90453**  5:15
**90454**  5:14
**90455**  5:14

**90456**  5:12
**90483**  5:13
**90494**  5:15
**90522**  5:15
**90599**  14:7
**9060**  64:10
**90600**  14:6
**90601**  54:3
**90602**  64:11
**90610**  14:7
**950**  9:17

**a**

**aaron**  9:6
  12:20
**aaronson**  2:7
  7:15 12:3
  34:10 71:19
**abi**  17:12,12
**abided**  60:21
**ability**  29:18
  42:18 63:1
**able**  13:6 18:3
  18:14 36:15
  56:11
**absolute**  64:20
**absolutely**  24:8
  26:17 38:5
  51:2
**abuse**  35:19
  41:13,22 43:1
  57:4,7 68:14
**abused**  47:12
  56:6,7
**abuser**  50:11
  50:12 61:6,11
  61:18,25 63:2
  70:5

| | | | |
|---|---|---|---|
| **abusers** 48:1 | **addressed** | 14:16 15:8,15 | 68:23 69:3 |
| **access** 53:14 | 44:10 45:4 | 44:5 60:16,18 | **alleged** 48:1 |
| 56:16,22 58:6 | 46:20 47:3,9 | **agency** 31:1 | 50:11,12 61:10 |
| **accordance** | 47:19 49:13,21 | 50:3 63:7 | 62:1,4,7,21 |
| 47:6 48:5 | 50:1 52:1 53:3 | 67:22 68:21 | 66:13,13 69:7 |
| **account** 41:22 | 54:5 66:9 69:8 | 70:2 | **alliance** 63:9 |
| **accurate** 72:4 | **addresses** 44:7 | **agenda** 26:17 | **allow** 55:4 |
| **acknowledge** | **adequate** 22:6 | 26:21 39:3 | **allowance** 2:11 |
| 46:12 56:8 | 49:5 | 44:2 | 2:23 4:20 |
| **action** 58:8,13 | **adjourned** | **agent** 62:4,5 | **allowed** 19:18 |
| **actions** 17:8,18 | 70:19 | **aghast** 35:18 | 51:25 66:18 |
| 26:5 58:25 | **administer** | **ago** 22:25 | **allowing** 56:21 |
| 59:4,6,12,18 | 47:5 48:4 | 23:12 | **alluded** 64:8 |
| 60:8 | **admission** | **agree** 30:5 40:6 | **alter** 62:5 |
| **active** 24:14 | 62:11 69:21 | 59:13,14 | **alvarez** 2:23 |
| **actively** 17:2 | **admitted** 13:13 | **agreed** 51:14 | 14:20 33:1 |
| **activities** 47:6 | 13:14 40:16,18 | 58:23 60:7 | 71:8 |
| **actor** 55:19 | **admonition** | **agreement** | **amend** 44:9,16 |
| **actual** 2:12 | 16:5 | 16:11 18:3,11 | 65:12 |
| 3:25 69:14 | **admonitions** | 18:15 59:17 | **amended** 3:6 |
| **actually** 15:16 | 16:11 | **ahead** 15:13 | 25:11 44:17 |
| 18:9 66:5 | **adoption** 57:5 | 18:25 22:4 | 46:11 65:22 |
| **actuarial** 30:20 | 57:8 | 25:18 31:13 | **amending** 5:7 |
| **ad** 54:11 55:8 | **advertised** | 36:19 51:16 | **amendment** |
| **add** 31:8 49:17 | 25:2 | 61:1 | 16:8 41:7 |
| 51:8 58:7 | **advisor** 2:25 | **ai** 32:6 | 71:25 |
| 60:10 69:9 | 3:5 5:2 12:25 | **alarm** 17:9 | **amendments** |
| **added** 46:13,14 | 14:20 | **allegation** | 44:13 61:5 |
| 61:10 | **advisors** 9:9 | 48:17 52:9 | 65:13 68:19 |
| **addendum** | 30:19 | 67:22 69:24 | **america** 2:23 |
| 56:24 64:19 | **affairs** 59:16 | **allegations** | 33:1 71:8 |
| **additional** 12:5 | **affect** 43:16 | 46:14 48:15 | **americas** 7:3 |
| 45:19 | **affidavit** 56:3 | 49:9 50:1 58:2 | **amount** 28:25 |
| **address** 44:18 | 56:23 67:11 | 61:4 64:9,12 | **amounts** 31:4 |
| 48:13 51:3 | **afforded** 44:9 | 64:13,14,16 | 31:6 41:21 |
| 53:9 64:2 | **afternoon** 12:9 | 65:2,3,8 66:1,8 | **analog** 67:5,13 |
| | 12:12,20 14:13 | 66:12 67:7,12 | |

| | | | |
|---|---|---|---|
| **analysis** 21:11 | **appellate** 57:23 | **approved** | **aside** 59:5 |
| **anderson** 11:7 | 57:23 58:2 | 32:17,23 33:4 | **asked** 13:18 |
| 15:2 45:7 | 66:16 67:9 | 33:8,10,13,18 | 22:13 23:4,8,9 |
| 46:13,14,18,20 | **applicable** 29:4 | 33:21,22 34:1 | 38:9 46:3 60:5 |
| 48:6,10 49:15 | **application** 2:1 | 34:5,9,13,15 | **asking** 24:24 |
| 64:5 65:7,16 | 2:5,11,16,22 | 35:1 41:3 | 24:25 30:10 |
| **anderson's** | 3:4,10,16,23 | 43:25 71:5,6,7 | **assertions** 45:2 |
| 46:20 | 4:4,9,14,19,25 | 71:9,10,11,12 | 50:2 69:13,15 |
| **andrew** 6:10 | 28:22,25 29:9 | 71:13,15,17,18 | **assign** 56:25 |
| 8:5 12:9 15:10 | 30:17 31:4,20 | 71:20,21,22,24 | **assigned** 56:15 |
| 26:20 36:20 | 32:13,14,18,25 | 71:25 | **attach** 48:16 |
| 39:1 41:4 44:1 | 32:25 33:5,9 | **approving** 5:20 | 49:25 |
| **angels** 70:3 | 33:10,13,19,22 | 34:22 39:6 | **attached** 21:24 |
| **anoint** 47:4 | 34:1,6,10,14 | **approximately** | 44:24 52:13 |
| **answer** 16:18 | 34:16,18 35:25 | 18:18 | 56:3,23 |
| 17:5 21:4 | 52:24 71:5,6,7 | **archdiocese** | **attachments** |
| **answerable** | 71:9,10,11,12 | 37:10,15 47:13 | 21:24 |
| 57:9 | 71:13,14,16,18 | 54:10,13,20,24 | **attend** 69:22 |
| **answers** 23:6 | 71:19,21,22 | 54:25 55:16 | **attended** 50:13 |
| **anybody** 20:20 | **applications** | 67:11 | **attention** 16:13 |
| 32:8 63:17,18 | 15:16 26:21 | **area** 45:13 | **attorneys** 6:4 |
| 63:24 | 28:1,2,12 30:1 | 60:2 70:16 | 6:13 7:2,9 9:16 |
| **apart** 42:19 | 30:18 62:16 | **areas** 16:3,11 | 10:2 |
| **apologies** | **applies** 59:7 | 17:3 | **aty** 2:19 |
| 26:18 36:20 | **appointed** 24:6 | **arena** 56:13,13 | **audio** 22:7 |
| **apologize** 26:1 | 50:8 70:4 | **argued** 19:14 | **authority** |
| **appear** 13:12 | **appreciate** | 66:15 | 39:21 40:5 |
| 60:20 | 28:9 29:1 31:9 | **arguing** 44:17 | 47:1,4 48:3 |
| **appearance** | 31:22 | **argument** | 52:19 53:13 |
| 11:21,25 12:6 | **approach** 30:8 | 20:23 21:3 | 56:25 57:11 |
| 12:7 13:6 14:4 | **appropriate** | 48:11 63:22 | 58:4,5 62:8 |
| 14:10,11,14,18 | 24:21 25:21 | 64:5 66:6 | **available** 35:20 |
| 14:23 | 27:17 | **arrowood** 10:2 | **ave** 7:17 |
| **appearances** | **approval** 28:5 | 36:23,23 41:10 | **avenue** 6:15 |
| 11:5 14:17 | **approve** 29:14 | 41:12,21 42:4 | 7:3 9:3,17 |
| **appearing** 12:2 | 30:14 31:9 | 42:5,8,17 | |
| | 34:18 | 43:15,20 | |

| **b** | believe  13:9 | bishop's  48:3 | broadway  10:3 |
|---|---|---|---|
| **b**  1:21 17:4 | 16:21 18:7 | bit  22:14,17,22 | bromberg  10:1 |
| 19:17 67:14 | 19:3,4,6,10 | 51:20 54:18 | brooklyn  45:20 |
| **back**  13:24 | 21:8 31:25 | 60:2 | brother  54:21 |
| 22:17 28:15 | 43:9,22 46:10 | block  29:11 | 55:20 65:17,18 |
| 38:23 46:6 | 47:13,18 58:10 | blog  17:12 | brothers  55:5 |
| 49:14 51:21 | 63:15 69:2 | board  39:15,23 | 62:19 |
| 55:17 69:4 | believes  29:2 | boca  8:3 | brought  25:6 |
| **background** | 68:18 | boils  56:21 | 55:17 59:2 |
| 21:25 39:9 | ben  11:10 | 57:14 | brown's  17:7 |
| **bair**  4:22 8:7 | bench  43:13 | boston  22:10 | browse  30:13 |
| 12:14 13:9 | benefits  61:9 | bouchard | bulter  39:1 |
| 33:14 71:13 | 61:17 | 47:10 | bureau  41:20 |
| **ball**  23:12 | benjamin  6:9 | boulevard  8:16 | 42:10 |
| **banker**  3:19 | 37:23 | bound  68:7,10 | burns  4:22 8:7 |
| **bankruptcy** | berkeley  5:2 | boundaries | 8:12 12:11,12 |
| 1:1,12,23 5:20 | 33:19 | 48:21 | 12:12,14 13:1 |
| 19:16 24:8 | best  23:23 41:2 | boundary | 13:1,3,5,7,8,15 |
| 26:9,11 58:19 | bestowing | 48:25 | 33:14 71:13 |
| **baptize**  47:4 | 46:24 | bounds  62:20 | busy  16:15 |
| **bar**  5:7 16:8 | better  25:23 | bowling  1:13 | butler  6:10 |
| 41:7 71:25 | 26:8 68:1,3,9 | break  34:19 | 15:10,11,13,14 |
| **based**  21:11 | bifurcate  59:21 | brett  10:6 | 15:20,23 26:15 |
| 27:14 61:20,21 | big  29:24 | brg  9:8 12:24 | 26:17,20,20 |
| 63:4,9,15 | bigio  67:19 | brief  20:9 | 28:10 32:16,22 |
| **basically**  44:19 | bill  17:11 | 44:11 46:19 | 33:3,7,12,17 |
| 48:14 | 21:20 | 47:3 49:7 50:2 | 33:21,25 34:4 |
| **basis**  27:13 | billed  34:20 | 54:7 64:8 | 34:8,12 36:18 |
| 36:16 44:19 | billing  29:11 | briefed  19:20 | 36:19,20,20 |
| **batch**  49:6 | 34:19 | 19:21 20:8,24 | 39:1 40:14,19 |
| **behalf**  11:14 | bishop  46:22 | briefing  20:3 | 40:24 41:4,5 |
| 12:3,3,22,24 | 50:13 52:14,16 | briefly  35:24 | 42:5 43:8,25 |
| 13:8 14:6 27:3 | 52:19 53:1 | 64:2 | 44:1,1 |
| 37:24 40:24 | 56:19 57:1,10 | briefs  20:7,8 | |
| 42:15 46:19 | 57:10 63:13 | 20:25 | **c** |
| 60:17 69:5 | 64:20,25 69:21 | bring  16:1,12 | **c**  6:1 11:1 72:1 |
| | | 58:13 | 72:1 |

**call**  23:4 24:2
  57:14
**called**  56:2
**calling**  11:3
**calls**  23:3,8
**camera**  11:23
**campbell**  65:18
**canon**  46:21
  47:19 57:5,6
**canons**  58:3
**cantos**  9:20
  14:5,5 60:16
  60:16,23 61:2
  61:20 62:14
  63:17 64:4
  68:16
**cantos's**  69:5
**carriers**  30:25
**case**  1:3 11:4
  13:10 15:20,22
  16:1 24:8 26:3
  26:10 27:8,23
  28:15,17 29:9
  35:2,18,18,22
  36:15,15 37:10
  38:7,20,24
  46:25 47:10
  52:6,22,25
  54:6,9,12 55:7
  55:24 58:11,11
  58:14,19 59:25
  67:9,16,23
**cases**  17:10
  18:2,12,17,18
  18:21 19:2,4,6
  26:9,11 37:10
  37:13,15,17,20

44:24 55:1,2
  55:11,13,17
  56:1 59:5,18
  64:10 67:20
**categories**
  15:14 34:19
  44:10 48:14
**category**  30:21
  30:24 31:16
  44:12 49:19,19
**catholic**  1:7
  5:21 11:3
  37:15 39:6,10
  47:1,2,7 48:5
  71:23
**cbre**  30:20
**cemeteries**
  61:24
**centered**  29:12
**central**  26:6
**centre**  1:7
  69:20
**cert**  26:13
**certain**  22:23
  23:1,8 27:10
  42:17
**certainly**  24:6
  31:19 42:20
  48:13
**certified**  72:3
**challenge**
  70:17,18
**chambers**
  21:16,21
**chaminade**
  50:7,22,24
  52:8,11,15

53:11 61:15
  62:19 63:9,10
  63:11 64:11,21
  65:17 66:2,3
  69:21
**chance**  20:21
  46:6
**change**  29:16
  65:6
**chapel**  63:3
**chaplain**  50:9
  70:4
**chapman**
  28:16 35:3
**characterizat...**
  38:3,15
**charles**  14:19
**chartered**
  30:20
**check**  62:8
  65:11
**cheek**  22:13,21
**chelsea**  30:17
  30:22 31:2,4
**children**  53:14
  53:15 56:7,16
  56:22 58:6
**choppy**  13:20
  13:24
**chose**  63:9 65:5
  66:6,7
**chs**  7:2 11:16
  16:7 39:10,17
  39:22 40:3,7
**church**  47:2
  56:14,24,25
  57:18 59:5

**circumstance**
  47:15
**circumstances**
  25:10
**cite**  47:10 55:7
**cited**  66:22
  67:20
**citing**  67:16
**citric**  33:9
  71:11
**city**  9:11
**claim**  5:11
  36:11 41:19,24
  41:25 42:10,25
  43:21 44:3,7
  44:23 45:5,17
  45:22,25 46:18
  49:5,23 53:19
  56:2,2,4 64:6
  64:10,19 65:2
  67:8,13 68:3,7
**claimant**  54:1
  54:3,3 61:25
  68:22
**claimant's**  44:9
  44:25
**claimants**  9:16
  14:6 53:23
  60:14,17 61:5
  63:6,8,18,21
  65:6 67:15,25
  68:8
**claimed**  47:11
**claims**  2:7 3:6
  4:5 12:2 16:17
  23:14,15 34:2
  36:6 39:13,16

39:18,20,20,20
41:10,14,22
42:18,20 44:7
44:9,13,16,17
44:23,24 45:6
46:2,2,11,19
47:15 49:5
51:6 53:18
55:6 65:22
66:18,18 68:5
68:12 71:16
**clarify**  20:13
**clarifying**  24:7
**claro**  30:20
**clear**  24:15,15
36:14 37:1
38:1,1 45:10
52:2 54:22
55:11 58:21
64:13
**clerk**  11:2,9,15
11:17,19,24
12:5,15,18,23
13:1,4,13,16
13:19,23 14:2
14:8,21 15:6
**clerks**  70:15
**client**  54:1 56:6
**clients**  53:24
56:7 68:18
69:5
**clock**  35:24
**closely**  30:10
**club**  61:13,14
**code**  57:5,6,8
**collateral**  42:1

**collateralized**
42:9
**colleague**
13:11 17:4
61:3
**colloquially**
39:14
**column**  17:11
**come**  11:20
14:3 27:5,21
38:2 46:6 55:3
59:20 60:14,21
62:8
**comediator**
24:5
**comes**  66:10
**coming**  13:19
13:23,25 22:18
43:13 60:23
**comm**  2:19
**commented**
22:23 59:4
**commenting**
22:15,22
**comments**
31:23 32:8
**committee**
2:18 6:13
11:14 12:13,25
13:8 15:4,5
16:10,23 18:1
19:14 20:15,21
23:2,20 24:22
25:14,21 28:18
29:4,21 33:15
35:9 36:3,22
37:3,5,6 38:2,8

38:12,20 40:8
40:24 42:11,15
42:16,22 58:23
59:2,11,17
60:7
**committee's**
37:4 42:6,7
43:22
**committees**
37:12
**communicate**
24:2
**communicated**
22:15
**communicati...**
13:11
**communicati...**
24:9
**comp**  39:13,15
39:16,18,19,23
**company**  2:3
10:2 33:9
71:11
**compensation**
2:2,6,11,17,24
3:5,11,17,24
4:5,10,15,20
4:20 5:1 35:4,6
35:7 68:14
**complains**  48:7
**complaint**
49:24
**complaints**
24:11 44:24
**completely**
30:5 52:11

**complex**  30:6
**conceding**
66:12
**concern**  29:23
42:24 43:22
**concerned**
29:14,17 43:15
56:14,15 58:4
**concerning**
18:1 30:23
**concerns**  36:10
64:11
**concluded**
70:21
**conclusion**
55:3
**conclusively**
67:12
**conclusory**
48:17 50:2
68:23 69:3,13
**conduct**  54:24
55:5
**conduit**  18:1
**conference**
19:14
**conferences**
18:13
**conferred**
64:25
**conferring**
48:2
**confers**  46:22
**confession**
62:18
**confessions**
47:5

**confines** 48:18
49:3,12
**confirm** 32:12
**confirmed**
37:17 68:5,13
**conjunction**
18:10 19:17
**connection**
44:22 45:9
46:17 62:16
**consensual**
16:1 24:21
38:2,17 68:3
**consensus**
23:23
**consent** 42:22
**considering**
45:2 46:3
**consistent** 16:4
**constituents**
38:6
**consultant** 5:3
**consultation**
64:24
**consulted**
22:23 41:1
64:15
**consulting**
28:24
**contact** 20:20
**contain** 29:10
**contend** 26:12
**contested** 39:9
**context** 52:6,18
**continue** 28:3
38:12

**control** 37:7
45:16 52:10,10
61:6 62:3,25
**controlled**
47:25
**convenience**
61:8,16
**cooperation**
37:4
**coordination**
16:14
**copies** 29:7
**copy** 25:6
26:19
**correct** 32:15
43:6 44:21
45:11,18 46:9
49:1 58:16
59:16 60:10
**counsel** 2:6,18
3:13 4:1,10,11
4:16,21,22 8:8
8:15 9:2 12:13
12:17,21 13:7
14:24,25 18:1
18:12,12 23:8
23:10,13 24:16
24:19 25:1
33:14 34:11
35:9 39:11
44:25 53:23,24
60:13 63:22,23
**counsel's** 23:14
**counselor**
49:20
**counsels** 51:4

**country** 37:11
72:21
**county** 54:12
**couple** 67:1
**course** 15:23
19:25,25 44:25
49:3 57:24
**court** 1:1,12
15:3,8,12,19
15:21 17:4,6
17:23 18:5,7
18:16,21,25
19:8,11,17,18
19:24 20:1,6
20:12,17,18,19
20:24 21:2,5
21:12,18,23
22:3,8,11,16
23:8,13,15
24:4,6 25:5,8
25:10,18,23
26:2,5,14,19
27:1,18,25
28:9 29:8 30:5
30:12 31:13,21
32:2,5,7,17,23
33:4,8,13,18
33:22 34:1,5,9
34:13 35:8,15
36:12,17,19,25
38:4,10,13,23
39:10 40:5,13
40:16,22 41:3
42:2,13 43:5
43:10,13,24
44:4,6,8,9,14
44:18 45:1,10

45:21 46:10
47:21 48:9,19
48:23 49:14
50:11,18,23,23
51:1,8,11,19
52:2,2 53:22
54:8,12 55:2,7
55:10,13,18
57:10,23 58:8
58:11,15,18,21
58:23,24 59:1
59:4,6,8,12,15
59:18,21 60:1
60:3,4,8,13,18
60:25 61:6,19
62:3,13,21
63:17 65:10,15
65:19 66:15,17
66:19,22 67:2
67:22,24,25
68:1,4,8,25
69:18 70:9,11
70:14,18
**court's** 26:13
44:19 63:4
**courtroom**
11:20 14:3,9
15:1 39:11
40:11 60:19
**cover** 41:20
**covered** 24:8
51:23 52:1
53:8
**cplr** 67:5
**created** 61:12
**creating** 16:4

| | | | |
|---|---|---|---|
| **creditor** 2:19 | **deangelis** | **decided** 20:5 | **depiction** 25:3 |
| **creditors** 2:18 | 67:19 | 58:23 59:10 | **deposit** 39:15 |
| 6:14 12:25 | **deanna** 12:1 | **decision** 15:25 | 39:23 |
| 15:3 33:15 | **debated** 34:21 | 16:24 17:7 | **deputy** 15:7 |
| 37:12 | **debt** 26:21 | 19:7 26:6 54:4 | **describe** 42:6 |
| **creek** 30:19 | **debtor** 1:9 3:1 | 54:5,15,20 | 42:11 |
| **crop** 70:14 | 3:13,19,19 | 61:6 64:22 | **describing** |
| **cut** 54:8 | 5:21 6:4 8:15 | 66:20,23,24 | 53:4 |
| | 9:2 11:8,11,12 | 67:18 | **description** |
| **d** | 12:17,21 14:20 | **decisions** 66:2 | 31:3,19 |
| **d** 11:1 71:1 | 15:2,11 16:20 | 66:3,16,19 | **detail** 23:14 |
| **daily** 17:12 | 17:19,19,25 | 67:18 | 29:24 30:18 |
| **data** 41:24 | 20:11,16 23:1 | **declaration** | 31:10 47:3,20 |
| **database** 31:18 | 23:4 24:1,19 | 40:10 | 49:13,21 51:3 |
| **date** 5:7 16:8 | 25:11,13 29:4 | **decree** 57:4,9 | **detailed** 29:4 |
| 18:19 25:24,25 | 35:9,11,25 | **decrees** 57:6 | 29:10 32:1,3 |
| 40:1,2,3 41:7 | 36:9,21 37:2 | **deegan** 4:1 | **details** 31:24 |
| 71:25 72:25 | 37:21,24 39:2 | 8:14 12:16 | **determine** 48:4 |
| **day** 6:3 11:8,10 | 39:6 40:5,25 | 33:23 71:14 | **dialog** 40:8 |
| 11:12 15:11 | 41:5,11 43:19 | **defendant** | **different** 17:9 |
| 17:24 26:20 | 44:2,6 45:1,6 | 49:24 67:7 | 29:19 47:15 |
| 32:13,24 34:23 | 48:18 49:12 | **defense** 18:11 | 50:9 64:9 65:1 |
| 36:21 37:24 | 50:17 59:7,13 | **deferring** | 65:20 66:4,13 |
| 39:2 41:5 44:1 | 59:22,25 60:9 | 27:10 | 67:21 |
| 44:6 64:1 71:6 | 64:2 | **definitive** 40:7 | **difficulty** 51:21 |
| **day's** 2:10 | **debtor's** 5:10 | **degree** 27:10 | **dig** 29:18 |
| **days** 35:11 | 5:19 15:24 | **delaware** 41:15 | **diligence** 36:4 |
| 60:19 | 23:19 24:16 | 41:17 | 36:6 41:10 |
| **deadline** 24:20 | 25:9 28:24 | **delve** 70:15 | 42:23 |
| 25:2,9 66:11 | 35:9 38:7 39:5 | **demanded** | **dine** 6:18 11:13 |
| **deadlines** | 40:4 41:12 | 23:20 | 11:13 15:5 |
| 35:16 | 42:19 45:14 | **denying** 25:7 | 18:25 19:1,10 |
| **deadly** 38:17 | 63:4 | 37:9 53:7 | 20:12,13,21 |
| 38:19 | **debtors** 5:6 | **department** | 21:8 36:7,8,13 |
| **deal** 26:5 39:24 | 59:6,6,9 | 7:8 54:14,19 | 37:11 40:22,23 |
| **dealing** 53:12 | **decide** 21:3 | 55:2 | 40:23 42:13,14 |
| **dealt** 48:23 | 26:7 | | 42:14 43:7,12 |
| 67:4,21 | | | |

43:18 59:13,14
**diocesan** 47:17
56:10 57:13
**diocese** 1:7
11:4 26:3
37:10,15 39:13
39:20,20,25
41:9,18,19,22
42:10 45:14,16
45:17,19 46:23
47:25 50:8,13
51:7 52:8,21
52:22 53:1,13
53:16,18 54:6
55:4,14,20
56:5,10,19
57:2 58:12,20
58:25 59:12,24
59:25 60:6,9,9
61:4,11,12,14
61:20,23 62:2
62:7,10,15,15
62:17,18,24,25
63:3,10,11
64:13,14,17,20
64:24 66:1
68:13 69:1,13
69:20,21 70:5
**direction** 62:5
**directly** 38:5
**disagree** 38:14
**disagreed** 38:3
**disagrees**
64:13
**disallow** 53:18
**disallowed**
44:8

**discernible**
35:23
**disciplinary**
62:7
**disclosure**
25:11 36:3
37:21
**discovery**
18:13 42:2
43:20 55:21
57:16,25 66:19
**discuss** 16:17
**discussed** 49:4
**discussing**
27:13
**discussion**
18:10 27:16
47:24 53:7
**discussions**
27:9 36:1,9
64:17
**disjointed**
50:16 69:25
**dismiss** 15:25
16:21,25 26:3
26:10 37:9,25
53:10
**dismissal** 22:13
22:20 23:17
**dismissed**
54:23,24 58:18
66:17 67:8
**displeasure**
24:16
**dispute** 42:2
**disputed** 45:24

**disputes** 66:11
**disregard**
69:18
**disregarded**
69:16
**distinct** 43:18
45:7
**distinguishing**
65:21,23
**district** 1:2
17:8,10,14,16
18:3,17 19:5
19:12,13,18
20:19 21:6,14
23:15 24:6
26:4
**division** 57:24
58:2 66:16
67:9
**doc** 5:7,16,22
**docket** 2:3,7,14
2:20 3:2,8,14
3:21 4:2,7,12
4:16,23 5:3
17:17 21:16,18
21:19 26:14,18
39:4 41:6
43:11
**doctrine** 47:1,2
47:7,24 48:5
**document**
52:13,24 67:7
67:11
**documentation**
40:1,7
**documents**
31:17

**doing** 23:4,5
25:2 53:17
**dollars** 29:25
31:8
**doty** 8:9
**dowd** 49:7
**doyle** 56:3
**doyle's** 56:23
**dozen** 16:16,25
**dozens** 55:13
**draft** 40:6
**draw** 37:5
**dreams** 67:19
**drop** 29:19
**dropping**
29:18
**due** 36:4,6
41:10,21 42:23
**duty** 57:20
**dynamic** 53:12

**e**

**e** 1:21,21 4:6
6:1,1 7:20 11:1
11:1 12:1 71:1
72:1
**earle** 8:16
**early** 57:7
**easier** 68:13
**east** 8:9
**eastern** 17:8,10
17:15 18:17
21:6,13
**ecf** 25:7 28:22
32:14,18 33:1
33:5,9,11,19
33:23 34:2,6
34:10,14,17

35:5 40:13
**ecro** 1:25
**educate** 16:17
**effect** 23:20
27:14
**effort** 16:22
**efforts** 16:3
23:23 24:20,23
26:10 42:19
**eighth** 2:1,10
2:16,22 3:10
4:14,19,25
32:24,25 33:4
33:8,13,18
**either** 24:9
48:3 57:12
**elements** 16:18
46:2 49:23
68:21,23
**elevating** 64:15
**email** 21:24
**emailed** 21:16
21:24
**employee**
61:11 62:1
**employees**
50:14 61:23
63:1
**employer's**
61:9
**employment**
50:3 61:8,17
67:22 68:21
70:2
**encourage**
42:20

**encouragem...**
24:14
**engage** 47:2,6
61:8,16
**enhance** 22:7
**enter** 39:22
40:5
**entered** 24:6
28:17 35:3
37:9 39:21
40:21
**entities** 49:11
**entity** 48:18
**entrance** 62:11
62:14 63:12
**entry** 5:6,20
39:5 40:1
**essentially**
44:17
**establishing**
35:4 70:1
**estate** 8:15
12:17 41:2
**eucharist** 47:5
**evaluate** 36:15
41:25
**event** 41:17
60:4
**events** 50:13
69:22
**eventually**
23:11,11
**everlaw** 30:25
31:16
**everybody**
25:24 28:8
60:20

**everybody's**
28:7
**evidence** 40:14
40:17,18
**exam** 62:14
**example** 23:13
31:16 50:7,9
69:19
**except** 44:2
**exchange**
39:19
**excluded** 59:11
**exemplar**
23:21
**exhibit** 40:18
**exist** 50:20
**exists** 50:21
**expenses** 2:12
2:17,25 3:12
3:18,25 4:21
5:1 28:23 29:2
29:6 30:24
32:14,19,19
33:2,6,10,11
33:15,20,24
34:3,7,11,15
34:17 35:5,12
**expert** 28:24
29:3,6,22
31:16 57:18
58:3
**experts** 28:18
29:6,22 30:19
31:6,11 32:1
**explained**
56:23

**expressing**
24:16
**expressly**
59:11
**expunge** 65:13
**extent** 24:22
55:21
**extracted**
41:24

## f

**f** 1:21 72:1
**face** 55:4 57:25
68:10
**facilitated**
62:11,16 69:21
**facilitating**
63:12
**facilities** 53:16
**fact** 47:9 64:25
70:4
**factors** 61:7
65:21,23 68:17
69:7
**facts** 47:24
49:4,25 50:3,4
61:18 63:7
67:23 69:14,16
69:23 70:6,7
**factual** 48:15
49:9 66:11
**faculties** 46:22
46:24,25 48:1
48:2 53:4 65:1
**faculty** 61:14
**failed** 45:16
**fairly** 46:1

fall 30:21,24 31:15 44:10 48:14
far 18:22 60:22 63:25
father 56:3,23
favor 55:14
favorite 32:5
fcc 4:10
feb 2:2
february 2:13 3:1,13,20
federal 45:22 46:11 49:22 67:6,16,22 68:6,11
fee 3:16 26:21 28:1,16 33:18 34:5,9,13,21 35:8,10,13 71:5,6,7,8,10 71:11,12,13,14 71:18,19,21,22
fees 27:7,8,20 28:23 29:2 30:4,5,9 32:13 32:18,19 33:1 33:5,9,11,15 33:19,23 34:2 34:6,11,14,17 35:1,11,13,18 38:19
felt 48:25 65:5
fifth 2:5 3:4,23 4:4 33:22 34:1 34:5,9 52:19 71:16

fight 65:25
figures 30:16 35:17
file 25:11 35:7 37:21 38:16
filed 17:17 20:7,8,16,25 21:16 26:23 35:2,25 36:23 37:11
filings 53:17
fill 17:16
final 28:1,4,5 41:5
finally 58:18
financer 36:1 36:11
financial 3:5 5:2 9:9 12:25
financing 36:5 41:11
finding 55:4
finds 25:8
fine 51:19
fire 25:23 63:2
fired 47:25
firing 46:24 47:8
firm 12:3,14 13:8 24:2 35:20 37:12 46:20,21 55:25
firms 16:16,17 16:19 23:2,2 38:5
first 15:17 16:3 16:7 20:15

21:10 26:2,21 26:22 39:4,18 39:25 44:12 49:19 54:14,19 55:2
five 18:23 39:25 40:2,2
fixed 61:10,12 62:2
fl 8:3
fletcher 67:19
flip 15:17
floor 6:15 7:17 9:17
flower 45:19
focus 23:19
focused 16:3,4 27:12 45:12 56:3
folks 15:18 51:5 53:2,13
follow 34:25 66:19 68:6,7 68:10
followed 66:24
following 15:24
forchelli 4:1 8:14 12:16 33:23 71:14
foregoing 72:3
former 64:11
forms 45:25
forward 16:9 17:2 27:13 36:14 42:23

found 45:5
four 15:14
fox 67:20
frankly 65:3 65:25 67:5
free 61:8,16
friday 19:21 20:8,11
fringe 61:9,17
fruitful 18:10
frustrated 36:25 37:18
frustration 38:21
full 55:21
fulltime 62:1
fully 19:20 20:7,24
function 12:7
functions 31:18
fund 41:23
funders 41:9 41:18,23
funding 41:18 42:9
further 5:7 20:3 22:2 31:3 35:14 40:20 41:16 48:3
future 2:6 3:6 4:5 12:2 34:2 42:18 71:16

| g |
| --- |

g 11:1
galardi 7:6 11:16,16,18

**garabedian**
49:8 54:2 56:2
**gary** 17:7
**generally** 30:8
**geographical**
45:13 48:18,21
48:25 49:2,11
**gerard** 8:19
**gerber** 4:6 7:20
12:1,2
**gerber's** 34:11
**geremia** 6:8
11:7,7 15:2
17:5,21,24,24
18:6,9,18,23
18:23 19:13
20:1,2,9 21:1,4
21:15,22 22:1
25:16,19 44:3
44:5,5,21
45:18 46:9,16
47:23 48:12,22
49:1,18 50:12
50:21,25 51:2
51:10 53:3
63:25 64:1,1
65:14,16,24
66:20,23 67:4
68:2,20 69:11
69:19 70:10,13
70:17,20
**getting** 43:20
51:21
**give** 14:14
15:12 31:19
39:22 46:5
51:6 52:6

**given** 13:6 14:4
14:16 23:6,21
23:22 31:24
58:1,1,3
**gives** 24:19
**giving** 12:6
**glad** 60:24
**glenn** 1:22
**go** 15:13 18:25
22:3 25:18
31:13 32:2,11
36:19 46:1
49:14 51:4,15
51:24 56:5
57:17 59:20
61:1 65:13
66:18 69:4
**goes** 37:7 52:25
**going** 11:19
13:17 18:8
21:3 24:10
25:5 26:9 27:2
27:13,15,22
29:14,25 30:14
31:9 34:17,24
37:3,4,5 43:16
51:21 56:8,10
60:19 69:4
70:11
**good** 12:9,12
12:20 15:8,10
44:5 60:16,18
**gordan** 54:2
**gordon** 54:1,10
55:8,11 58:10
58:17 59:15,23
60:11,12 64:3

66:15
**graduations**
69:22
**grant** 26:13
59:8
**granted** 44:15
44:15
**grapevine**
22:25
**gray** 7:1 11:18
60:2
**green** 1:13
**greg** 7:13
11:23,24 27:6
30:3
**gregg** 7:6
11:16
**ground** 67:8
**grounds** 63:4
**group** 5:2
30:20,21 33:19
62:24
**guidelines**
34:21,25 53:15

**h**

**hage** 2:7 7:15
12:3 34:10
71:19
**half** 16:25 17:1
41:14
**hand** 12:6
**handling** 30:1
**hang** 29:19
**happen** 18:4
**happened**
17:13,15,20
43:16 54:18

56:11 57:7
**happy** 17:5
26:15,23
**hard** 16:1
38:22 63:19
**health** 5:21
39:7,10 71:23
**hear** 13:2,3,6
19:4 21:3 23:9
24:14 37:6
47:5 49:16
51:11,18,19
**heard** 15:15,16
15:17 16:11
20:15,22 22:3
22:24 27:1
37:25 38:12
40:22 53:23
58:23 60:14
63:18,22,24,25
**hearing** 2:1,1,5
2:5,10,10,16
2:16,22,22 3:4
3:4,10,10,16
3:16,23,23 4:4
4:4,9,9,14,14
4:19,19,25,25
5:6,6,10,10,19
5:19 15:18
16:6,22 22:13
22:21 28:22
31:23 36:22
37:25 41:6
**heart** 55:6
**held** 16:16
39:23 61:6
62:3 67:10

**hello** 11:22 14:19
**helpful** 52:6
**herman** 8:1 12:10 49:7
**hi** 13:19
**high** 27:8 29:11 64:12
**hired** 47:14,25 62:25
**hiring** 46:23 47:7
**historical** 41:12,22
**hogan** 3:7 12:4 34:6 71:18
**hold** 18:12 22:16 38:23 53:20
**holdback** 27:13,14,17
**holding** 27:23
**holds** 31:17
**home** 62:24 70:3
**hon** 1:22
**honor** 15:10,14 15:15,20,23,24 16:2,3,8,12,14 17:3,21 19:22 19:25 20:13 21:1,8,15,15 22:1,5,5,12,20 24:18 26:17,18 26:22,25 27:5 27:6,14,15,19 28:7 30:3

31:12,25 32:16 32:22 33:3,7 33:12,17,25 34:4,8,12 36:8 36:18,20,21,24 37:23,24 39:1 39:3,8 40:4,9 40:15,19,23 41:4,7 42:5,14 43:18 44:2,21 44:22 45:4,18 46:9,17 47:19 48:12,16 49:4 49:10,13,21 50:5,15 51:10 51:17 52:6 53:12 54:1 58:7 59:14,23 60:12 64:2 66:7,8,21 67:15,20 68:2 69:11,16,25 70:8,20
**honor's** 15:25 16:5,11,12,24 37:25 38:21
**hope** 22:8,13 22:21 24:24 68:8
**hopefully** 24:7
**horowitz** 31:1
**hotel** 22:10
**hours** 34:19
**hybrid** 2:1,5,10 2:16,22 3:4,10 3:16,23 4:4,9 4:14,19,25 5:6

5:10,19
**hyde** 5:25 72:3 72:8

**i**

**idea** 17:12
**identified** 68:16,17 69:7
**identify** 17:23
**ii** 57:4
**illustrate** 50:4 69:14 70:7
**importance** 16:22
**importantly** 23:25
**inadequate** 45:5 69:17
**include** 37:3
**included** 24:12 28:20 29:22 61:18,22 62:23 63:7
**includes** 28:23
**including** 3:20 23:2 30:25 63:8,11
**incomplete** 25:3
**increase** 38:23
**increments** 34:20
**incurred** 2:13 2:25 3:12,18 3:25 28:24 29:6 38:19
**indemnity** 10:2

**independent** 45:15 50:19 52:11 64:20
**indicated** 17:9 21:2 29:11
**indicates** 57:1
**indiscernible** 11:19 13:10 19:23 23:14,16 23:18,24 36:2 38:25 43:11 53:2 54:6,7,17 54:25 55:25 56:1,17 57:13 57:22 58:5,5 66:14 67:2,19 68:14
**individual** 16:15,17 24:1 50:9 65:1
**individuals** 47:4,8 52:10 52:20,22 66:2
**information** 23:15 28:19 30:23 36:10,15 36:23 42:17,24 43:1,4,21 45:1 46:1 61:22
**initial** 18:13
**injunction** 26:7 58:22 59:10,24 60:6,7
**instance** 20:15 47:11
**instances** 48:16

institute 50:17
institutional
  62:3
institutions
  45:13,15 47:17
  48:1,20 50:10
  53:16
insurance 4:21
  8:8 9:2 10:2
  12:13,21 13:7
  33:14 36:1,5
  39:14
insurer 41:12
  41:13,14
insurers 36:4
intend 38:16
intending
  13:21
interaction
  56:18 57:12
interactions
  50:17 70:1
interest 39:24
  39:25 40:3
  41:2
interested
  39:17
interim 2:1,5
  2:10,16,22 3:4
  3:10,16,23 4:4
  4:9,14,19,25
  26:21 28:1
  29:12 32:24,25
  33:4,8,13,18
  33:22 34:1,5,9
  34:13,16 35:4
  35:6 71:16

intervene
  24:25
investment
  3:19
invoices 29:5,8
  29:10 31:2
  32:1,3
invoked 65:3
involve 43:20
  52:7
involved 24:23
  24:23 30:6
  42:8 54:21
  64:14,17 66:1
involvement
  23:25 24:1,5
  24:13 55:22
  63:12
involves 43:20
  49:20
isip 39:14
island 5:22
  39:7 60:21
  71:23
issue 20:22
  27:12 44:18
  45:6 46:20
  47:16 48:1,20
  50:17 53:6
  55:17 59:9
  60:4 64:7,8
  65:7,20 66:7
  67:10
issued 16:24
  45:21 54:19
issues 27:3,10
  27:11 28:3

  30:6 43:19
  51:24 68:15
items 15:15
  16:4,6,9 42:16

**j**

jaf 54:20 55:7
  55:8 66:22,23
james 6:19
  31:14
javian 9:6
  12:19,20,20
jd 54:5,10
  66:20,22,24
jefferies 3:17
  3:21
jeffreys 34:14
  71:21
jesuit 54:13
  56:9
jesuits 58:14
jim 13:17
joined 14:12
  14:22
jonathan 1:25
jones 2:10,19
  6:3,12 11:8,10
  11:12,14 15:11
  17:24 26:20
  32:13,24 36:21
  37:24 39:2
  40:24 41:5
  42:15 44:1,6
  64:1 71:6
joseph 2:7 7:15
  12:3 34:10
  71:19

judge 1:23
  13:18,22 17:7
  19:14,18 21:2
  25:17 26:2
  28:16 35:3
  54:12 55:14
  60:16 70:10
judges 17:9
  18:21 19:1,3
  21:6,9 26:4,4
  37:20
judicial 24:5
jumps 30:15
jurisdiction
  26:11 48:24
justice 7:8
jv 54:9

**k**

karen 6:18
  11:13 40:23
  42:14
kcic 28:24 29:8
  32:20 71:5
kcic's 29:2,12
knew 70:16
know 13:2,24
  16:19 17:11,14
  17:20 18:23
  21:4 23:24
  24:3,4,7,11,13
  24:17,22 28:11
  28:14 29:15,17
  37:1,11,16
  42:21 43:10,15
  49:24 51:2,12
  51:13,23 52:14
  53:3,6,8 55:12

55:23 59:15
60:23 61:21
62:1,17 63:18
63:19 66:5,9
68:14
**knowledge**
56:8
**kuenzi** 13:12

**l**

**label** 49:10
**lack** 23:25
**lake** 9:11
**large** 30:5
54:16 55:15
**largely** 66:23
**lasalle** 50:8,21
**late** 54:6
**law** 8:1 9:15
12:10,13 13:8
14:5 23:1,2
24:2 30:20
37:14,16 46:2
46:21 47:19
49:7,20,22
53:19 55:3,25
57:5,6 58:19
60:17 67:10,16
68:10 70:14
**lawsuits** 50:23
**lawyers** 37:2
38:4,10,14
**lay** 57:18 61:23
**lcc** 5:2
**leadership**
56:10
**learn** 55:21

**learned** 17:10
23:7
**leave** 25:19
44:9,15 65:12
**led** 65:21
**ledanski** 5:25
72:3,8
**legacy** 39:12
39:16,18,19
**legal** 27:7 31:1
62:5 72:20
**legitimate** 51:7
**lengthy** 61:5
**lerman** 4:11
34:16 71:22
**letter** 20:16,19
52:14 53:11
**level** 29:11
66:17 70:1
**lexington** 9:3
**liability** 41:13
55:4,20
**liable** 54:13
**light** 25:23
**line** 14:10,14
14:17,23 71:4
**liquidation**
41:20 42:10
**list** 37:16
**listed** 26:23
**listen** 54:22
**litigation** 16:21
17:4,4 27:11
27:22 41:9,17
41:23 42:9
**little** 13:19,23
22:17 31:20,21

35:23 45:7,18
51:20 54:18
60:2
**llc** 2:7,23 3:17
3:21 7:15
30:20 32:20
33:1,19 34:10
34:14 71:8,19
71:21
**llp** 2:19 3:14
4:1,15,22 6:3
6:12 7:1 8:7
9:1 12:21
33:14,23 71:13
71:14
**load** 38:1
**location** 66:4
**logging** 13:24
**long** 5:22 21:19
28:20 37:18
39:7 60:20
71:23
**longer** 50:21
**look** 25:5 30:15
32:7,9 34:24
35:17,17 41:24
57:19 69:6
**looking** 41:9
43:11
**looming** 66:10
**lot** 27:11 28:11
28:12 29:24
31:10,24 35:19
44:25 48:7,9
49:4 52:1
**lots** 31:8

**loud** 24:15,15
38:1
**love** 32:2
**luckman** 8:19
12:15,16,16

**m**

**m** 6:10 7:6
**made** 19:8
23:10 38:3
42:16 45:2
48:8,16 51:4
52:2,8,22
59:10 61:4
63:10 64:3,23
65:6,12 68:2
**madison** 8:10
**main** 9:10 16:3
42:24 52:5
**make** 11:5
13:14 16:5,19
19:18 38:6
41:11,18 43:3
55:11 57:3
59:19 64:12
65:8
**makes** 31:7
50:2
**making** 43:19
**man** 11:12
**march** 54:7
**marianist**
62:19
**marianists**
64:15,18 66:4
**marist** 54:21
54:21

marsal 2:23
marsel 14:20
  33:1 71:8
martin 1:22
martinelli
  57:19
mary 70:3
mary's 62:24
mass 50:14
  56:14,15
masses 69:22
material 44:13
  45:5,8 65:6
matter 1:5
  46:25
matters 29:13
  30:8
mcdermott
  40:10
mean 31:8
  62:13
meaningful
  47:19
means 23:11
  53:4
mediating
  16:23
mediation 24:5
  24:10,12,14,25
  25:1 37:7
mediations
  22:24 25:20
mediator 23:9
mediators
  16:15 23:21
  24:9,13,17
  37:8

meet 13:10
  52:3
meeting 16:15
meetings 16:16
member 61:14
members 23:2
mention 27:19
merits 53:7
merson 9:15
  14:5 49:20
  60:17
message 37:25
met 68:24
mg 1:3
mic 27:5
michael 3:6
  34:6 71:18
microphone
  22:17 60:15
middle 11:21
military 8:2
  50:8,21
million 39:16
  39:23
mind 22:24
mineola 72:23
minimum
  25:12,12 63:7
minutes 11:6
missed 54:9
misspoke
  43:22
mobile 30:25
momentum
  16:4,6
monetize 42:20

money 28:12
  35:20 51:6
month 54:18
  54:19
monthly 27:15
  35:7,8,10,12
  35:13
months 22:25
  23:1
moore 10:6
  14:19,19
moot 26:10,11
morning 15:10
motion 5:6,11
  5:19 15:25
  16:7,21,25
  17:13 19:5,18
  20:4,9,14,15
  20:16 21:11
  23:17 25:7
  36:22 37:9,25
  39:5,9,21 40:4
  40:8,12 41:1,6
  41:8,8 42:6,7
  42:11,16 43:5
  43:7,8,9,17,19
  43:24 51:3
  53:10 58:22
  59:2,8,10,10
  59:19 60:5,7
  71:24,25
motions 16:7
  17:13,15 18:14
  18:16 19:8
  21:13 39:4
  55:15

move 16:9
  25:24 26:14
  36:14 38:25
  42:23 48:2
moved 40:14
moves 47:18
moving 60:1
multiple 68:17

n

n 6:1 8:2 11:1
  71:1 72:1
name 14:22
  54:9 59:18
  60:8
named 58:11
  58:19,25 59:12
  59:25 61:7
narrow 67:10
nathan 13:11
nature 52:17
necessary 2:12
  3:25
need 22:17
  37:3 41:24
needed 23:18
  62:3
needle 47:18
  48:2
negligent 53:17
negotiations
  23:19
never 47:21
nevertheless
  46:5
new 1:2,7,14
  6:6,16 7:4,11
  7:18 9:4,18

10:4 11:4
41:19 42:10
46:16 47:13
48:17 49:10
54:6,10,12,17
54:20 55:3,12
57:23 66:16
70:14
**newman** 10:1
**news** 67:20
**nice** 22:8,9,10
60:18
**nine** 56:6,12
**nixon** 3:14
33:5 71:10
**non** 17:19 59:6
59:9,13,22,25
60:9 70:5
**normal** 30:1,16
**north** 2:23
33:1 71:8
**note** 11:25
**noted** 40:25
**notes** 30:13
**notion** 19:15
46:21 47:9
49:22 50:8
**november** 35:3
**number** 5:11
11:4 17:9 25:8
26:18 64:10
66:16
**numbers** 32:9
32:12,21 55:15
**numerous** 36:9
**ny** 1:14 6:6,16
7:4,11,18 8:17

9:4,18 10:4
72:23

**o**

**o** 1:21 11:1
72:1
**object** 40:9
45:1 52:23
65:21
**objected** 38:10
44:17 52:7
**objecting**
30:11 36:8
42:3,4 43:7
**objection** 5:11
5:11 35:16
36:7,23 40:25
43:6 44:7,10
44:15,23 45:3
45:12 46:8,18
48:20 50:6
51:12 53:8,25
54:4 55:9 63:5
63:15 64:7
65:4,8,11,25
66:25 67:17
68:18
**objections**
27:24 40:16
44:3 45:22
46:5 48:7 68:8
**objects** 35:10
**observation**
61:22
**observations**
50:16 69:25
**observed** 50:15

**obtained** 59:24
**obvious** 24:24
62:9
**obviously**
24:24 27:7,25
28:15 42:3
61:21
**occurred** 57:5
**october** 16:2
24:20 25:14
26:12 35:2
37:22 38:18,18
38:25
**offered** 69:23
**office** 11:23
13:12 27:7,8
30:4,4,7
**official** 2:18
6:13
**oh** 13:3
**okay** 11:17,24
13:13,15,23
14:2 15:3,12
20:6,24 21:5
22:8,11 25:5
27:18,25 30:12
31:21 32:13,23
36:17,25 42:13
43:24 44:4
49:14 51:8,18
59:15 61:1
68:15 70:9
**old** 56:6,12
72:21
**omnibus** 5:10
5:11 44:7,14
44:15,23 45:3

45:9,12 46:7
46:17 47:20
48:20 50:5
55:9 64:7 65:4
66:25 67:17
68:18
**ones** 28:13
65:5,7,11 66:7
**operate** 62:19
**operated** 61:11
62:10,24 66:5
**operation**
58:19
**opinion** 18:22
21:5 23:17
47:20 48:23
68:17
**opinions** 21:7,9
21:13 45:21
**opportunity**
39:12 53:9
63:21 70:15
**opposed** 16:10
**opposing** 36:3
**opposition**
20:10
**option** 60:24
**options** 16:21
**oral** 63:22
**order** 5:7,7,20
24:7 25:6,15
26:15,23,24,24
29:3,6,16 35:3
35:14 37:9
39:5 40:20
41:23 47:12,16
51:14 52:16

54:25 55:5,19
58:9,12 60:19
**ordered** 21:7
**orders** 25:10
28:16 45:13,15
50:19 54:22,23
59:1
**organization**
52:12 62:10
**organizations**
61:25
**orient** 39:10
**original** 59:24
61:6
**ought** 37:1
**outset** 38:9
**outside** 30:22
30:24 31:10
48:24 52:24
**overall** 27:21
**overruled** 63:5
63:16
**ovington** 8:16
**own** 12:2,4
21:11 53:4
61:8,16

**p**

**p** 6:1,1 11:1
**p.c.** 10:1
**p.m.** 11:3
**pachulski** 2:19
6:12 11:13
33:10 40:23
42:14 71:12
**page** 25:8 71:4
**paid** 31:2,4,6

**papers** 21:3
47:10 54:11
63:23,23
**paragraph**
25:8 28:25
29:7,9 64:19
64:22
**parcel** 30:25
**parent** 63:7
**parents** 63:8
**parish** 47:14
47:14
**parishes** 47:17
58:25 61:24
**parishioners**
56:19 57:12,14
**part** 26:6 38:6
51:3 52:3
53:10 54:16,16
61:25 63:11
**particular**
52:25 56:4
**particularly**
55:24
**parties** 11:5,20
12:5 14:2,8,12
14:15,21,24
17:19 27:12
30:7 38:21
55:14 62:6
**partly** 18:10
**party** 35:10
36:5 60:9
**pastoral** 61:24
**patience** 37:19
**pay** 35:11
41:21 42:18

**payer** 39:18
**payment** 35:14
**payroll** 61:9,18
61:19,20
**peabody** 3:14
33:5 71:10
**pen** 29:19
**pending** 17:14
18:13 19:6
37:18,20 58:8
58:15
**penn** 37:14,15
**pension** 61:23
**people** 51:11
56:22,25,25
57:25 58:5
60:20,25
**percent** 35:11
35:12,13 38:24
**period** 2:13,20
3:1,7 4:2,7,11
4:16,22 5:3
29:12
**peripherally**
69:6
**permissible**
46:4
**permission**
41:9
**permit** 61:15
**permitted**
62:19
**perpetrator**
55:19
**person** 69:13
**perspective**
15:24

**petition** 19:17
20:4
**petitioner**
20:10
**phrase** 47:1
**pick** 37:2
**picking** 32:8
35:20
**place** 13:12
22:6,8 29:16
52:20 58:24
59:18 60:8
**plain** 57:11
**plaintiff's**
16:16,19,20
18:1,12 37:2
38:5 40:18
**plaintiffs** 51:4
**plan** 16:18
24:21 25:11,13
37:4,21,21
38:2,16,17
61:23 68:4
**plans** 37:17
68:13
**platform** 31:17
**plead** 55:23
**pleaded** 67:23
**pleading** 45:23
46:11 55:1
67:6,16 68:6
68:11
**pleadings**
45:24
**please** 11:20
12:6 14:4,10
14:13,17,23

15:8 17:23
31:21 44:6
60:14
**pled** 54:18
56:20 57:17
**pllc** 4:11 9:15
34:16 71:22
**ploy** 26:5
**pm** 1:17 70:22
**podium** 11:21
61:1
**point** 42:21
52:21 68:2,15
69:11
**points** 61:4
64:6 65:9 70:4
**pool** 41:10
**porzio** 10:1
**position** 38:7
45:14 53:1,14
64:16,18,21,22
**possession** 3:19
**possible** 16:2
27:23 43:4
**potential** 36:1
**potentially**
42:19
**power** 62:5
63:2
**prefers** 26:25
**prejudice** 25:7
37:10
**preliminary**
26:7 58:22
59:24 60:6,6
**premise** 49:2

**prepared** 60:4
**presentation**
23:10,22 38:13
**presentations**
51:4,15 64:3
**presented** 49:9
50:5 59:9
**presenting**
43:8
**president**
52:15 64:11,16
64:23
**press** 30:25
**prevail** 65:20
**previous** 54:3
**previously**
28:17 44:8
45:8
**priest** 47:12,12
48:4 54:13,21
55:19 56:9,18
68:25
**priestly** 47:6
**priests** 46:22
47:16 55:5
57:13,13 62:17
63:13
**principal** 62:6
65:9
**principal's**
62:4
**prior** 30:18
31:23 41:8
48:23 57:8
62:21 63:4
**pro** 7:16

**probably** 58:10
**problem** 57:22
**problems**
13:11
**procedural**
67:13
**procedure** 68:5
**procedures**
28:16 35:4
53:8
**proceed** 59:8
59:21 67:13
**proceedings**
70:21 72:4
**process** 68:12
**produced**
31:17
**producing**
36:14
**professional**
2:2,6,17 3:5,7
3:11,11,17,24
4:5,6,10,15,20
5:1 27:8 35:7
**professionals**
27:9,16 35:5
**program** 39:14
**progress** 16:5
35:23
**prohibited**
60:1
**promote** 64:23
66:2
**proof** 45:25
64:10,19
**proofs** 36:10
41:24,25 42:25

43:21 64:6
65:2
**properly** 66:12
**proposal** 17:25
24:3 42:21
**proposals**
41:11
**propose** 15:17
26:22
**proposed**
37:21 40:20
46:11 68:4
**proposing**
16:20
**protect** 43:3
**prove** 57:17
**provide** 29:24
31:10,20 68:13
**provided** 29:7
30:17,23
**providers**
30:23 31:3,5
31:15
**providing**
42:24
**province** 64:24
**provincial**
56:17
**provision** 67:5
**public** 21:19
53:17 56:12,13
**pull** 56:25
**purdue** 26:13
**purportedly**
69:15 70:6
**pursuant** 5:19
35:6 46:21

**pursue** 51:4
**pushing** 17:2
**put** 28:4 44:25
    46:3 51:22
    53:14 59:5

**q**

**quality** 41:25
**question** 28:21
**questioning**
    35:21,21
**questions**
    13:22 16:18
    17:3,6 22:2
    23:7 27:21
    28:11,14,14
    30:14 31:7
    40:20
**quickly** 15:23
    32:7,11 40:9
**quietly** 25:1
**quite** 15:9

**r**

**r** 1:21 3:6 6:1
    8:19 9:20 11:1
    34:6 71:18
    72:1
**radio** 61:14
**raise** 27:3 28:3
    28:13 52:18
    66:6
**raised** 12:6
    28:18 31:7
    51:24 66:24
**rather** 60:25
**raton** 8:3

**ray** 9:13 12:24
**reach** 18:3,11
    24:20 25:2
    38:16
**reached** 23:1
**read** 17:7
    18:22 21:5,21
    54:4 63:23
**ready** 11:5
    14:24 15:2,5
**real** 8:15 12:17
    26:8 44:13
    47:24 57:1,2
**realize** 17:18
**really** 20:23
    22:9 27:6
    28:14 44:18
    45:6,24 46:1
    53:9 58:7 65:6
    67:9
**reargue** 19:15
    51:22 55:15
**reason** 20:22
    25:10 27:24
    52:23 64:9,22
**reasonable**
    25:9
**reasonableness**
    29:2
**reasons** 67:4
**rebuttal** 48:13
**recall** 67:15
**recalls** 44:22
**received** 32:1
    38:14 61:17
**recent** 66:16

**reception** 22:6
**recitation**
    68:20
**recite** 49:23
**recognizes**
    55:12
**reconsiderati...**
    19:19 20:4,10
    20:14
**record** 12:7
    14:3,13,16,18
    14:22 40:9
    45:10 72:4
**recording** 11:2
**recounted**
    45:22
**recycle** 48:15
**recycled** 45:8
**recycling** 49:8
**redacted** 42:25
**redounded**
    47:24
**reductions**
    30:10
**reed** 4:15 9:1
    12:21,22 28:22
    29:1,7,11,22
    29:23 32:17,24
    71:7
**reference**
    19:16,20 20:16
    20:17 57:3
**references** 58:3
**referencing**
    36:24
**referred** 20:18
    39:14 45:23

46:14 55:24
**referring** 21:9
    21:10 31:5
**refiled** 60:17
**refilled** 14:6,6
    14:7
**reflect** 31:2
**reflecting**
    47:25
**refute** 67:12
**refutes** 67:7
**regard** 54:2
    55:24
**regarding**
    42:17
**regular** 60:5
**regulate** 53:14
**rehashed** 66:8
**reimbursed**
    28:23
**reimbursement**
    2:12,17,24
    3:12,18,25
    4:21 5:1 35:5
**reiterate** 25:6
**reiterating**
    37:8
**rejected** 69:16
    69:18,19
**relate** 42:4
**related** 60:9
    61:24 65:16
**relates** 42:5
**relating** 29:13
**relations** 62:5
**relationship**
    50:3 52:18,25

56:9 68:21
70:2,7
**relationships**
50:4
**relative** 20:14
**release** 30:25
36:10
**relief** 41:2 51:5
59:3,11
**religious** 45:12
45:15 47:2,12
47:16 48:4
50:19 52:16
54:22,23,25
55:5,19 56:18
57:9 58:9,12
59:1
**relocated** 66:4
**remain** 25:25
37:18 58:24
60:8
**remaining**
35:13
**remains** 59:17
60:4
**remand** 17:15
18:13,16 21:7
21:13
**remanded** 18:2
18:20,21 19:2
19:3
**remanding**
17:7
**remember**
59:23
**remind** 67:2

**remove** 26:5
26:10 46:22
52:20 53:1
63:2 64:21
66:3
**removed** 17:7
18:17,19 64:25
**removing**
46:24 64:18
**rendered** 2:12
2:24 3:12,18
3:24 26:6 29:5
**renew** 55:15
64:22
**reorganization**
25:11
**repeat** 61:3
**repleading**
51:25 52:4
**reply** 20:11
44:11 49:16
50:2 52:14
64:8
**report** 24:19
26:13
**represent** 61:2
**representations**
63:10
**representative**
2:7 3:6 4:6
12:2 34:2
71:17
**representing**
23:2 37:12
**request** 20:23
28:4,23 40:10
40:20

**requested**
26:16 35:12
**requests** 59:11
**require** 29:3
34:22
**required** 34:20
46:1
**requirements**
69:10
**research** 5:2
33:19
**resolution** 16:1
68:5,12
**resolve** 36:9
60:4
**resolved** 26:9
55:21 58:13
**respect** 17:22
19:19 22:12
29:5 30:16,19
43:16 50:7
59:12
**respectfully**
48:6 68:5
**respects** 68:9
**respond** 24:22
**responded**
51:12
**responding**
67:17
**response** 25:16
31:22 38:11
45:7 48:6,10
49:7,7,8,15,20
49:21 55:9
63:22 64:5

**responses**
44:25 45:2
46:4,15,18
48:9 66:25
**responsibility**
39:12,17 56:21
57:21 58:1
**responsible**
53:20 57:19
**restructuring**
2:25 14:20
**resubmit** 34:22
**resulted** 37:17
**retained** 28:19
30:19 62:25
**retention** 2:13
29:3,6
**retrospect** 30:9
30:9
**reversed** 54:14
55:16 66:17
**review** 30:4,9
69:4
**reviewed** 29:1
65:5
**reviewing**
27:20
**right** 11:2,19
12:10,15,18,18
14:12,15,21,24
15:6,13 19:11
21:23,24 32:7
32:11,17,21
39:22 43:24
51:11 53:22
55:10 58:17
64:20 70:11,18

**rights**  28:3
**rise**  15:7 70:1
**risius**  30:21
**risky**  61:8
**rituals**  47:2
  48:4
**road**  68:13
  72:21
**robert**  4:6 7:20
  12:1
**rochelle**  17:11
  21:20
**rock**  30:19
**rockville**  1:7
  11:4 69:20
**rod**  12:16
**role**  53:2 57:1
  57:2
**roles**  52:20
**roman**  1:7 11:3
  47:1,6
**ropes**  7:1 11:18
**rosenblum**  6:9
  11:10,10 37:23
  37:23
**ross**  30:21
**rubin**  30:20
**rule**  5:20 36:22
  53:5 60:5
  67:14
**ruled**  45:11
  47:23 55:14
**rules**  56:13,16
  56:24 57:18,20
**ruling**  38:1
  44:19 45:3
  59:1 62:22

63:4 67:9 68:7
**rulings**  56:1
  71:3
**run**  13:10
  45:19 47:17
**running**  25:14
  35:24 38:4

**s**

**s**  5:11 6:1 10:6
  11:1
**sacraments**
  62:18 63:14
**safe**  53:15
**safety**  53:15
**sahara**  67:19
**salt**  9:11
**sarah**  9:20
  14:5 60:16
**satisfied**  68:19
  69:7,10
**satisfies**  62:21
**satisfy**  46:11
**save**  49:15
**saw**  20:19
  35:24 36:7
  43:14,15
**saying**  23:5,13
  29:16 52:14
  55:18 57:23,24
**says**  25:8 29:1
  56:14 57:9,18
  57:19
**schedule**  20:3
  61:10,12,13
  62:2
**scheduled**
  43:23

**scheduling**
  25:20
**schoenfeld**
  19:14
**school**  37:14
  37:16 43:2
  61:13 62:11,16
  62:20 63:12,13
  64:12,23
**schools**  50:19
  61:24
**scope**  53:5
**scores**  62:15
**screen**  51:13
**script**  15:17
**se**  7:16
**seated**  15:8
**second**  4:9
  15:12 16:8,14
  17:1 19:24
  34:16 43:14
  49:18
**secular**  47:7
  66:1,3
**secured**  12:25
  36:1 41:19
**secures**  39:16
**see**  11:22 13:13
  16:9,10 25:15
  28:25 30:8,12
  30:13 31:3
  32:7 37:10
  51:13,15 63:19
**seek**  36:22
**seeking**  5:20
  16:12 35:7
  39:5,11,21

42:17 65:13
**seeks**  32:13,18
  40:4,5 41:7
**seem**  22:22
**seen**  15:9 37:16
**send**  20:25
  21:12,21
**sent**  62:15
**sentences**  39:8
**senter**  4:11
  34:16 71:22
**separate**  42:7
  42:16,19
**separately**
  47:17
**september**
  1:16 11:3 17:1
  43:23 72:25
**series**  50:16
  66:15 67:18
**serious**  25:15
  25:24,25 37:8
  66:11
**seriously**  32:10
**seriousness**
  38:18,19
**serve**  35:8
**service**  30:23
  31:3,5,15
**services**  2:6,11
  2:24 3:5,11,17
  3:24 4:5 7:2
  11:16 29:5
  30:22,24 31:1
  39:10
**sessions**  16:24
  17:1

set 15:15 17:1
36:22 41:6
43:9 49:6 50:1
61:23
sets 67:18
settlement 5:21
39:6 40:1
71:24
sever 59:8 60:1
several 22:25
45:21
sexual 35:19
41:13,22
share 38:21
sheet 25:12
39:22 40:6
sheets 31:2
shortfall 41:20
shortly 13:10
41:17
shots 57:14
show 52:25
53:19 58:4
shows 52:17
53:11
sic 54:9
sick 47:5
signature 72:6
signed 63:20
significant
41:14
silvershein 8:5
12:8,9,10
similar 49:19
simple 46:1
simply 21:7
45:8 48:3,15

49:11 50:2,15
58:2 66:8
67:23
single 46:19
67:16
sir 19:10
sitrick 2:2
situation 25:4
52:8
six 19:1
sixteenth 5:10
sixth 44:14,15
44:19,22 45:3
45:9,12 46:17
47:20 48:20,24
49:2 50:5
51:23 52:19
54:4 55:9 64:7
65:12 66:25
67:17 68:18
size 30:15
skinned 22:14
22:22
slapping 49:10
small 16:4
smith 4:15 9:1
12:21,22 28:22
29:1,7,11,22
29:23 32:18,24
71:7
solutions 72:20
solving 28:20
somebody
20:25 59:19
somewhat
22:13,21

sonya 5:25
72:3,8
soon 43:14
sorry 26:1
29:20 43:12
sort 30:15
38:17 52:23
sorts 65:8
sought 16:9
32:20 33:20
59:3
south 9:10
southern 1:2
17:14 18:3
19:5,12,13
spare 21:18
speak 12:4,4
13:18,21 28:8
38:12
speaking 14:3
14:13,15 38:4
38:5,8,10
special 3:12
4:1,10,11,15
4:21,22 8:8,15
9:2 12:13,17
12:21 13:7
33:14
specialized
31:1
specific 28:13
30:14 43:1
56:8 57:3
67:10
specifically
61:12 63:9

sporting 50:13
st 62:23 70:3
staffed 63:3
stages 43:3
staggering
32:10
stand 19:12
standard 53:6
55:1 67:21
standards
45:22,23,25
46:12 52:2
67:6 68:7,11
standpoint
35:23
stands 24:19
stang 2:19 6:12
6:19 11:13
13:17,17,19,21
14:1 19:22,22
19:24,25 22:5
22:9,12,16,16
22:20 24:4,18
25:18,19 26:1
30:17,22 31:2
31:4,12,13,14
31:14,25 32:4
33:10 38:3,9
38:13 40:23
42:15 71:12
stange 22:3
start 27:2
starting 11:2
14:25 49:1
state 11:21
12:7 14:10,17
14:23 17:3

23:8,13 26:5
37:14,16 38:4
38:10,13 41:15
41:16,19 42:10
45:5,16,24
46:2 49:5
50:23 55:12,18
58:24 59:4,5,7
59:12,16,18,21
60:1,8 67:10
67:24 68:1,8
**stated**  14:9,9
**statement**
25:12 29:5
35:8,10,12,14
37:21
**statements**
27:15
**states**  1:1,12
7:8
**stating**  14:22
**status**  23:4
24:10
**stay**  58:24 59:7
59:17 60:7
**stayed**  58:17
58:20
**stem**  28:15
**stoneking**
51:13,16,17,20
53:22 64:3
65:2
**stout**  30:21
**street**  6:5 7:10
8:9 9:10
**stringent**  45:24

**strong**  9:13
12:23,24,24
**struck**  39:24
**structure**  56:4
56:24
**students**  61:21
62:9
**subject**  28:1
53:24,24 62:4
65:4
**subjective**  23:6
**submission**
70:12
**submissions**
69:5
**submit**  29:4
**submits**  67:7
**submitted**  45:8
46:19 67:11
**subsequently**
23:7
**substantial**
31:6
**substantially**
30:18
**substantive**
55:3
**succeed**  53:20
**successful**
18:14
**sufficient**
28:19 69:4
**sufficiently**
29:10 69:6
**suite**  7:10 8:2,9
8:16 9:10 10:3
72:22

**super**  13:5
**supervise**  62:9
69:13,23
**supervised**
50:14 56:17
63:1
**supervision**
41:15,16 69:1
69:24
**supervisors**
57:21
**support**  20:9
37:5 40:11
69:15,23
**supported**
25:13
**supreme**  26:12
54:12 55:13
58:11,18
**sure**  11:7 13:14
16:19 17:21
24:15 32:4,5
38:6 42:13
43:3 44:22
59:20 60:3
**surprise**  18:5,5
**survive**  38:24
**survivors**  43:1
**suspended**
52:15,16
**sustained**  46:5
65:12
**system**  5:21
39:7 71:23

**t**

**t**  72:1,1
**table**  37:6
**take**  24:12,17
26:15,22,24
32:10 39:12
69:20 70:11
**takes**  50:4
**talked**  54:7
56:4
**talking**  17:25
**tantamount**
46:23 47:7
**task**  32:5,6
67:16
**teacher**  61:13
**teachers**  61:15
62:8
**team**  23:12
**technical**  51:21
**tell**  25:20 29:20
34:25 56:11
68:19 69:12
**tenth**  34:20
**term**  25:12
39:22 40:6
**terms**  42:23
43:2
**terrana**  4:1
8:14 12:17
33:23 71:14
**test**  69:20
**testimony**  53:4
53:6
**thank**  11:9,15
11:17,24 12:5
12:10,15,18,23

13:1,15 14:8
14:21 15:3,6
15:13 22:5
28:9 39:1
40:19 41:3,4
51:17 53:22
60:12,13 63:17
70:10,13,18,20
**thanks** 21:20
**theoretical**
57:2
**theoretically**
42:8
**theory** 46:16
61:7 62:3
**thin** 22:14,22
**thing** 52:5 70:2
**things** 15:21
19:12 26:15
42:7 51:23
52:1 69:24
**think** 18:19,24
21:9 22:17
23:11,22 25:21
26:8 28:11,20
29:9,23 30:17
31:14,15,18,22
31:23 35:25
36:2,11 37:15
38:20,20 41:1
45:23 46:12,13
46:13 48:13
49:12 50:15
51:25 52:21
53:20 59:3
62:21 65:19,21
66:5,24 67:3

68:6 69:9,12
70:2
**thinks** 37:2
**third** 3:16 6:15
7:17 9:17
34:13 62:6
**thomas** 49:20
**thought** 13:5
18:7 24:21
25:3 26:4 36:7
46:6 47:21
52:5 66:8 69:7
**three** 35:22
37:20 44:10
61:4 64:2
**tied** 27:22
**tim** 12:12 13:7
**time** 13:7 15:9
25:14 27:2
31:1 34:19,22
37:3 57:7
63:20
**times** 59:3
**timothy** 8:12
**today** 16:6,13
24:10 39:11
40:11 41:6
43:6,16 58:7
**today's** 15:18
**todd** 6:8 11:7,9
17:24 44:5
64:1
**told** 22:14 23:6
38:9
**tongue** 22:13
22:21

**took** 28:15,17
62:14 67:15
**trail** 8:2
**transcribed**
5:25
**transcript** 72:4
**transferring**
18:2
**trial** 66:17
**tried** 52:3
**true** 70:3 72:4
**truste's** 27:7
**trustee** 7:9
27:4 28:3 29:8
35:9
**trustee's** 11:23
30:4
**try** 13:24 14:1
16:5 22:7,18
24:2 50:18
63:20
**trying** 18:6
42:23 43:3
**turn** 34:21
44:3 51:9
**turned** 22:7
**two** 16:3,6 17:2
19:3 21:8
22:25 23:11
39:3 42:7,16
43:18 48:14
55:2 65:9,14
65:16 67:4
**typically** 15:16

## u

**u.s.** 1:23 7:9
**ultimately**
47:23 65:20
**unable** 41:21
**uncomfortable**
31:8
**uncommon**
59:4,5
**uncontested**
16:7 39:4 41:5
41:8
**under** 25:9,23
39:21 41:15,16
42:16 45:15
46:2 47:1
49:22 53:5,19
62:25 69:1
**underscored**
16:22
**understand**
29:15 36:4
38:7,17,18
54:3 66:10
68:9,12
**understanding**
19:1 20:2 28:6
28:7 68:22
69:2
**understood**
23:18
**unfettered**
56:16,22 58:6
**uniondale** 8:17
**united** 1:1,12
7:8

**unmute** 14:10
14:14,17,23
**unredacted**
29:7
**unsecured** 2:18
6:14
**unusual** 64:6
**update** 15:19
15:20,21 17:18
19:11
**use** 12:6
**used** 69:14
70:6
**usually** 49:10
**ut** 9:11

**v**

**valuation**
29:13
**value** 30:20
**variation** 49:8
**varick** 7:10
**various** 27:9
52:20 59:3
**vatican** 57:4
**veritext** 72:20
**versus** 54:5,9
54:10,20
**vesey** 6:5
**victims** 35:19
**video** 22:7
**view** 24:7
**visiting** 47:13
47:14
**voice** 22:18
54:8

**w**

**w** 8:12
**wait** 19:24 30:8
43:14
**waiting** 14:25
19:4
**want** 11:5
13:24 15:19
16:19 17:17
23:3 24:3,3
26:2 27:1,3
36:4,5 38:6
40:22 49:17
51:5,6,8,22
53:23 60:10,21
61:3 65:24
69:9
**wanted** 19:15
20:13 22:3
23:24 24:18
58:7
**wants** 36:6
**way** 28:20 30:1
30:16 47:19
59:23
**we've** 15:25
16:2,4,11,15
16:16,23,24
27:12 28:20
36:8,13 40:7
49:6 51:4
54:22 57:17,22
58:1,3
**website** 37:14
**week** 23:12
36:18,21

**weekly** 23:3
**weeks** 22:25
23:11
**welcome** 13:16
**went** 43:2
68:16
**whatsoever**
24:13
**who've** 37:20
**wi** 8:10
**william** 54:2
65:18
**williams** 64:21
65:17
**willing** 41:18
**wish** 60:5,14
63:18
**wishes** 63:24
**withdraw**
20:16
**withdrawing**
19:19
**withdrawn**
19:16
**withdrew**
20:17,19
**withheld** 35:14
**woman** 47:11
**words** 25:16
**work** 16:1
29:12,12 35:21
40:25 61:15
**worked** 36:12
36:13 47:16
55:25 57:24
61:7 62:2

**workers** 39:13
39:15,16,18,19
39:23
**working** 23:23
30:7 38:1,21
**world** 47:24
**wraps** 44:2
**writing** 17:17
**written** 21:6,13
54:4
**wrong** 36:6
42:3 45:11
**wrote** 21:9

**x**

**x** 1:4,10 49:24
71:1

**y**

**y** 49:24
**yeah** 17:6
20:18 43:10
44:14 58:18
66:22
**years** 35:22
37:20 39:25
40:2,2 56:6,12
**yesterday** 19:2
36:24
**york** 1:2,7,14
6:6,16 7:4,11
7:18 9:4,18
10:4 11:4
41:19 42:10
47:13 54:6,10
54:12,17,20
55:3,12 57:23
66:16

| z |
|---|
| **z**  49:24 |
| **ziehl**  2:19 6:12 |
|   11:13 40:24 |
|   42:15 |
| **zipes**  7:13 |
|   11:22,23 27:1 |
|   27:5,6,19 28:6 |
|   28:9 29:17,20 |
|   30:3,3 32:6 |
|   34:23 |
| **zoom**   11:25 |
|   14:9 |